# EXHIBIT 1

MONROE COUNTY CLERK'S OFFICE          THIS IS NOT A BILL. THIS IS YOUR RECEIPT.

Receipt # 3281601

Book    Page    CIVIL

Return To:                            No. Pages: 17
ELLIOT DOLBY-SHIELDS
192 Lexington Avenue, Suite 802       Instrument: EFILING INDEX NUMBER
New York, NY 10016

Control #:      202212140427
Index #:       E2022010302

Date: 12/14/2022

James, Shenea                         Time: 10:39:36 AM

City of Rochester
Baker, William
Arrowood, Richard
Baxter, Todd
Devinney, Christian

State Fee Index Number          $165.00
County Fee Index Number          $26.00
State Fee Cultural Education     $14.25
State Fee Records                 $4.75    Employee: RR
Management

Total Fees Paid:                $210.00

State of New York

MONROE COUNTY CLERK'S OFFICE
WARNING – THIS SHEET CONSTITUTES THE CLERKS
ENDORSEMENT, REQUIRED BY SECTION 317-a(5) &
SECTION 319 OF THE REAL PROPERTY LAW OF THE
STATE OF NEW YORK. DO NOT DETACH OR REMOVE.

JAMIE ROMEO

MONROE COUNTY CLERK



**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF MONROE**

| | |
|---|---|
| SHENEA JAMES as administrator of the estate of DEDRICK JAMES, deceased, and SHENEA JAMES, individually, | |
| Plaintiff, | **SUMMONS** |
| | Index No.: |
| -against- | The basis of venue is: Location of the incident |
| CITY OF ROCHESTER, RPD OFFICER WILLIAM BAKER, RPD INVESTIGATOR RICHARD ARROWOOD, "JOHN DOE RPD OFFICERS 1-10" (names and number of whom are unknown at present), MONROE COUNTY SHERIFF TODD BAXTER, MSCO SERGEANT CHRISTIAN DEVINNEY, "RICHARD ROE SHERIFF'S DEPUTIES 1-10" (names and number of whom are unknown at present), NYSP INVESTIGATOR JEFFREY ULATOWSKI, and other unidentified members of the Rochester Police Department, Monroe County Sheriff's Office, and New York State Police, | Plaintiff designates Monroe County as the place of trial. |
| Defendants. | |

**To the above named Defendants:**

**You are hereby summoned** to answer the complaint in this action, and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance on the Plaintiff's attorneys within twenty days after the service of this summons, exclusive of the day of service, where service is made by delivery upon you personally within the state, or, within 30 days after completion of service where service is made in any other manner. In case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

DATED: New York, New York
        December 14, 2022

                                    Yours, etc.,

                                      ~//s//~

                                _____
                                ROTH & ROTH, LLP.
                                ELLIOT SHIELDS, ESQ.
                                Attorney for Plaintiff
                                192 Lexington Ave, Suite 802
                                New York, New York 10016
                                (212) 245-1020

NYSCEF DOC. NO. 1
RECEIVED NYSCEF: 12/14/2022

EASTON THOMPSON
KASPEREK SHIFFRIN LLP
Donald Thompson
16 West Main Street, Suite 243
Rochester, New York 14614
Ph: (585) 423-8290

TO:

COUNTY OF MONROE, Monroe County Law Department, 307 County Office Building
39 W. Main St. Rochester, NY 14614

CITY OF ROCHESTER, 30 Church Street, 4th Floor, Rochester, NY 14614

RPD OFFICER WILLIAM BAKER, RPD INVESTIGATOR RICHARD ARROWOOD, 185
Exchange Blvd., Rochester, NY 14614

MONROE COUNTY SHERIFF TODD BAXTER, MSCO SERGEANT CHRISTIAN
DEVINNEY, Monroe County Sheriff's Office, 130 S. Plymouth Avenue, Rochester, New York
14614

NYSP INVESTIGATOR JEFFREY ULATOWSKI, Trooper Barracks E, 1155 Scottsville Road,
Rochester, NY 14624

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF MONROE**

| | |
|---|---|
| SHENEA JAMES as administrator of the estate of DEDRICK JAMES, deceased, and SHENEA JAMES, individually, <br><br> Plaintiff, <br><br> -against- <br><br> CITY OF ROCHESTER, RPD OFFICER WILLIAM BAKER, RPD INVESTIGATOR RICHARD ARROWOOD, "JOHN DOE RPD OFFICERS 1-10" (names and number of whom are unknown at present), MONROE COUNTY SHERIFF TODD BAXTER, MSCO SERGEANT CHRISTIAN DEVINNEY, "RICHARD ROE SHERIFF'S DEPUTIES 1-10" (names and number of whom are unknown at present), NYSP INVESTIGATOR JEFFREY ULATOWSKI, and other unidentified members of the Rochester Police Department, Monroe County Sheriff's Office, and New York State Police, <br><br> Defendants. | **COMPLAINT** <br><br> **Index Number.:** |

Plaintiff SHENEA JAMES, as administrator of the estate of DEDRICK JAMES, deceased, by her attorneys, Roth & Roth, LLP and Easton Thompson Kasperek Shiffrin LLP complaining of the Defendants, respectfully alleges as follows:

### I.      PRELIMINARY STATEMENT

1.       Plaintiff SHENEA JAMES, as administrator of the estate of DEDRICK JAMES, deceased, brings this action for damages under the laws of the state of New York.

2.       On September 15, 2020, Dedrick James was shot and killed during defendants' execution of an arrest warrant at 6 Vinewood Place, Rochester, New York, where Mr. James lived with his elderly grandmother.

3.       Mr. James was shot and killed because defendants negligently planned and executed the aforesaid warrant.

- 3 -

4.      Prior to the execution of the arrest warrant, Mr. James had voluntarily spoken with law enforcement on at least two occasions regarding the incident that gave rise to the arrest warrant. Thus, there was no reason to violently enter his house to seize and arrest him, which created an unreasonable risk of harm to Mr. James, to his grandmother and to law enforcement.

5.      This tragedy could have been avoided, and Mr. James would still be alive, if defendants had simply taken the time to devise a safe plan to take Mr. James into custody.

## II.      VENUE AND JURISDICTION

6.      This action falls within one or more of the exceptions as set forth in CPLR Section 1602, involving intentional actions, as well as the defendant, and/or defendants, having acted in reckless disregard for the safety of others, as well as having performed intentional acts.

7.      Plaintiff sustained damages in an amount in excess of the jurisdictional limits of all the lower Courts of the State of New York.

8.      Shenea James, administrator for the estate of her son, Dedrick James, filed timely Notices of Claim against the City and County, in compliance with the Municipal Law § 50.

9.      The City held a 50-h hearing on March 3, 2022.

10.     The County waived a 50-h hearing.

11.     More than thirty (30) days have elapsed since service of said Notices of Claim were filed and the City and County have failed to pay or adjust the claim.

12.     This action is being brought within a year of the event that gives rise to plaintiff's causes of action under New York State law and plaintiff has complied with all of the statutory prerequisites for bringing this action.

## III. JURY DEMAND

13.     The Plaintiff respectfully demands a trial by jury of all issues in this matter.

## VI. PARTIES

14.     Plaintiff, SHENEA JAMES, as administrator of the estate of DEDRICK JAMES is a citizen of the United States and a resident of the County of Monroe, State of New York. On November 4, 2022, the Surrogate's Court, County of Monroe, State of New York, issued letters of administration to SHENEA JAMES, naming her as the personal representative of the estate, empowered to bring this lawsuit.

15.     Defendant CITY OF ROCHESTER ("CITY") is a municipal entity created and authorized under the laws of the State of New York and is located in the County of Monroe.

16.     Defendant CITY is authorized by law to maintain a police department, which acts as its agent in the area of law enforcement and for which it is ultimately responsible. Defendant CITY assumes the risks incidental to the maintenance of a police force and the employment of police officers as said risks attach to the public consumers of the services provided by the Rochester Police Department.

17.     Defendants Rochester Police Department ("RPD") POLICE OFFICER ("P.O.") WILLIAM   BAKER   ("BAKER"),   INVESTIGATOR   RICHARD   ARROWOOD ("ARROWOOD"), "JOHN DOE" ROCHESTER POLICE DEPARTMENT OFFICERS 1–10 (the names and numbers of which are currently unknown), ("Defendant RPD Officer(s)," or Defendant Police Officer(s)"), are and were at all times relevant herein, officers, employees and agents of the Defendant City and the RPD. The Defendant RPD Officers are being sued in their individual and official capacities.

18.     Defendant TODD BAXTER ("Sheriff Baxter" or "BAXTER") was, at all times relevant herein, the duly elected Sheriff of the County of Monroe. At all relevant times, Defendant BAXTER was acting within the scope of his employment and under color of state law. He is sued in his individual and official capacity.

- 5 -

Case 8:23-cv-06057-DCL-MJP   Document 1-2   Filed 01/20/23   Page 8 of 87

19.    BAXTER is responsible for the training, supervision and discipline of the Defendant Sheriff's Deputies under state law.

20.    Defendant CHRISTIAN DEVINNEY ("DEVINNEY") was, at all times relevant herein, the tactical leader of the Rochester-based U.S. Marshalls Task Force and was responsible for coordinating and planning the execution of the warrant.

21.    "RICHARD ROE" MONROE COUNTY SHERIFF'S DEPUTIES 1–10 (the names and numbers of which are currently unknown), were, at all times relevant to this Complaint, Deputy Sheriffs with the Monroe County Sheriff's Office ("MCSO"). At all relevant times, these defendants were acting within the scope of their employment with the County and under Sheriff BAXTER and acting under color of state law. They are sued in their individual capacities. They are referred to collectively as "the Sheriff's Deputies."

22.    New York State Police Investigator JEFFREY ULATOWSKI ("ULATOWSKI"), was, at all times relevant to this Complaint, a New York State Police Officer. At all relevant times, he was acting within the scope of his employment and under color of state law. He is sued in his individual capacity.

23.    BAKER, ARROWOOD, DEVINNEY, ULATOWSKI, the "John Doe" RPD Officers, and the "Richard Roe" MCSO Deputies (the "individual defendants") were at all times members of the U.S. Marshalls Service Fugitive Task Force (the "Task Force"). Other members of the Task Force were involved in the incident, such as U.S. Marshall Carlton Smith, were involved in the incident but are not named as defendants herein (because U.S. Marshalls cannot be sued in New York State Court).

## V. STATEMENT OF FACTS

24.     On September 15, 2021, Dedrick James was shot and killed during the execution of an arrest warrant at 6 Vinewood Place, Rochester, New York by the U.S. Marshalls Service Fugitive Task Force (the "Task Force").

25.     The individual defendants were members of the Task Force.

26.     Between August 25, 2021 and September 15, 2021, the Task Force conducted surveillance of 6 Vinewood Place.

27.     Upon information and belief, the surveillance showed Mr. James coming and going from the residence at regular times.

28.     Upon information and belief, the surveillance showed Mr. James coming and going while driving a white Dodge Dart vehicle.

29.     The investigation showed that Mr. James lived at 6 Vinewood Place with his elderly grandmother, Betty Irvin.

30.     On the morning of September 15, 2021, New York State Police Investigator Ulatowski and RPD Investigator Richard Arrowood surveilled the house and confirmed that only Mr. James and Ms. Irvin were inside of the house.

31.     Investigator Ulatowski radioed the task force to assemble to attempt to apprehend and arrest Mr. James.

32.     Upon information and belief, the Task Force only considered forcibly entering 6 Vinewood Place and violently seizing and arresting Mr. James.

33.     Prior to the incident, the Task Force and its members failed to devise a plan for how to safely execute the warrant and effectuate the arrest of Mr. James.

NYSCEF DOC. NO. 1

RECEIVED NYSCEF: 12/14/2022

34.  At approximately 10:35 a.m. on September 15, 2021, Task Force members arrived at 6 Vinewood Place.

35.  NYSP Investigator Ulatowski, RPD officer William Baker, and U.S. Marshall Smith approached the door and rang the doorbell.

36.  Decedent's grandmother, Mr. Irvin, answered the door.

37.  When they saw Mr. James exit a room down the hallway, Ulatowski, Baker and Smith threw Ms. Irvin to the ground and forcibly entered the home.

38.  Ulatowski, Baker and Smith chased Mr. James into a bathroom.

39.  Ulatowski, Baker and Smith did not provide Mr. James with time or opportunity to surrender.

40.  Ulatowski physically seized Mr. James inside the bathroom.

41.  Upon information and belief, there was a physical struggle inside of the bathroom, during which Mr. James was shot and killed.

42.  Upon information and belief, Ulatowski shot and killed Mr. James.

43.  Upon information and belief, Baker shot and killed Mr. James.

44.  Upon information and belief, Smith shot and killed Mr. James.

45.  Upon information and belief, Ulatowski caused Mr. James to be shot and killed.

46.  Upon information and belief, Baker caused Mr. James to be shot and killed.

47.  Upon information and belief, Smith caused Mr. James to be shot and killed.

48.  Baker and Smith were inside of the bathroom while Ulatowski struggled with Mr. James and had the time and opportunity to intervene to prevent Mr. James from being shot and killed, but they chose not to.

49.   After Mr. James was shot, he experienced conscious pain and suffering and fear of impending death before he died.

50.   Ulatowski, Baker and the other Task Force members allege that Mr. James shot himself, but because they were not wearing body worn cameras, it is impossible to know if that claim is true.

51.   Mr. James' death could have been avoided if the Task Force had devised and executed a safe plan for arresting Mr. James.

52.   The Task Force created a dangerous condition and/or situation at 6 Vinewood place.

53.   Execution of warrants inside of a particular premises creates an unpredictable and potentially dangerous situation.

54.   The Task Force exercised extraordinary governmental power by intruding on the sanctity of the home and taking temporary control over the home and its occupants.

55.   The Task Force and each of the defendants owed a special duty to Mr. James when they planned and executed the arrest warrant at 6 Vinewood Place.

56.   The Task Force and each of the defendants breached the special duty owed to decedent by negligently planning the executing the warrant.

57.   MCSO Sergeant Christian DeVinney was the tactical leader of the Task Force, and the Warrant Unit Supervisor for the Monroe County Sheriff's Office. Along with NYPS Investigator Ulatowski, RPD Investigator Arrowood, Deputy U.S. Marshall Smith, and other Task Force members, DeVinney devised a plan to arrest Mr. James, which consisted of executing the warrant by rushing into the home at 6 Vinewood Place; if Mr. James had a gun, their only plan was to shoot and kill him.

58.     The Task Force failed to plan for a number of contingencies, including the possibility that Mr. James could have a gun; their only plan if something unexpected happened inside of the home was to shoot and kill Mr. James.

59.     DeVinney and the other Task Force members failed to devise a non-lethal plan for arresting Mr. James if they entered his home and he had a gun or otherwise resisted.

60.     DeVinney and the other Task Force members failed to consider numerous other safer options for arresting Mr. James.

61.     For example, DeVinney and the other Task Force members failed to consider arresting Mr. James by waiting for him to exit the home and then rushing upon him and arresting him outside.

62.     DeVinney and the other Task Force members failed to consider arresting Mr. James by waiting for him to exit the home and enter his car, and then making a controlled stop.

63.     The failure of the Task Force to be properly trained in how to safely apprehend individuals with arrest warrants caused Mr. James' death.

64.     Defendant Monroe County Sheriff Todd Baxter failed to provide any training to DeVinney or the other Task Force members regarding how to properly and safely plan and execute an arrest warrant.

65.     Baxter never trained DeVinney and the other Task Force members that in situations like this, where there was no emergency requiring that the task force rush into to the house, that they were required to devise a safer plan, instead of rushing into the house, with no plan for how to react if they encountered resistance from the subject of the warrant.

66.     The Task Force members also chose not to wear body worn cameras, which is a violation of good and accepted police practices.

- 10 -

67.     Because of the foregoing, Mr. James suffered pain, terror, and death. Plaintiff seeks compensation in an amount to be determined at trial.

## VI. CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### NEGLIGENT PLANNING

68.     All preceding and subsequent paragraphs are incorporated by reference.

69.     As detailed above, Defendants were negligent in the planning and the execution of the arrest warrant.

70.     Defendants owed plaintiff a special duty under *Ferreira* v. *City of Binghamton,* 2022 NY Slip Op 01953 [Mar. 23, 2022].

71.     Defendants had a special duty to plan and execute the warrant in a safe and lawful manner.

72.     By planning and executing the arrest warrant, defendants took positive control of the premises, knowingly creating an unpredictable and potentially dangerous condition at the premises.

73.     Defendants had actual knowledge of the potentially dangerous safety condition and took positive action in assuming direction and control over the premises.

74.     By negligently planning and executing the arrest warrant, defendants took control of the dangerous situation of they created.

75.     Defendants breached their duty to Mr. James by, among other things, failing to conduct adequate surveillance and other intelligence gathering.

76.     Defendants breached their duty to Mr. James by, among other things, failing to devise a non lethal plan for apprehending and arresting Mr. James if he resisting their efforts to bring him into custody.

77. Decedent's death was a direct and proximate result defendants' negligently planning and executing the arrest warrant.

78. As a result of the foregoing, decedent suffered injuries and damages, including death.

79. The City, as the employer of several of the individual defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

**SECOND CLAIM FOR RELIEF**
**WRONGFUL DEATH**

80. All preceding and subsequent paragraphs are incorporated by reference.

81. Plaintiff's decedent is survived by distributes.

82. By reason of the wrongful death of the decedent, the decedent's distributees have sustained pecuniary loss and damages from his wrongful death.

83. The amount of damages sought exceeds the jurisdiction of all lower courts that would otherwise have jurisdiction of this action.

**THIRD CLAIM FOR RELIEF**
**EMOTIONAL LOSS**

84. All preceding and subsequent paragraphs are incorporated by reference.

85. Plaintiff's decedent is survived by distributes.

86. By reason of the wrongful death of the decedent, the decedent's distributees have sustained emotional loss, including grief, anguish, loss of love, loss of comfort, loss of companionship and other damages from his wrongful death.

87. The amount of damages sought exceeds the jurisdiction of all lower courts that would otherwise have jurisdiction of this action.

**FOURTH CLAIM FOR RELIEF**
**NEGLIGENCE**

- 12 -

13 of 17

88. All preceding and subsequent paragraphs are incorporated by reference.

89. The actions of the defendants, their agents, servants, employees, officers and deputies were negligent, which was the direct and proximate cause of the decedent's injuries.

90. Defendants owed plaintiff a special duty under *Ferreira* v. *City of Binghamton*, 2022 NY Slip Op 01953 [Mar. 23, 2022].

91. Defendants breached that duty by acting negligently in planning and executing the warrant in an unsafe manner.

92. Defendants breached that duty in the type and amount of force used against decedent.

93. Defendants' breach of that duty was the direct and proximate cause of decedent's injuries and death.

94. Defendants' actions were willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed.

95. The amount of damages sought exceeds the jurisdiction of all lower courts that would otherwise have jurisdiction of this action.

## FIFTH CLAIM FOR RELIEF
### Assault and Battery

96. All preceding and subsequent paragraphs are incorporated by reference.

97. Defendants assaulted and battered decedent.

98. Defendants battered dedecent by seizing and tackling him.

99. Defendants battered decedent by, upon information and belief, shooting him.

100. Decedent did not consent to the contact.

101.    The types and levels of force defendants used against decednet were in contravention of, or inconsistent with, good and accepted police practices.

102.    At no point during the incident described herein did the circumstances necessitate or support the above applications of force utilized by the defendants against decedent.

103.    By the aforedescribed conduct, defendants, their agents, servants and employees, acting within the scope of their employment, intentionally, willfully and maliciously battered decedent, when they, in a hostile and/or offensive manner struck decedent without his consent and with the intention of causing harmful and/or offensive bodily contact to the decedent and caused such battery.

104.    The RPD Officers were at all times agents, servants, and employees acting within the scope of their employment by the Defendant CITY and the RPD, which are therefore responsible for their conduct.

105.    The Defendant CITY, as the employer of the individual RPD defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

106.    Defendants' actions were willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed.

107.    As a result, decedent sustained damages in an amount in excess of the jurisdictional limits of all the lower Courts of the State of New York.

### SIXTH CLAIM FOR RELIEF
**Failure To Intervene**

108.    All preceding and subsequent paragraphs are incorporated by reference.

109.    The individual defendants all had an affirmative duty to intervene on decedent's behalf to prevent the violation of his rights by the other defendants.

NYSCEF DOC. NO. 1                                                    RECEIVED NYSCEF: 12/14/2022

110.    The individual Defendants failed to intervene on decedent's behalf despite having had realistic opportunities to do so.

111.    The individual defendants failed to intervene on decedent's behalf despite having substantially contributed to the circumstances within which decedent's rights were violated by their affirmative conduct.

112.    As a result of the aforementioned conduct of the individual defendants, decedent's rights were violated.

113.    The Defendant CITY, as the employer of the individual RPD defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

114.    Defendants' actions were willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed.

115.    As a result, plaintiff sustained damages in an amount in excess of the jurisdictional limits of all the lower Courts of the State of New York.

### SEVENTH CLAIM FOR RELIEF
**Negligent Training, Supervision and Discipline**
**(Against BAXTER)**

116.    All preceding and subsequent paragraphs are incorporated by reference.

117.    Defendant BAXTER was negligent in the training, supervision and discipline of the Defendant Sheriff's Deputies, who were provided, upon information and belief, no training on how to safely execute an arrest warrant.

118.    Alternatively, the training BAXTER provided to the Sheriff's Deputies was inadequate.

119.    BAXTER's negligence in failing to supervise and discipline his Sheriff's Deputies was the direct and proximate cause of decedent's injuries.

120.    As a result, plaintiff sustained damages in an amount in excess of the jurisdictional

limits of all the lower Courts of the State of New York.

**WHEREFORE and in light of the foregoing**, Plaintiff respectfully requests that the Court

assume jurisdiction and:

[a] Award appropriate compensatory and punitive damages.
[b] Empanel a jury.
[c] Award such other and further relief as the Court deems to be in the interest of justice.

Dated: New York, New York          Respectfully Submitted,
        December 14, 2022

                                   ROTH & ROTH, LLP
                                   EASTON THOMPSON KASPEREK SHIFFRIN LLP


                                   By:        ~//s//~
                                          Elliot D. Shields
                                          Roth & Roth, LLP
                                          Counsel for Plaintiff
                                          192 Lexington Avenue, Suite 802
                                          New York, New York 10016
                                          Tel: 212-425-1020

                                          Donald M. Thompson
                                          Easton Thompson Kasperek Shiffrin LLP
                                          The Powers Building
                                          16 West Main Street, Suite 243
                                          Rochester, New York 14614
                                          Tel.: 585-423-8290

- 16 -

# EXHIBIT 2

NYSCEF DOC. NO. 2

RECEIVED NYSCEF: 01/11/2023

## MONROE COUNTY CLERK'S OFFICE

**THIS IS NOT A BILL. THIS IS YOUR RECEIPT.**

Receipt # 3305467

Book    Page    CIVIL

No. Pages:  3

Return To:
County of Monroe Department of Law

Instrument: NOTICE OF MOTION OR CROSS MOTION

Control #:        202301110704
Index #:          E2022010302

Date: 01/11/2023

James, Shenea

Time: 11:49:05 AM

City of Rochester
Baker, William
Arrowood, Richard
Baxter, Todd
Devinney, Christian

Total Fees Paid:                          $0.00

Employee: CW

State of New York

MONROE COUNTY CLERK'S OFFICE
WARNING – THIS SHEET CONSTITUTES THE CLERKS
ENDORSEMENT, REQUIRED BY SECTION 317-a(5) &
SECTION 319 OF THE REAL PROPERTY LAW OF THE
STATE OF NEW YORK. DO NOT DETACH OR REMOVE.

### JAMIE ROMEO

MONROE COUNTY CLERK

**STATE OF NEW YORK**
**SUPREME COURT**          **COUNTY OF MONROE**

SHENEA JAMES as administrator of the estate of
DEDRICK JAMES, deceased, and SHENEA
JAMES, individually,

                              *Plaintiff,*

    v.

CITY OF ROCHESTER, RPD OFFICER
WILLIAM BAKER, RPD INVESTIGATOR
RICHARD ARROWOOD, "JOHN DOE RPD
OFFICERS 1-10" (names and number of whom are
unknown at present), MONROE COUNTY
SHERIFF TODD BAXTER, MCSO SERGEANT
CHRISTIAN DEVINNEY, "RICHARD ROE
SHERIFF'S DEPUTIES 1-10" (names and number
of whom are unknown at present), NYSP
INVESTIGATOR JEFFREY ULATOWSKI, and
other unidentified members of the Rochester Police
Department, Monroe County Sheriff's Office, and
New York State Police,

                              *Defendants.*

**NOTICE OF MOTION**

Index No. E2022010302

| | |
|---|---|
| **Motion By:** | Defendants Todd Baxter and Christian Devinney |
| **Relief Requested:** | **A.**   An order pursuant to N.Y. CPLR §§ 3211 (a)(5), (a)(7), and/or (a)(1) dismissing the cause(s) of action against Sheriff Todd Baxter. |
| | **B.**   Such other and further relief as this Court shall find good and proper. |
| **Nature of the Action:** | Plaintiff brought suit against Rochester Police Officers, Sheriff Todd Baxter, a Monroe County Sheriff's Deputy, and a State Police Investigator alleging various torts relating to the death of plaintiff's decedent. |
| **Supporting Papers:** | Attorney Affirmation of Robert J. Shoemaker, Esq., Memorandum of Law, Appendix of Exhibits. |
| **Before:** | The Supreme Court of the State of New York, County of |

1

|                      | Monroe                                                                                                                                                                                                                                     |
|----------------------|--------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
| **Location:**        | Hall of Justice, 99 Exchange Boulevard, Rochester, New York, 14614                                                                                                                                                                        |
| **Date and Time:**   | To be determined.                                                                                                                                                                                                                         |
| **Answer to the Motion:** | Pursuant to CPLR 2214(b), answering affidavits, if any, are required to be served upon the undersigned at least seven days before the return date of this motion, and the Defendants hereby reserve the right to reply.          |

**JOHN P. BRINGEWATT**
**MONROE COUNTY ATTORNEY**
*Attorney for the Defendants*

Dated: January 11, 2023

/s/ *Robert J. Shoemaker*

**Robert J. Shoemaker, Esq. of Counsel**
Deputy County Attorney
307 County Office Building
39 West Main Street, Rochester, New York 14614
Telephone: 585.753.1472
boshoemaker@monroecounty.gov

To:   Elliott D. Shields, Esq.
      Roth & Roth, LLP

      City of Rochester
      Office of the Corporation Counsel

      Attorney for NYSP Investigator Ulatowski

      (all by NYSCEF)

2

# EXHIBIT 3

MONROE COUNTY CLERK'S OFFICE          THIS IS NOT A BILL. THIS IS YOUR RECEIPT.

Receipt # 3305460

Book    Page    CIVIL

Return To:                              No. Pages:  3
County of Monroe Department of Law

Instrument: AFFIRMATION

Control #:       202301110697
Index #:         E2022010302

Date: 01/11/2023

James, Shenea                           Time: 11:47:48 AM

City of Rochester
Baker, William
Arrowood, Richard
Baxter, Todd
Devinney, Christian

Total Fees Paid:                 $0.00

                                        Employee:

State of New York

MONROE COUNTY CLERK'S OFFICE
WARNING – THIS SHEET CONSTITUTES THE CLERKS
ENDORSEMENT, REQUIRED BY SECTION 317-a(5) &
SECTION 319 OF THE REAL PROPERTY LAW OF THE
STATE OF NEW YORK. DO NOT DETACH OR REMOVE.

        JAMIE ROMEO

    MONROE COUNTY CLERK

NYSCEF DOC. NO. 3                                      RECEIVED NYSCEF: 01/11/2023

**STATE OF NEW YORK**
**SUPREME COURT**          **COUNTY OF MONROE**

---

SHENEA JAMES as administrator of the estate of DEDRICK JAMES, deceased, and SHENEA JAMES, individually,

                       *Plaintiff,*

     v.

CITY OF ROCHESTER, RPD OFFICER WILLIAM BAKER, RPD INVESTIGATOR RICHARD ARROWOOD, "JOHN DOE RPD OFFICERS 1-10" (names and number of whom are unknown at present), MONROE COUNTY SHERIFF TODD BAXTER, MCSO SERGEANT CHRISTIAN DEVINNEY, "RICHARD ROE SHERIFF'S DEPUTIES 1-10" (names and number of whom are unknown at present), NYSP INVESTIGATOR JEFFREY ULATOWSKI, and other unidentified members of the Rochester Police Department, Monroe County Sheriff's Office, and New York State Police,

                       *Defendants.*

---

**ATTORNEY AFFIRMATION**

**Index No.** E2022010302

Robert J. Shoemaker, an attorney admitted to practice in the Courts of the State of New York, hereby affirms and says as follows:

1. Below is Monroe County's List of Exhibits. All Exhibits in the Appendix are true and accurate copies of the original documents and/or items, and each is filed as a separate document related to the Notice of Motion filed this day by the defendants in this matter.

2. Defendant's **Exhibit A** is a copy of Plaintiff's Summons and Complaint.

3. Defendant's **Exhibit B** is a collection of Sheriff's Office incident reports relating to the action resulting in decedent's death.

1

NYSCEF DOC. NO. 3                                          RECEIVED NYSCEF: 01/11/2023

4. Defendant's **Exhibit C** is a report generated by the Attorney General's Office relating to the action resulting in decedent's death.

5. Defendant's **Exhibit D** is the first page of the County's summons, indicating the date that it was received.

6. Also attached is a **memorandum of law** in support of the motion to dismiss. For preservation purposes only, I note that the memorandum raises contentions relating to the statute of limitations, a sheriff's lack of supervision over a federal task force, failure to state a claim where employees were acting within the scope of employment or where their propensity is not alleged, and governmental function immunity.

**WHEREFORE**, the County of Monroe hereby respectfully requests that the complaint and all of the claims be dismissed with prejudice pursuant to NY CPLR § 3211 (a)(5), (a)(7) and/or (a)(1), for violating the statute of limitations, failure to state a cause of action, and/or based upon documentary evidence, and that such other and further relief as this court shall find good and proper should be granted.

> **JOHN P. BRINGEWATT**
> **MONROE COUNTY ATTORNEY**
> *Attorney for Defendant County of Monroe*
>
> /s/ Robert J. Shoemaker

January 11, 2023

> **Robert J. Shoemaker, Esq. of Counsel**
> Deputy County Attorney
> 307 County Office Building
> 39 West Main Street, Rochester, NY 14614
> Telephone:  585.753.1472
> boshoemaker@monroecounty.gov

MONROE COUNTY CLERK'S OFFICE        THIS IS NOT A BILL. THIS IS YOUR RECEIPT.

Receipt # 3305462

Book    Page    CIVIL

No. Pages: 18

Instrument: EXHIBIT(S)

Return To:
County of Monroe Department of Law

Control #:        202301110699

Index #:          E2022010302

Date: 01/11/2023

James, Shenea                              Time: 11:47:52 AM

City of Rochester
Baker, William
Arrowood, Richard
Baxter, Todd
Devinney, Christian

Total Fees Paid:                          $0.00

Employee:

State of New York

MONROE COUNTY CLERK'S OFFICE
WARNING – THIS SHEET CONSTITUTES THE CLERKS
ENDORSEMENT, REQUIRED BY SECTION 317-a(5) &
SECTION 319 OF THE REAL PROPERTY LAW OF THE
STATE OF NEW YORK. DO NOT DETACH OR REMOVE.

JAMIE ROMEO

MONROE COUNTY CLERK



MONROE COUNTY CLERK'S OFFICE

THIS IS NOT A BILL. THIS IS YOUR RECEIPT.

Receipt # 3281601

Book    Page    CIVIL

No. Pages:  17

Return To:
ELLIOT DOLBY-SHIELDS
192 Lexington Avenue, Suite 802
New York, NY 10016

Instrument: EFILING INDEX NUMBER

Control #:        202212140427
Index #:          E2022010302

Date: 12/14/2022

James, Shenea

Time: 10:39:36 AM

City of Rochester
Baker, William
Arrowood, Richard
Baxter, Todd
Devinney, Christian

| | | |
|---|---|---|
| State Fee Index Number | $165.00 | |
| County Fee Index Number | $26.00 | |
| State Fee Cultural Education | $14.25 | |
| State Fee Records | $4.75 | Employee: RR |
| Management | | |
| Total Fees Paid: | $210.00 | |

State of New York

MONROE COUNTY CLERK'S OFFICE
WARNING – THIS SHEET CONSTITUTES THE CLERKS
ENDORSEMENT, REQUIRED BY SECTION 317-a(5) &
SECTION 319 OF THE REAL PROPERTY LAW OF THE
STATE OF NEW YORK. DO NOT DETACH OR REMOVE.

JAMIE ROMEO

MONROE COUNTY CLERK



**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF MONROE**

---

SHENEA JAMES as administrator of the estate of
DEDRICK JAMES, deceased, and SHENEA JAMES,
individually,

                                              Plaintiff,

                    -against-

CITY OF ROCHESTER, RPD OFFICER WILLIAM
BAKER,   RPD   INVESTIGATOR   RICHARD
ARROWOOD, "JOHN DOE RPD OFFICERS 1-10" (names
and number of whom are unknown at present), MONROE
COUNTY SHERIFF TODD BAXTER, MSCO SERGEANT
CHRISTIAN DEVINNEY, "RICHARD ROE SHERIFF'S
DEPUTIES 1-10" (names and number of whom are unknown
at    present),    NYSP    INVESTIGATOR    JEFFREY
ULATOWSKI, and other unidentified members of the
Rochester Police Department, Monroe County Sheriff's
Office, and New York State Police,

                                              Defendants.

---

**SUMMONS**

Index No.:

The basis of venue is:
Location of the incident

Plaintiff designates Monroe
County as the place of trial.

**To the above named Defendants:**

**You are hereby summoned** to answer the complaint in this action, and to serve a copy of your
answer, or, if the complaint is not served with this summons, to serve a notice of appearance on
the Plaintiff's attorneys within twenty days after the service of this summons, exclusive of the day
of service, where service is made by delivery upon you personally within the state, or, within 30
days after completion of service where service is made in any other manner. In case of your failure
to appear or answer, judgment will be taken against you by default for the relief demanded in the
complaint.

DATED: New York, New York
            December 14, 2022

                                   Yours, etc.,

                                   ~//s//~

                                   _____
                                   ROTH & ROTH, LLP.
                                   ELLIOT SHIELDS, ESQ.
                                   Attorney for Plaintiff
                                   192 Lexington Ave, Suite 802
                                   New York, New York 10016
                                   (212) 245-1020

NYSCEF DOC. NO. 5

RECEIVED NYSCEF: 02/14/2022

EASTON THOMPSON
KASPEREK SHIFFRIN LLP
Donald Thompson
16 West Main Street, Suite 243
Rochester, New York 14614
Ph: (585) 423-8290

TO:

COUNTY OF MONROE, Monroe County Law Department, 307 County Office Building
39 W. Main St. Rochester, NY 14614

CITY OF ROCHESTER, 30 Church Street, 4th Floor, Rochester, NY 14614

RPD OFFICER WILLIAM BAKER, RPD INVESTIGATOR RICHARD ARROWOOD, 185
Exchange Blvd., Rochester, NY 14614

MONROE COUNTY SHERIFF TODD BAXTER, MSCO SERGEANT CHRISTIAN
DEVINNEY, Monroe County Sheriff's Office, 130 S. Plymouth Avenue, Rochester, New York
14614

NYSP INVESTIGATOR JEFFREY ULATOWSKI, Trooper Barracks E, 1155 Scottsville Road,
Rochester, NY 14624

NYSCEF DOC. NO. 5                                         RECEIVED NYSCEF: 02/14/2022

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF MONROE**

| | |
|---|---|
| SHENEA JAMES as administrator of the estate of DEDRICK JAMES, deceased, and SHENEA JAMES, individually,<br><br>Plaintiff,<br><br>-against-<br><br>CITY OF ROCHESTER, RPD OFFICER WILLIAM BAKER, RPD INVESTIGATOR RICHARD ARROWOOD, "JOHN DOE RPD OFFICERS 1-10" (names and number of whom are unknown at present), MONROE COUNTY SHERIFF TODD BAXTER, MSCO SERGEANT CHRISTIAN DEVINNEY, "RICHARD ROE SHERIFF'S DEPUTIES 1-10" (names and number of whom are unknown at present), NYSP INVESTIGATOR JEFFREY ULATOWSKI, and other unidentified members of the Rochester Police Department, Monroe County Sheriff's Office, and New York State Police,<br><br>Defendants. | **COMPLAINT**<br><br>**Index Number.:** |

Plaintiff SHENEA JAMES, as administrator of the estate of DEDRICK JAMES, deceased, by her attorneys, Roth & Roth, LLP and Easton Thompson Kasperek Shiffrin LLP complaining of the Defendants, respectfully alleges as follows:

## I.    <u>PRELIMINARY STATEMENT</u>

1.    Plaintiff SHENEA JAMES, as administrator of the estate of DEDRICK JAMES, deceased, brings this action for damages under the laws of the state of New York.

2.    On September 15, 2020, Dedrick James was shot and killed during defendants' execution of an arrest warrant at 6 Vinewood Place, Rochester, New York, where Mr. James lived with his elderly grandmother.

3.    Mr. James was shot and killed because defendants negligently planned and executed the aforesaid warrant.

- 3 -

4.      Prior to the execution of the arrest warrant, Mr. James had voluntarily spoken with law enforcement on at least two occasions regarding the incident that gave rise to the arrest warrant. Thus, there was no reason to violently enter his house to seize and arrest him, which created an unreasonable risk of harm to Mr. James, to his grandmother and to law enforcement.

5.      This tragedy could have been avoided, and Mr. James would still be alive, if defendants had simply taken the time to devise a safe plan to take Mr. James into custody.

## II.      VENUE AND JURISDICTION

6.      This action falls within one or more of the exceptions as set forth in CPLR Section 1602, involving intentional actions, as well as the defendant, and/or defendants, having acted in reckless disregard for the safety of others, as well as having performed intentional acts.

7.      Plaintiff sustained damages in an amount in excess of the jurisdictional limits of all the lower Courts of the State of New York.

8.      Shenea James, administrator for the estate of her son, Dedrick James, filed timely Notices of Claim against the City and County, in compliance with the Municipal Law § 50.

9.      The City held a 50-h hearing on March 3, 2022.

10.     The County waived a 50-h hearing.

11.     More than thirty (30) days have elapsed since service of said Notices of Claim were filed and the City and County have failed to pay or adjust the claim.

12.     This action is being brought within a year of the event that gives rise to plaintiff's causes of action under New York State law and plaintiff has complied with all of the statutory prerequisites for bringing this action.

## III. JURY DEMAND

13.     The Plaintiff respectfully demands a trial by jury of all issues in this matter.

## VI. PARTIES

14.     Plaintiff, SHENEA JAMES, as administrator of the estate of DEDRICK JAMES is a citizen of the United States and a resident of the County of Monroe, State of New York. On November 4, 2022, the Surrogate's Court, County of Monroe, State of New York, issued letters of administration to SHENEA JAMES, naming her as the personal representative of the estate, empowered to bring this lawsuit.

15.     Defendant CITY OF ROCHESTER ("CITY") is a municipal entity created and authorized under the laws of the State of New York and is located in the County of Monroe.

16.     Defendant CITY is authorized by law to maintain a police department, which acts as its agent in the area of law enforcement and for which it is ultimately responsible. Defendant CITY assumes the risks incidental to the maintenance of a police force and the employment of police officers as said risks attach to the public consumers of the services provided by the Rochester Police Department.

17.     Defendants Rochester Police Department ("RPD") POLICE OFFICER ("P.O.") WILLIAM BAKER ("BAKER"), INVESTIGATOR RICHARD ARROWOOD ("ARROWOOD"), "JOHN DOE" ROCHESTER POLICE DEPARTMENT OFFICERS 1–10 (the names and numbers of which are currently unknown), ("Defendant RPD Officer(s)," or Defendant Police Officer(s)"), are and were at all times relevant herein, officers, employees and agents of the Defendant City and the RPD. The Defendant RPD Officers are being sued in their individual and official capacities.

18.     Defendant TODD BAXTER ("Sheriff Baxter" or "BAXTER") was, at all times relevant herein, the duly elected Sheriff of the County of Monroe. At all relevant times, Defendant BAXTER was acting within the scope of his employment and under color of state law. He is sued in his individual and official capacity.

- 5 -

19.     BAXTER is responsible for the training, supervision and discipline of the Defendant Sheriff's Deputies under state law.

20.     Defendant CHRISTIAN DEVINNEY ("DEVINNEY") was, at all times relevant herein, the tactical leader of the Rochester-based U.S. Marshalls Task Force and was responsible for coordinating and planning the execution of the warrant.

21.     "RICHARD ROE" MONROE COUNTY SHERIFF'S DEPUTIES 1–10 (the names and numbers of which are currently unknown), were, at all times relevant to this Complaint, Deputy Sheriffs with the Monroe County Sheriff's Office ("MCSO"). At all relevant times, these defendants were acting within the scope of their employment with the County and under Sheriff BAXTER and acting under color of state law. They are sued in their individual capacities. They are referred to collectively as "the Sheriff's Deputies."

22.     New York State Police Investigator JEFFREY ULATOWSKI ("ULATOWSKI"), was, at all times relevant to this Complaint, a New York State Police Officer. At all relevant times, he was acting within the scope of his employment and under color of state law. He is sued in his individual capacity.

23.     BAKER, ARROWOOD, DEVINNEY, ULATOWSKI, the "John Doe" RPD Officers, and the "Richard Roe" MCSO Deputies (the "individual defendants") were at all times members of the U.S. Marshalls Service Fugitive Task Force (the "Task Force"). Other members of the Task Force were involved in the incident, such as U.S. Marshall Carlton Smith, were involved in the incident but are not named as defendants herein (because U.S. Marshalls cannot be sued in New York State Court).

## V.  STATEMENT OF FACTS

24.     On September 15, 2021, Dedrick James was shot and killed during the execution of an arrest warrant at 6 Vinewood Place, Rochester, New York by the U.S. Marshalls Service Fugitive Task Force (the "Task Force").

25.     The individual defendants were members of the Task Force.

26.     Between August 25, 2021 and September 15, 2021, the Task Force conducted surveillance of 6 Vinewood Place.

27.     Upon information and belief, the surveillance showed Mr. James coming and going from the residence at regular times.

28.     Upon information and belief, the surveillance showed Mr. James coming and going while driving a white Dodge Dart vehicle.

29.     The investigation showed that Mr. James lived at 6 Vinewood Place with his elderly grandmother, Betty Irvin.

30.     On the morning of September 15, 2021, New York State Police Investigator Ulatowski and RPD Investigator Richard Arrowood surveilled the house and confirmed that only Mr. James and Ms. Irvin were inside of the house.

31.     Investigator Ulatowski radioed the task force to assemble to attempt to apprehend and arrest Mr. James.

32.     Upon information and belief, the Task Force only considered forcibly entering 6 Vinewood Place and violently seizing and arresting Mr. James.

33.     Prior to the incident, the Task Force and its members failed to devise a plan for how to safely execute the warrant and effectuate the arrest of Mr. James.

34.     At approximately 10:35 a.m. on September 15, 2021, Task Force members arrived at 6 Vinewood Place.

35.     NYSP Investigator Ulatowski, RPD officer William Baker, and U.S. Marshall Smith approached the door and rang the doorbell.

36.     Decedent's grandmother, Mr. Irvin, answered the door.

37.     When they saw Mr. James exit a room down the hallway, Ulatowski, Baker and Smith threw Ms. Irvin to the ground and forcibly entered the home.

38.     Ulatowski, Baker and Smith chased Mr. James into a bathroom.

39.     Ulatowski, Baker and Smith did not provide Mr. James with time or opportunity to surrender.

40.     Ulatowski physically seized Mr. James inside the bathroom.

41.     Upon information and belief, there was a physical struggle inside of the bathroom, during which Mr. James was shot and killed.

42.     Upon information and belief, Ulatowski shot and killed Mr. James.

43.     Upon information and belief, Baker shot and killed Mr. James.

44.     Upon information and belief, Smith shot and killed Mr. James.

45.     Upon information and belief, Ulatowski caused Mr. James to be shot and killed.

46.     Upon information and belief, Baker caused Mr. James to be shot and killed.

47.     Upon information and belief, Smith caused Mr. James to be shot and killed.

48.     Baker and Smith were inside of the bathroom while Ulatowski struggled with Mr. James and had the time and opportunity to intervene to prevent Mr. James from being shot and killed, but they chose not to.

49.     After Mr. James was shot, he experienced conscious pain and suffering and fear of impending death before he died.

50.     Ulatowski, Baker and the other Task Force members allege that Mr. James shot himself, but because they were not wearing body worn cameras, it is impossible to know if that claim is true.

51.     Mr. James' death could have been avoided if the Task Force had devised and executed a safe plan for arresting Mr. James.

52.     The Task Force created a dangerous condition and/or situation at 6 Vinewood place.

53.     Execution of warrants inside of a particular premises creates an unpredictable and potentially dangerous situation.

54.     The Task Force exercised extraordinary governmental power by intruding on the sanctity of the home and taking temporary control over the home and its occupants.

55.     The Task Force and each of the defendants owed a special duty to Mr. James when they planned and executed the arrest warrant at 6 Vinewood Place.

56.     The Task Force and each of the defendants breached the special duty owed to decedent by negligently planning the executing the warrant.

57.     MCSO Sergeant Christian DeVinney was the tactical leader of the Task Force, and the Warrant Unit Supervisor for the Monroe County Sheriff's Office. Along with NYPS Investigator Ulatowski, RPD Investigator Arrowood, Deputy U.S. Marshall Smith, and other Task Force members, DeVinney devised a plan to arrest Mr. James, which consisted of executing the warrant by rushing into the home at 6 Vinewood Place; if Mr. James had a gun, their only plan was to shoot and kill him.

NYSCEF DOC. NO. 5                                                      RECEIVED NYSCEF: 02/14/2022

58.     The Task Force failed to plan for a number of contingencies, including the possibility that Mr. James could have a gun; their only plan if something unexpected happened inside of the home was to shoot and kill Mr. James.

59.     DeVinney and the other Task Force members failed to devise a non-lethal plan for arresting Mr. James if they entered his home and he had a gun or otherwise resisted.

60.     DeVinney and the other Task Force members failed to consider numerous other safer options for arresting Mr. James.

61.     For example, DeVinney and the other Task Force members failed to consider arresting Mr. James by waiting for him to exit the home and then rushing upon him and arresting him outside.

62.     DeVinney and the other Task Force members failed to consider arresting Mr. James by waiting for him to exit the home and enter his car, and then making a controlled stop.

63.     The failure of the Task Force to be properly trained in how to safely apprehend individuals with arrest warrants caused Mr. James' death.

64.     Defendant Monroe County Sheriff Todd Baxter failed to provide any training to DeVinney or the other Task Force members regarding how to properly and safely plan and execute an arrest warrant.

65.     Baxter never trained DeVinney and the other Task Force members that in situations like this, where there was no emergency requiring that the task force rush into to the house, that they were required to devise a safer plan, instead of rushing into the house, with no plan for how to react if they encountered resistance from the subject of the warrant.

66.     The Task Force members also chose not to wear body worn cameras, which is a violation of good and accepted police practices.

67.     Because of the foregoing, Mr. James suffered pain, terror, and death. Plaintiff seeks compensation in an amount to be determined at trial.

## VI. CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### NEGLIGENT PLANNING

68.     All preceding and subsequent paragraphs are incorporated by reference.

69.     As detailed above, Defendants were negligent in the planning and the execution of the arrest warrant.

70.     Defendants owed plaintiff a special duty under *Ferreira* v. *City of Binghamton,* 2022 NY Slip Op 01953 [Mar. 23, 2022].

71.     Defendants had a special duty to plan and execute the warrant in a safe and lawful manner.

72.     By planning and executing the arrest warrant, defendants took positive control of the premises, knowingly creating an unpredictable and potentially dangerous condition at the premises.

73.     Defendants had actual knowledge of the potentially dangerous safety condition and took positive action in assuming direction and control over the premises.

74.     By negligently planning and executing the arrest warrant, defendants took control of the dangerous situation of they created.

75.     Defendants breached their duty to Mr. James by, among other things, failing to conduct adequate surveillance and other intelligence gathering.

76.     Defendants breached their duty to Mr. James by, among other things, failing to devise a non lethal plan for apprehending and arresting Mr. James if he resisting their efforts to bring him into custody.

- 11 -

NYSCEF DOC. NO. 5                                    RECEIVED NYSCEF: 02/14/2022

77.    Decedent's death was a direct and proximate result defendants' negligently planning and executing the arrest warrant.

78.    As a result of the foregoing, decedent suffered injuries and damages, including death.

79.    The City, as the employer of several of the individual defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

### SECOND CLAIM FOR RELIEF
### WRONGFUL DEATH

80.    All preceding and subsequent paragraphs are incorporated by reference.

81.    Plaintiff's decedent is survived by distributes.

82.    By reason of the wrongful death of the decedent, the decedent's distributees have sustained pecuniary loss and damages from his wrongful death.

83.    The amount of damages sought exceeds the jurisdiction of all lower courts that would otherwise have jurisdiction of this action.

### THIRD CLAIM FOR RELIEF
### EMOTIONAL LOSS

84.    All preceding and subsequent paragraphs are incorporated by reference.

85.    Plaintiff's decedent is survived by distributes.

86.    By reason of the wrongful death of the decedent, the decedent's distributees have sustained emotional loss, including grief, anguish, loss of love, loss of comfort, loss of companionship and other damages from his wrongful death.

87.    The amount of damages sought exceeds the jurisdiction of all lower courts that would otherwise have jurisdiction of this action.

### FOURTH CLAIM FOR RELIEF
### NEGLIGENCE

- 12 -

NYSCEF DOC. NO. 5                                                    RECEIVED NYSCEF: 02/14/2022

88.     All preceding and subsequent paragraphs are incorporated by reference.

89.     The actions of the defendants, their agents, servants, employees, officers and deputies were negligent, which was the direct and proximate cause of the decedent's injuries.

90.     Defendants owed plaintiff a special duty under *Ferreira* v. *City of Binghamton,* 2022 NY Slip Op 01953 [Mar. 23, 2022].

91.     Defendants breached that duty by acting negligently in planning and executing the warrant in an unsafe manner.

92.     Defendants breached that duty in the type and amount of force used against decedent.

93.     Defendants' breach of that duty was the direct and proximate cause of decedent's injuries and death.

94.     Defendants' actions were willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed.

95.     The amount of damages sought exceeds the jurisdiction of all lower courts that would otherwise have jurisdiction of this action.

### FIFTH CLAIM FOR RELIEF
**Assault and Battery**

96.     All preceding and subsequent paragraphs are incorporated by reference.

97.     Defendants assaulted and battered decedent.

98.     Defendants battered dedecent by seizing and tackling him.

99.     Defendants battered decedent by, upon information and belief, shooting him.

100.    Decedent did not consent to the contact.

- 13 -

NYSCEF DOC. NO. 5                                                    RECEIVED NYSCEF: 02/14/2022

101.    The types and levels of force defendants used against decednet were in contravention of, or inconsistent with, good and accepted police practices.

102.    At no point during the incident described herein did the circumstances necessitate or support the above applications of force utilized by the defendants against decedent.

103.    By the aforedescribed conduct, defendants, their agents, servants and employees, acting within the scope of their employment, intentionally, willfully and maliciously battered decedent, when they, in a hostile and/or offensive manner struck decedent without his consent and with the intention of causing harmful and/or offensive bodily contact to the decedent and caused such battery.

104.    The RPD Officers were at all times agents, servants, and employees acting within the scope of their employment by the Defendant CITY and the RPD, which are therefore responsible for their conduct.

105.    The Defendant CITY, as the employer of the individual RPD defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

106.    Defendants' actions were willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed.

107.    As a result, decedent sustained damages in an amount in excess of the jurisdictional limits of all the lower Courts of the State of New York.

## SIXTH CLAIM FOR RELIEF
### Failure To Intervene

108.    All preceding and subsequent paragraphs are incorporated by reference.

109.    The individual defendants all had an affirmative duty to intervene on decedent's behalf to prevent the violation of his rights by the other defendants.

NYSCEF DOC. NO. 5                                                    RECEIVED NYSCEF: 02/14/2022

110.    The individual Defendants failed to intervene on decedent's behalf despite having had realistic opportunities to do so.

111.    The individual defendants failed to intervene on decedent's behalf despite having substantially contributed to the circumstances within which decedent's rights were violated by their affirmative conduct.

112.    As a result of the aforementioned conduct of the individual defendants, decedent's rights were violated.

113.    The Defendant CITY, as the employer of the individual RPD defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

114.    Defendants' actions were willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed.

115.    As a result, plaintiff sustained damages in an amount in excess of the jurisdictional limits of all the lower Courts of the State of New York.

## SEVENTH CLAIM FOR RELIEF
### Negligent Training, Supervision and Discipline
### (Against BAXTER)

116.    All preceding and subsequent paragraphs are incorporated by reference.

117.    Defendant BAXTER was negligent in the training, supervision and discipline of the Defendant Sheriff's Deputies, who were provided, upon information and belief, no training on how to safely execute an arrest warrant.

118.    Alternatively, the training BAXTER provided to the Sheriff's Deputies was inadequate.

119.    BAXTER's negligence in failing to supervise and discipline his Sheriff's Deputies was the direct and proximate cause of decedent's injuries.

NYSCEF DOC. NO. 5                                           RECEIVED NYSCEF: 02/14/2022

120.    As a result, plaintiff sustained damages in an amount in excess of the jurisdictional

limits of all the lower Courts of the State of New York.

**WHEREFORE and in light of the foregoing**, Plaintiff respectfully requests that the Court

assume jurisdiction and:

> [a] Award appropriate compensatory and punitive damages.
> [b] Empanel a jury.
> [c] Award such other and further relief as the Court deems to be in the interest of
> justice.

Dated: New York, New York                Respectfully Submitted,
      December 14, 2022

ROTH & ROTH, LLP
EASTON THOMPSON KASPEREK SHIFFRIN LLP


By:       _____~//s//~_____
      Elliot D. Shields
      Roth & Roth, LLP
      Counsel for Plaintiff
      192 Lexington Avenue, Suite 802
      New York, New York 10016
      Tel: 212-425-1020

      Donald M. Thompson
      Easton Thompson Kasperek Shiffrin LLP
      The Powers Building
      16 West Main Street, Suite 243
      Rochester, New York 14614
      Tel.: 585-423-8290

NYSCEF DOC. NO. 6

RECEIVED NYSCEF: 01/11/2023

MONROE COUNTY CLERK'S OFFICE          THIS IS NOT A BILL. THIS IS YOUR RECEIPT.

Receipt # 3305463

Book   Page   CIVIL

Return To:
County of Monroe Department of Law

No. Pages:  12

Instrument: EXHIBIT(S)

Control #:      202301110700
Index #:        E2022010302

Date: 01/11/2023

James, Shenea

Time: 11:47:54 AM

City of Rochester
Baker, William
Arrowood, Richard
Baxter, Todd
Devinney, Christian

Total Fees Paid:                        $0.00

                              Employee:

State of New York

MONROE COUNTY CLERK'S OFFICE
WARNING – THIS SHEET CONSTITUTES THE CLERKS
ENDORSEMENT, REQUIRED BY SECTION 317-a(5) &
SECTION 319 OF THE REAL PROPERTY LAW OF THE
STATE OF NEW YORK. DO NOT DETACH OR REMOVE.

JAMIE ROMEO

MONROE COUNTY CLERK



NYSCEF DOC.

| Incident Report | Monroe county Sheriff | HQ | 09/15/2021 | 1039 | RECEIVED NYSCEF: 01/20/2023 |
|---|---|---|---|---|---|

<table>
<tr><td colspan="6">7. Date From<br>09/15/21</td><td colspan="2">8. Time From<br>1038</td><td colspan="2">9. Date To<br>09/15/21</td><td colspan="2">10. Time To<br>1039</td><td colspan="4">11. Dispatched to (Address)<br>6 Vinewood Place Rochester, NY 14608</td></tr>
</table>

**INCIDENT**

12. Incident Address (Street, Bldg. No., Apt. No)
6 Vinewood Place

13. City, Stat, Zip C/T/V
Rochester, NY 14608

14. Weapon(s)

| 15. OFF. NO | | LAW | SECTION | SUB | CL | CAT | DEG | ATT | NAME OF OFFENSE | CTS |
|---|---|---|---|---|---|---|---|---|---|---|
| | 1 | | | | | | | ☐ | | |
| | 2 | | | | | | | ☐ | | |
| | 3 | | | | | | | ☐ | | |

**VICTIM**

| 16. Victim Name (V1) | 17. (V1)Address: (Street, City, State, Zip) | 18. Telephone No. W/H/C<br>( ) | A. |
|---|---|---|---|

| 19. Date of Birth | 20. Age | 21. Sex<br>☐ M ☐ F<br>☐ U | 22. Race<br>☐ White ☐ Black<br>☐ Indian ☐ Asian ☐ Unk | 23. Ethnic<br>☐ Hispanic<br>☐ Non-Hispanic ☐ Unk | 24. Residence Status: ☐ Temp. Res.-Foreign Nat.<br>☐ Resident ☐ Tourist ☐ Student ☐ Other<br>☐ Commuter ☐ Military ☐ Homeless ☐ Unk | B. |
|---|---|---|---|---|---|---|

25. Victim DID receive information on Victim's Rights and Services pursuant to new York State Law ☐ Yes ☐ No

**ASSOCIATED PERSONS**

26. R=Reporting Person   W=Witness   PK=Person w/Knowledge   NI=Not Interviewed   NO=Interview-No Information

| Type /No. | Name (Last, First, Middle) | D.O.B | Sex M/F/U | Race: W/B/I A/U | Address | Telephone No. (W/H/C) | |
|---|---|---|---|---|---|---|---|
| | | | | | | | C. |
| | | | | | | | D. |
| | | | | | | | E. |
| | | | | | | | F. |
| | | | | | | | G. |

**SUSPECT/ARRESTED MISSING PERSONS**

| 27. Type/No | 28. Name (Last, First, Middle) | 29. Alias/Nickname/Maiden | 30. Apparent Condition:<br>☐ Impaired Drugs  ☐ Mental Dis ☐ Unk<br>☐ Impaired Alcohol ☐ Inj/Ill ☐ App. Normal | H. |
|---|---|---|---|---|

| 31. Address | 32. Telephone No. W/H/C<br>( )   ( ) | 33. MoRIS No. | 34. Employer / School | I. |
|---|---|---|---|---|

| 35. DOB | 36. Age | 37. Sex<br>☐ M ☐ F<br>☐ U | 38. Race<br>☐ White ☐ Black<br>☐ Asian ☐ Indian ☐ Unk | 39. Ethnic<br>☐ Hispanic ☐ Unk<br>☐ Non-Hispanic | 40. Build<br>☐ Large<br>☐ Small<br>☐ Medium | 41. Skin Color<br>☐ Light ☐ Dark ☐ Unk<br>☐ Med ☐ Other | 42. Height<br><br>Ft.   In. | 43. Weight | J. |
|---|---|---|---|---|---|---|---|---|---|

| 44. Hair | 45. Eye Color | 46. Glasses<br>☐ Yes ☐ Contacts<br>☐ No | 47. S/M/T | 48. Clothing Description | K. |
|---|---|---|---|---|---|

| 49. Missing Person Code: | 50. Mother's Maiden Name | 51. Misc. (School Dist/Place of Birth) | L. |
|---|---|---|---|

**PERSONAL PROPERTY**

| 52. Vict/ Susp. No. | Property Status | Property/ Drug Type TABLE T | Quantity/ Measure TABLE U | Color | Make/ Model | Serial#/VIN | DESCRIPTION<br>Firearms: include Caliber/Barrel Length & Finish | TT No. | Value | M. |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | N. |
| | | | | | | | | | | M.O. |

**VEHICLES**

| 53. Vehicle Status | 54. License Plate | ☐ Full<br>☐ Partial | 55. Lic. State | 56. Exp. Yr. | 57. Plate Type | 58. Value | 59. Veh Yr. | 60. Veh Color | Total | 1. |
|---|---|---|---|---|---|---|---|---|---|---|
| 61. Make | | 62. Model | | 63. Style | | 64. VIN | | 65. Inventory Search<br>☐ Yes ☐ No | | 2. |
| 66. Towed By:<br>To: | | 67. Working/Recover CR# | | 68. Hold For | | 69. Owner Notified<br>☐ No ☐ Yes | 70. TT Message # | | | 3. |

**NARRATIVE**

| 71<br>See Addendum for Narrative. | 4. |
|---|---|
| | 5. |
| | 6. |
| | 7. |
| | 8. |

**ADMINISTRATIVE**

False statements made herein are punishable by a Class A Misdemeanor pursuant to the New York State Penal Law | 9.

| 72. Inquiries ☐ DMV ☐ Want/Warrant ☐ Scofflaw ☐ Crim Hist<br>☐ Stolen Property ☐ Other Tech By: | 73. NYSPIN Message # | 74. Complainant's Signature |
|---|---|---|

| 75. Reporting officer's Signature (Include Rank)<br>Inv. J. Schnars | 76. ID No<br>3660 | 77. Supervisor's Signature<br>INV. SGT. BOLTS | 78. ID No<br>3021 |
|---|---|---|---|

| 79. Status: ☐ Field<br>☐ Cleared by (check box to right)<br>☐ Incident<br>☐ CBI<br>☐ Warrant Advised | Cleared By:<br>☐ Arrest-Adult   ☐ Arrest-Juv   ☐ Pros Declined<br>☐ Death of Offender ☐ Vict. Refused Coop ☐ Juv. No Court<br>☐ Extradition Denied ☐ Unfounded | 80. Review Date:<br>9/30/21 | 81. Notified / Turned Over To: |
|---|---|---|---|

**Additional Narrative On Addendum**   Page 1Of 2

Monroe County Incident Report

PB-066-11

NYSCEF DOC. NO. 6                                                                RECEIVED NYSCEF: 01/11/2023

| MONROE COUNTY SHERIFF | | | CR# |
|---|---|---|---|
| **ADDENDUM** A CONTINUATION OF A | | **Incident**  REPORT | 21-150128 |
| 3. VICTIM'S NAME (LAST, FIRST, MIDDLE) OR FIRM NAME IF BUSINESS | 4. LOCATION OF INCIDENT (HOUSE NO., STREET, C/T/V) 6 Vinewood Place          Rochester, NY 14608 | | 5. DATE OF INCIDENT 09/15/21 |

1. September 15, 2021. Members of the U.S. Marshall's Fugitive Task Force responded to 6 Vinewood Place in the city if Rochester to serve an arrest warrant on a Derrick James. James had an outstanding warrant for Assault 2nd Degree out of Wayne County. During the warrant service, a physical struggle ensued between James and members of the task force. At this time James was armed with a handgun. During the physical struggle the handgun James possessed fired and as a result James was struck one time in the upper body with the bullet. Despite lifesaving efforts, James was pronounced deceased at the scene.

Members of the Monroe County Sheriff's Office were assigned to the U.S Marshall's Fugitive Task Force during this incident. Some of the members were outside when this incident occurred and some of the members were inside of the residence when this incident occurred. MCSO members that were on the outside of this residence when this incident occurred included Dep. Cassidy, Dep. Connell, and Dep. Zawadzki. Those members responded to the New York State Police Troop E Barracks located at 1155 Scottsville Road and provided signed supporting depositions to NYSP Investigators.

Members of the Monroe County Sheriff's Office that were inside of the residence when this incident occurred responded to the Rochester Police Department Headquarters located at 185 Exchange Blvd. Those MCSO members included Sgt. DeVinney, Sgt. Edwards, Dep. Carroll, and Dep. Wood. R/I also responded to RPD Headquarters. RPD Inv. Klein and R/I had conversations with these MCSO members regarding the incident in a 3rd floor conference room. Also present during these conversations were Monroe County Sheriff PBA Attorney Kevin Morabito. All members were spoken to individually. At the conclusion of the conversations, arrangements were made for the members to provide signed supporting depositions at a later date.

2. September 22, 2021. R/I along with Inv. Branagan responded to the Rochester Police Department's Major Crimes Unit Conference Room for the purpose of obtaining supporting depositions from the MCSO members that were inside of the residence when this incident occurred. Also present were Monroe County Sheriff PBA Attorney Kevin Morabito, New York State Assistant Attorney General James Marra, and New York Attorney General Investigator Dennis Gonzalez. Signed supporting depositions were obtained from Sgt. DeVinney, Sgt. Edwards, Dep. Carroll, and Dep. Wood. Copies of the supporting depositions were provided to the New York State Attorney General's Office and the Rochester Police Department for their respective investigations. Refer to RPD CR# 21-204327 for full details regarding their investigation.

This concludes R/I's involvement in this incident.

Closed, incident.

| REPORTING OFFICER(S) Inv. J. Schnars, 3660 | SUPERVISOR  INV. SGT. BOLTON  #3021 9/30/21 | 2 of 2 |
|---|---|---|

**MCSO CR# 21-150128 / RPD CR# 21-204327**

Page 1 of 2

# STATE OF NEW YORK – COUNTY OF MONROE
# CITY COURT CITY OF ROCHESTER

| THE PEOPLE OF THE STATE OF NEW YORK AGAINST | SUPPORTING DEPOSITION GENERAL |

### DEFENDANT

**I, Christian DeVinney**

BY THIS SUPPORTING DEPOSITION MAKE THE FOLLOWING ALLEGATION OF FACT IN CONNECTION WITH AN ACCUSATORY INSTRUMENT FILED, OR ABOUT TO BE FILED, WITH THIS COURT AGAINST THE ABOVE DEFENDANT.

I, Christian DeVinney (DOB:10/28/76) am 44 years old and am employed by the Monroe County Sheriff's Office as a Sergeant on the Road Patrol where I oversee the Sheriff's Warrant Unit. I have worked in Law Enforcement since 1998.

On 09/15/21, I was acting in my official capacity as a Deputy Sheriff. I had been working on an unrelated detail that morning when I was notified that our warrant unit was going to make an attempt to locate and arrest Dedrick James at 6 Vinewood Place in the City of Rochester. I was aware of Dedrick and the back ground of his warrant as we had collectively discussed his warrant on a prior occasion. I drove to the area of the warrant where I met up with the rest of our team. We discussed the detail of the warrant suspect and the plan to attempt to locate him at his house. Prior to moving towards the suspect's house, I made arrangements for everyone to know their roles and to ensure that someone would be in charge of the team's medical kit.

Once our plan was in place, we moved towards the house by car. The lead car turned on its emergency lights so that residents would know that we were law enforcement. Once we were stopped in front of the house, a few team members approached the house while others took various positions around the house. I took up a position around the one four corner of the house which provided me with a good view of the exterior of the house. From where I was standing, I could hear the team members at the front door engaging in a conversation with someone. The conversation sounded as if they had started addressing the suspect. I saw the guys start to run into the house and then heard someone yell runner. I started to move down the side of the house to make sure no one was trying to run out the back of the house. While I was alongside the house, I could hear commotion from inside the house.

After hearing the commotion from inside the house, I ran back to the front side of the house and towards the front door. As I entered the house I noticed a woman in the Living room who appeared to have been picking something up off the floor. I continued down the hall way where the commotion was continuing. Once I got up to Sgt. Edwards I could see members of our team fighting with someone in the bathroom. I directed Edwards to pull his dog out of the way. Right around that time, I heard a gunshot from the bathroom. As Edwards pulled his dog down the hall I heard him say he was going to notify dispatch.

As the commotion settled down, I asked everyone in the bathroom who shot and if anyone was hurt. As the guys were standing up from the tub and checking themselves for injuries, I heard someone say that he had shot himself. Trooper Ulatowski had a small handgun in his hand that appeared to be in lockback as he walked out of the bathroom. Once Marshall Smith got up out of the Tub Deputy Wood and I handcuffed the suspect and then lifted him out of the tub and laid him on the bathroom floor.

VERIFICATION BY SUBSCRIPTION AND NOTICE
PENAL LAW SECTION 210.45

IT IS A CRIME, PUNISHABLE AS A CLASS A MISDEMEANOR UNDER THE LAWS OF THE STATE OF NEW YORK, FOR A PERSON, IN AND BY A WRITTEN INSTRUMENT, TO KNOWINGLY MAKE A FALSE STATEMENT, OR TO MAKE A STATEMENT WHICH SUCH PERSON DOES NOT BELIEVE TO BE TRUE.

AFFIRMED UNDER PENALTY OF PERJURY THIS
22nd DAY OF SEPTEMBER, 2021

DEPONENT

**MCSO CR# 21-150128 / RPD CR# 21-204327**

Page 2 of 2

# STATE OF NEW YORK – COUNTY OF MONROE
# CITY COURT CITY OF ROCHESTER

THE PEOPLE OF THE STATE OF NEW YORK
AGAINST

SUPPORTING DEPOSITION
GENERAL

_____
**DEFENDANT**

**I, Christian DeVinney**
_____

BY THIS SUPPORTING DEPOSITION MAKE THE FOLLOWING ALLEGATION OF FACT IN CONNECTION WITH AN ACCUSATORY INSTRUMENT FILED, OR ABOUT TO BE FILED, WITH THIS COURT AGAINST THE ABOVE DEFENDANT.

After seeing all of the blood on the suspect, I began looking him over for injuries.  I found a gunshot wound on his upper left chest. We placed a chest seal onto the wound and then removed the handcuffs from behind his back in order to have better access to treating him.  Deputy Connell assisted me with providing medical care.  Connell placed a Nasal Pharyngeal Airway into the suspect's nose and then began providing air by way of a bag valve mask. At the same time, I began chest compressions.  Connell and I continued resuscitative efforts until EMS arrived.

Once relieved by EMS, I exited the house where I checked to make sure no one else had been injured during the incident.  I did not go back into the house after that point.

VERIFICATION BY SUBSCRIPTION AND NOTICE
PENAL LAW SECTION 210.45

IT IS A CRIME, PUNISHABLE AS A CLASS A MISDEMEANOR UNDER THE LAWS OF THE STATE OF NEW YORK, FOR A PERSON, IN AND BY A WRITTEN INSTRUMENT, TO KNOWINGLY MAKE A FALSE STATEMENT, OR TO MAKE A STATEMENT WHICH SUCH PERSON DOES NOT BELIEVE TO BE TRUE.

AFFIRMED UNDER PENALTY OF PERJURY THIS
22nd DAY OF SEPTEMBER, 2021
_____
DEPONENT

MCSO CR# 21-150128 / RPD CR# 21-204327

Page 1 of 2

# STATE OF NEW YORK – COUNTY OF MONROE
# CITY COURT CITY OF ROCHESTER

| THE PEOPLE OF THE STATE OF NEW YORK AGAINST | SUPPORTING DEPOSITION GENERAL |
|---|---|

### DEFENDANT

**I, Charles Carroll Jr.**

BY THIS SUPPORTING DEPOSITION MAKE THE FOLLOWING ALLEGATION OF FACT IN CONNECTION WITH AN ACCUSATORY INSTRUMENT FILED, OR ABOUT TO BE FILED, WITH THIS COURT AGAINST THE ABOVE DEFENDANT.

I, Charles Carroll Jr. (DOB: 06/16/81) am 40 years old and am a Deputy employed by the Monroe County Sheriff's Office. I have been employed by the Sheriff's Office for approximately 9 years. I am currently assigned to the Monroe County Sheriff's Warrant Unit and in conjunction the U.S. Marshall's Fugitive Task Force. I have been assigned at that unit for approximately two and a half years. As such I was deputized as a Deputy U.S. Marshall approximately two years ago.

On 09/15/21, I was acting in my official capacity as a Deputy Sheriff. I had been working on an unrelated detail when I was notified that our warrant unit was going to make an attempt to locate and arrest Dedrick James at 6 Vinewood Place in the City of Rochester. I was aware of Dedrick and the back ground of his warrant from a previous brief that was given to our unit a few days before. Once in the area, we had a follow up brief which was conducted over the radio. Once ready, our team drove up to the location. The two lead cars had emergency lights engaged to ensure that residents would know that there was law enforcement involvement. Once we were stopped in front of the house, a few team members approached the house while others took various positions around the house. I stood by one of our vehicles in the road while a few members attempted to make contact at the front door. I Believe those at the door were Trooper Ulatowski, Officer Baker and US Marshall Smith. From where I was standing, I heard Ulatowski knock at the door and identify himself as being with the State Police. I could hear a woman's voice as he was talking with someone at the door. Ulatowski said something along the lines of knowing that Dedrick was inside and asked that she send him out.

A moment after hearing Ulatowski talking with the female at the door, I saw the group start to rush into the house. I started to rush towards the house to follow everyone in. While walking into the house I heard someone yell "he's running" which I then yelled back to the rest of the group. Once inside of the house, I could hear and see the other members down the hall engaging with someone. I turned to my left to clear the living room. I saw an older female in the room but no one else. While I was in the Living room, I heard someone yell "he's got a gun." I ran towards the team down the hall.

Once down the hall, I came upon Sgt Edwards and Deputy Wood standing at the doorway of the bathroom. Looking between them, I could see Officer Baker, Trooper Ulatowski and Marshall Smith struggling with someone in the bathroom. I saw Deputy Wood Transition from his rifle to his pistol as he stepped into the bathroom. Within a very short time I heard what I believed to be a gunshot. I saw the guys standing up out of the tub and checking to see if they had been injured. I could see Deputy Wood pull who I recognized as Dedrick James out of the tub and lying him down on the floor.

VERIFICATION BY SUBSCRIPTION AND NOTICE
PENAL LAW SECTION 210.45

IT IS A CRIME, PUNISHABLE AS A CLASS A MISDEMEANOR UNDER THE LAWS OF THE STATE OF NEW YORK, FOR A PERSON, IN AND BY A WRITTEN INSTRUMENT, TO KNOWINGLY MAKE A FALSE STATEMENT, OR TO MAKE A STATEMENT WHICH SUCH PERSON DOES NOT BELIEVE TO BE TRUE.

AFFIRMED UNDER PENALTY OF PERJURY THIS
22nd DAY OF SEPTEMBER, 2021

_____
DEPONENT

**MCSO CR# 21-150128 / RPD CR# 21-204327**

Page 2 of 2

# STATE OF NEW YORK – COUNTY OF MONROE
# CITY COURT CITY OF ROCHESTER

THE PEOPLE OF THE STATE OF NEW YORK
AGAINST

SUPPORTING DEPOSITION
GENERAL

_____
**DEFENDANT**

I, Charles Carroll Jr.

BY THIS SUPPORTING DEPOSITION MAKE THE FOLLOWING ALLEGATION OF FACT IN CONNECTION WITH AN ACCUSATORY INSTRUMENT FILED, OR ABOUT TO BE FILED, WITH THIS COURT AGAINST THE ABOVE DEFENDANT.

As members began administering first aid to Dedrick, I returned to completing the security sweep of the house. Upon completion, I returned to where members of the team were performing first aid to see if I could help. I was asked by Deputy Wood and Sgt DeVinney to secure their rifles. I took both of their rifles and secured them in my truck. While outside, I was asked by team members that had gotten blood on them if I had any hand sanitizer. I provided them with what I had available. I did not go back in the house after that.

VERIFICATION BY SUBSCRIPTION AND NOTICE
PENAL LAW SECTION 210.45

IT IS A CRIME, PUNISHABLE AS A CLASS A MISDEMEANOR UNDER THE LAWS OF THE STATE OF NEW YORK, FOR A PERSON, IN AND BY A WRITTEN INSTRUMENT, TO KNOWINGLY MAKE A FALSE STATEMENT, OR TO MAKE A STATEMENT WHICH SUCH PERSON DOES NOT BELIEVE TO BE TRUE.

AFFIRMED UNDER PENALTY OF PERJURY THIS
22nd DAY OF SEPTEMBER, 2021

_____
DEPONENT

MCSO CR# 21-150128
RPD   CR# 21-204327

Page 1 of 3

## STATE OF NEW YORK  COUNTY OF MONROE
## CITY COURT CITY OF ROCHESTER

THE PEOPLE OF THE STATE OF NEW YORK
        AGAINST

<b>SUPPORTING DEPOSITION<br>GENERAL</b>

_____

DEFENDANTS/RESPONDANTS

I, David Wood, employed by the Monroe County Sheriff's Office located at 130 S. Plymouth Avenue, Rochester, NY 14614

BY THIS SUPPORTING DEPOSITION, MAKE THE FOLLOWING ALLEGATIONS OF FACT IN CONNECTION WITH AN ACCUSATORY INSTRUMENT FILED, OR TO BE FILED, WITH THIS COURT AGAINST THE ABOVE NAMED DEFENDANTS/RESPONDANTS.

I, David Wood (DOB: 12/07/86) am 34 years old and am a Deputy employed by the Monroe County Sheriff's Office. I have been employed by the Sheriff's Office for approximately 9 years. I am currently assigned to the Monroe County Sheriff's Office Tactical Unit. I have been assigned at that unit for approximately two years. I am also a Task Force Officer with the U.S. Marshall's Office assisting with the Fugitive Task Force. As such I was deputized as a Deputy U.S. Marshall approximately two months ago.

On 09/15/21, I was acting in my official capacity as a Deputy Sheriff. I was assigned to assist the U.S. Marshall's Task Force in attempting to serve a warrant at 6 Vinewood Place in the city of Rochester. The warrant was out of Wayne County by the New York State Police for a Dedrick James for the charge of Assault in the 2nd Degree. A couple days prior to this attempt we received a full briefing by NYSP Trooper Ulatowski regarding the warrant attempt. I was on my way into work when I heard that we would be attempting the warrant for James. I went to the area and was one of the last units to arrive at the location. When task force members went to the residence to knock on the front door, I was standing across the street. I was wearing blue jeans, brown boots, a black t-shirt, a gray/black baseball hat, a multi-cam gunbelt, and a black outer carrier. There are placards that are velcroed to the front and back of the outer carrier that say, "Sheriff" in green letters. From where I was standing across the street, I could see a number of our team members on the porch of the residence. I recognized Trooper Ulatowski and RPD Officer Baker on the porch.

VERIFICATION BY SUBSCRIPTION AND NOTICE
UNDER PENAL LAW SECTION 210.45

IT IS A CRIME, PUNISHABLE AS A CLASS A MISDEMEANOR UNDER THE LAWS OF THE STATE OF NEW YORK, FOR A PERSON, IN AND BY A WRITTEN INSTRUMENT, TO KNOWINGLY MAKE A FALSE STATEMENT, OR TO MAKE A STATEMENT WHICH SUCH PERSON DOES NOT BELIEVE TO BE TRUE.

AFFIRMED UNDER PENALTY OF PERJURY THIS
22nd DAY OF September, 2021.

_____
             DEPONENT

MCSO CR# <u>21-150128</u>
RPD   CR# <u>21-204327</u>

Page <u>2</u> of <u>3</u>

**STATE OF NEW YORK  COUNTY OF MONROE**
<u>CITY</u> **COURT** <u>CITY</u> **OF** <u>ROCHESTER</u>

THE PEOPLE OF THE STATE OF NEW YORK
      AGAINST

                                              **SUPPORTING DEPOSITION**
                                                   **GENERAL**

DEFENDANTS/RESPONDANTS

I, David Wood, employed by the Monroe County Sheriff's Office located at 130 S. Plymouth Avenue, Rochester, NY 14614

BY THIS SUPPORTING DEPOSITION, MAKE THE FOLLOWING ALLEGATIONS OF FACT IN CONNECTION WITH AN ACCUSATORY INSTRUMENT FILED, OR TO BE FILED, WITH THIS COURT AGAINST THE ABOVE NAMED DEFENDANTS/RESPONDANTS.

   I observed that Trooper Ulatowski knocked on the front door. The front door opened and there was an older black female that opened the door. Trooper Ulatowski asked the woman if Dedrick was here. The female replied yes. I then observed a male black with dreads standing in the hallway of the residence approximately ten feet from the front door. I noticed that the male's head was going back and forth. The task force members that were on the porch then entered the residence. I then sprinted to the residence and entered through the frontdoor. I was behind Sgt. Edwards and his partner.

   I just entered the residence and saw the task force members running in the house. I announced to other members of the task force that were outside of the house that the suspect was running. I continued in the house and observed that the task force members were in the bathroom and I heard a struggle. We moved towards the bathroom door. Sgt. Edwards and his partner were standing in the doorway to the bathroom. I was able to look into the bathroom and see that the task force members were struggling. I then heard who I believe to be Officer Baker state that, "He's got a gun." After hearing that, I turned to the group to tell the rest of them that he had a gun. I then moved Sgt. Edwards and his partner out of the threshold of the door. I was carrying my department issued rifle during this time. I then transitioned from my rifle to my department issued handgun. I still observed the task force members struggling in the bathtub. I then took one step into the bathroom.

VERIFICATION BY SUBSCRIPTION AND NOTICE
UNDER PENAL LAW SECTION 210.45

IT IS A CRIME, PUNISHABLE AS A CLASS A MISDEMEANOR UNDER THE LAWS OF THE STATE OF NEW YORK, FOR A PERSON, IN AND BY A WRITTEN INSTRUMENT, TO KNOWINGLY MAKE A FALSE STATEMENT, OR TO MAKE A STATEMENT WHICH SUCH PERSON DOES NOT BELIEVE TO BE TRUE.

                                      AFFIRMED UNDER PENALTY OF PERJURY THIS
                                      22nd DAY OF September, 2021.

                                            DEPONENT

MCSO CR# 21-150128
RPD   CR# 21-204327

Page 3 of 3

## STATE OF NEW YORK  COUNTY OF MONROE
## CITY COURT CITY OF ROCHESTER

THE PEOPLE OF THE STATE OF NEW YORK
                        AGAINST

                                    **SUPPORTING DEPOSITION**
                                    **GENERAL**

---

DEFENDANTS/RESPONDANTS

I, David Wood, employed by the Monroe County Sheriff's Office located at 130 S. Plymouth Avenue, Rochester, NY 14614

BY THIS SUPPORTING DEPOSITION, MAKE THE FOLLOWING ALLEGATIONS OF FACT IN CONNECTION WITH AN ACCUSATORY INSTRUMENT FILED, OR TO BE FILED, WITH THIS COURT AGAINST THE ABOVE NAMED DEFENDANTS/RESPONDANTS.

   Having heard someone yell that he had a gun, I tried to focus on looking for a gun as I stepped into the bathroom. From my perspective, I could not see the suspect or a gun. Once I had stepped into the bathroom, I heard what I believe to be RPD Officer Baker state that he was going to shoot him. A short time later I heard what I believe to be a gunshot. I looked to the task force members that were in the room to see if they had been shot. One of the task force members moved and I saw Dedrick laying in the bathtub. I secured Dedrick in handcuffs, lifted him out of the bathtub and began to assess his condition. At this point Sgt. DeVinny assisted me in rendering first aid to Dedrick. As part of the first aid we completed on Dedrick, I placed a chest seal on him. After a short time Dep. Connell relieved me in performing first aid on Dedrick. After I was relieved by Dep. Connell I went outside the residence and requested that the other task force members be checked on to see if they were injured. I then went back into the hallway of the residence and gathered my gear along with clearing a path for EMS to enter the bathroom.

VERIFICATION BY SUBSCRIPTION AND NOTICE
UNDER PENAL LAW SECTION 210.45

IT IS A CRIME, PUNISHABLE AS A CLASS A MISDEMEANOR UNDER THE LAWS OF THE STATE OF NEW YORK, FOR A PERSON, IN AND BY A WRITTEN INSTRUMENT, TO KNOWINGLY MAKE A FALSE STATEMENT, OR TO MAKE A STATEMENT WHICH SUCH PERSON DOES NOT BELIEVE TO BE TRUE.

                        AFFIRMED UNDER PENALTY OF PERJURY THIS
                        22nd DAY OF September, 2021.

                        _____
                                    DEPONENT

NYSCEF DOC. NO. 6                                                      RECEIVED NYSCEF: 01/11/2023

MCSO CR# 21-150128
RPD  CR# 21-204327

Page 1 of 1

## STATE OF NEW YORK  COUNTY OF MONROE
## CITY COURT CITY OF ROCHESTER

THE PEOPLE OF THE STATE OF NEW YORK
        AGAINST

**SUPPORTING DEPOSITION**
**GENERAL**

DEFENDANTS/RESPONDANTS

I, Shawn Edwards, employed by the Monroe County Sheriff's Office located at 130 S. Plymouth Avenue, Rochester, NY 14614

BY THIS SUPPORTING DEPOSITION, MAKE THE FOLLOWING ALLEGATIONS OF FACT IN CONNECTION WITH AN ACCUSATORY INSTRUMENT FILED, OR TO BE FILED, WITH THIS COURT AGAINST THE ABOVE NAMED DEFENDANTS/RESPONDANTS.

I, Shawn Edwards (DOB: 02/05/76) am 45 years old and am currently employed by the Monroe County Sheriff's Office as a Sergeant in the Road Patrol. I have been employed with the Sheriff's Office for approximately 24 years. I am currently assigned to the Monroe County Sheriff's Office Tactical Unit and Traffic Enforcement Unit as a supervisor. I am also the supervisor for the Monroe County Sheriff's Office K9 Unit. I have been a handler for approximately 10 years. For the past few months, I have been assigned to the U.S. Marshall's Fugitive Task Force. In that role I was deputized as a Deputy U.S. Marshall.

On 09/15/21, I was employed by the Monroe County Sheriff's Office acting in my official capacity as a Deputy Sheriff Sergeant. On that day I was assisting the U.S. Marshall's Fugitive Task Force with a warrant attempt. During this day I also had my K9 partner Ike with me. That warrant attempt was to be attempted at 6 Vinewood Place in the city of Rochester. The suspect we were looking for was Dedrick. I believe his last name was James. Dedrick had an outstanding warrant out of Wayne County for Assault 2nd Degree with the New York State Police. Prior to walking towards the residence I parked down the street. A few days prior to this warrant attempt, the task force received a full briefing on this case by Trooper Ulatowski. I was wearing my Monroe County Sheriff's Office issued uniform, which included Monroe County Sheriff's Office Patches on both of my arms, Sergeant Chevrons on both of my arms, my name embroidered on my outer carrier, along with a Sheriff's star.

Task force members stated that they were going to approach the house and requested that I come in the stack second with my K9 partner. While task force members knocked on the front door of the residence I was standing on the front entry steps. Deputy US Marshall Smith, RPD Officer Baker, and NYSP Trooper Ulatowski were standing on the porch to the residence. After members knocked on the front door, Deputy US Marshall Smith announced that he observed the front shades moving. Approximately 1-2 minutes later the front door opened. A female who I would describe as being a black female, appearing to be in her late 60's opened the door.

VERIFICATION BY SUBSCRIPTION AND NOTICE
UNDER PENAL LAW SECTION 210.45

IT IS A CRIME, PUNISHABLE AS A CLASS A MISDEMEANOR UNDER THE LAWS OF THE STATE OF NEW YORK, FOR A PERSON, IN AND BY A WRITTEN INSTRUMENT, TO KNOWINGLY MAKE A FALSE STATEMENT, OR TO MAKE A STATEMENT WHICH SUCH PERSON DOES NOT BELIEVE TO BE TRUE.

AFFIRMED UNDER PENALTY OF PERJURY THIS
22nd DAY OF September, 2021.

_____
                                DEPONENT

MCSO CR# 21-150128
RPD    CR# 21-204327

Page 2 of 2

## STATE OF NEW YORK  COUNTY OF MONROE
## CITY COURT CITY OF ROCHESTER

THE PEOPLE OF THE STATE OF NEW YORK
        AGAINST

                                      **SUPPORTING DEPOSITION**
                                             **GENERAL**

---

DEFENDANTS/RESPONDANTS

I, Shawn Edwards, employed by the Monroe County Sheriff's Office located at 130 S. Plymouth Avenue, Rochester, NY 14614

BY THIS SUPPORTING DEPOSITION, MAKE THE FOLLOWING ALLEGATIONS OF FACT IN CONNECTION WITH AN ACCUSATORY INSTRUMENT FILED, OR TO BE FILED, WITH THIS COURT AGAINST THE ABOVE NAMED DEFENDANTS/RESPONDANTS.

Members of the task force engaged the woman in conversation, but I could not hear the entire conversation. I did hear someone mention Dedrick's name. I then observed a male black inside of the residence come from a back hallway walk towards the front door. I recognized Dedrick, because I observed Dedrick's picture during our pre-brief prior to going to the residence.I remembered Dedrick was not wearing a shirt. Dedrick threw up in the air numerous amounts of paper U.S. currency. Dedrick stated, "That's my money." Dedrick then ran towards the back of the house. I followed Deputy US Marshall Smith, Officer Baker, and Trooper Ulatowski into the house. I immediately started announcing, "Sheriff's K9." I observed the task force members turn the corner and enter a small bathroom. Almost immediately I started hearing task force members yelling, "Gun, gun, gun." I am not sure which one of the task force members was yelling this or if there was more than one task force members yelling. I was able to observe that the three task force members were on top of Dedrick in the bathtub. I was not in the bathroom during this time. I was standing right at the doorway leading to the bathroom from the hallway. I announced that I was there with the K9. Dep. Wood then requested that I slide out of the way. I positioned my dog, so Dep. Wood was able to enter the bathroom. During this whole time the task force members in the bathroom continued to yell, "Gun." I observed Dep. Wood take one step into the bathroom and I heard a gunshot.

    Sgt. DeVinney then came up to me and requested I take my K9 partner outside. I escorted my partner outside and placed him in my patrol vehicle. I then switched my portable radio over to the "RPD Westside Primary." I could hear that Dep. Cassidy was already on that channel requesting assistance. I believe that somewhere during this point I provided Dep. Connell the medical bag, which contained first aid equipment. I got back on the radio and asked EMS to expedite. I also requested a second EMS unit to the scene as a precaution. I then started checking the three task force members that were in the bathroom with Dedrick for injuries. I then called our chain of command to brief them on the status of this incident.

VERIFICATION BY SUBSCRIPTION AND NOTICE
UNDER PENAL LAW SECTION 210.45

IT IS A CRIME, PUNISHABLE AS A CLASS A MISDEMEANOR UNDER THE LAWS OF THE STATE OF NEW YORK, FOR A PERSON, IN AND BY A WRITTEN INSTRUMENT, TO KNOWINGLY MAKE A FALSE STATEMENT, OR TO MAKE A STATEMENT WHICH SUCH PERSON DOES NOT BELIEVE TO BE TRUE.

                        AFFIRMED UNDER PENALTY OF PERJURY THIS
                        22nd DAY OF September, 2021.

                                    ————————————————————
                                         DEPONENT

NYSCEF DOC. NO. 7

RECEIVED NYSCEF: 01/11/2023

MONROE COUNTY CLERK'S OFFICE                    THIS IS NOT A BILL. THIS IS YOUR RECEIPT.

Receipt # 3305464

Book    Page    CIVIL

Return To:                                       No. Pages:  16
County of Monroe Department of Law
                                                 Instrument: EXHIBIT(S)

                                                 Control #:        202301110701
                                                 Index #:          E2022010302

                                                 Date: 01/11/2023

James, Shenea                                    Time: 11:47:58 AM

City of Rochester
Baker, William
Arrowood, Richard
Baxter, Todd
Devinney, Christian

Total Fees Paid:                    $0.00

                                                 Employee:

State of New York

MONROE COUNTY CLERK'S OFFICE
WARNING – THIS SHEET CONSTITUTES THE CLERKS
ENDORSEMENT, REQUIRED BY SECTION 317-a(5) &
SECTION 319 OF THE REAL PROPERTY LAW OF THE
STATE OF NEW YORK. DO NOT DETACH OR REMOVE.

JAMIE ROMEO

MONROE COUNTY CLERK



NYSCEF DOC. NO. 7

RECEIVED NYSCEF: 01/11/2023



**Office of the New York State Attorney General Letitia James**

# Office of Special Investigation

August 26,2022

# Report on the Investigation into the Death of Dedrick James

ag.ny.gov/osi     (800) 771-7755

## DEDRICK JAMES

### SUMMARY

New York Executive Law Section 70-b ("Section 70-b") authorizes the Office of the Attorney General ("OAG"), through the Office of Special Investigation ("OSI"), to investigate and, if warranted, to prosecute offenses arising from any incident in which the death of a person is caused by a police officer. When OSI does not seek charges, Section 70-b requires issuance of a public report. This is the public report of OSI's investigation of the death of 24-year-old Dedrick James.

On September 15, 2021, at 10:30 a.m., at 6 Vinewood Place in the City of Rochester (Monroe County), a contingent of the United States Marshals Service Fugitive Task Force (for the purposes of this report, this contingent will be referred to as "USMS Task Force" or "Task Force") attempted to arrest Mr. James on an arrest warrant issued by a Marion Town Court Justice in Wayne County, New York. The Task Force included officers from the New York State Police ("NYSP"), Monroe County Sheriff's Office ("MCSO"), Rochester Police Department ("RPD"), Monroe County District Attorney's Office ("MCDA"), and the United States Marshals Service ("USMS").

Based on the investigation, OSI concludes that the evidence does not prove beyond a reasonable doubt that the actions of NYSP Inv. Ulatowski and RPD PO Baker were unjustified under Article 35 of the New York Penal Law.[1]

### BACKGROUND

#### The Alleged Crime[2]

According to NYSP Investigator Scott Carr, who spoke to members of OSI after the incident, on December 27, 2020, he was assigned to investigate injuries to a two-year-old child, allegedly inflicted by his father, Dedrick James, that day while his mother was at work. When the child's mother came home and found him injured, she took him to Newark-Wayne Community Hospital, where medical staff determined that he required a higher level of care and transferred him to Strong Memorial Hospital in Rochester, by helicopter, where he was admitted to the intensive care unit, intubated, and placed on a ventilator due to respiratory failure.

For the next two days, NYSP tried to reach Mr. James, without success, by going to his home in Wayne County, calling his cell phone, having the child's mother call his cell phone several times, calling and interviewing Mr. James's mother, and going to his other known home at 6 Vinewood Place in Rochester. On December 29, 2020, Mr. James's mother brought Mr. James to the NYSP barracks in Rochester for an interview, in which Mr. James said the child had accidentally injured himself.

---

[1] The actions of USMS Dep. Marshal Smith are not within the legal authority of OAG to prosecute, because Dep. Marshal Smith was not a "police officer" or a "peace officer" as defined in Section 70-b, the sole source of OAG's prosecutorial authority in cases of this kind.

[2] The description of the alleged crime is provided to explain how and why the matter was referred to the USMS Task Force.

NYSCEF DOC. NO. 7

RECEIVED NYSCEF: 01/11/2023

Inv. Carr and other NYSP investigators conducted an investigation including the execution of search warrants, review of medical records, interviews with doctors, and interviews of other witnesses.

On April 20, 2021, Inv. Carr interviewed Mr. James a second time at the NYSP barracks in Rochester, and Mr. James again said the child had accidentally injured himself. However, the investigation had developed evidence that the injuries could not have been self-inflicted, and Inv. Carr told Mr. James he was free to go that day but would likely be arrested after the District Attorney's Office reviewed the case. Inv. Carr said if Mr. James remained cooperative, he could coordinate a surrender.

On July 26, 2021, the District Attorney's Office authorized Inv. Carr to arrest Mr. James for Assault in the Second Degree, Penal Law Section ("PL") 120.05(9).

Over the next few weeks, Inv. Carr made multiple unsuccessful attempts to contact Mr. James to arrange his voluntarily surrender. On August 11, 2021, he called Mr. James and left a voicemail but received no response. On August 23, 2021, he called again but no one answered. On August 24, 2021, he traveled from Wayne County to 6 Vinewood Place in Rochester with his partner and knocked on the door; although there were two cars in the driveway and it appeared someone was inside, nobody answered.

On August 25, 2021, Inv. Carr filed a Felony Complaint charging Mr. James with Assault in the Second Degree and obtained an arrest warrant from Marion Town Justice Samuel J. Bonafede. The next day, Inv. Carr contacted NYSP Inv. Ulatowski, a member of the Rochester-based USMS Task Force, and requested they find and arrest Mr. James. Inv. Carr said he referred the warrant to the Task Force because they were better equipped to find unresponsive warrant subjects, allowing him to continue to investigate other cases, and, in this case, they were physically closer to Mr. James's residence in Rochester. Inv. Carr told Inv. Ulatowski about Mr. James's alleged crime and Mr. James's last known address and sent him a copy of the arrest warrant and Mr. James's criminal history.

### The USMS Task Force

According to USMS Office of Professional Responsibility Chief Aaron Ward, who spoke to members of OSI, USMS Fugitive Apprehension Task Forces, composed of officers from federal, state, and local agencies, investigate and arrest persons with active state and federal warrants. Task Forces receive arrest warrant referrals from participating agencies, who sign Memorandums of Understanding (MOUs) with the USMS. The MOUs limit the types of cases a Task Force will accept to serious felonies, including "violent crimes against persons." Assault in the Second Degree is a qualifying crime.

According to Inv. Ulatowski, who spoke to members of OSI, after Inv. Carr forwarded the warrant referral, Inv. Ulatowski briefed other Task Force members and, over the next few weeks, they conducted surveillance of Mr. James's house. On the morning of September 15, 2021, at 9:00 a.m.,[3] Inv. Ulatowski drove by 6 Vinewood Place and saw a 2013 white Dodge Dart, registered to Mr. James, parked in the driveway. He asked RPD Inv. Richard Arrowood, another Task Force member, to watch the house and car, while he attended to other work matters. When Inv. Ulatowski returned at 10:00 a.m., the car was still in the driveway.

---

[3] All times are approximate.

NYSCEF DOC. NO. 7

RECEIVED NYSCEF: 01/11/2023

Believing Mr. James would likely be inside, Inv. Ulatowski radioed the Task Force Headquarters that he had a lead on a warrant suspect, and other members should assemble to arrest him.

According to MCSO Sgt. Christian DeVinney, the tactical leader of the Rochester-based USMS Task Force, who spoke to members of OSI, at least eight to ten officers are needed to execute an arrest warrant, because that is the minimum number to handle a variety of assigned roles, including officers to knock on the front door, cover the perimeter and ensure the suspect does not escape, clear the home for security reasons and conduct searches, stay with anyone present other than the subject until the home is secure, act as designated medics, drivers, and radio operators, and if necessary perform breach/entry. Due to the serious nature of the crimes alleged in referrals, the Task Force never conducts one or two officer home visits. Once a warrant has been referred to the Task Force no further attempts are made to gain voluntary surrender.

Consistent with these protocols, on September 15, 2021, fourteen members of the Task Force arrived at 6 Vinewood Place to arrest Mr. James.



*6 Vinewood Place on September 15, 2021. Dedrick James's 2013 White Dodge Dart is in the driveway on the right.*

## INTERVIEWS

Based on OSI's interviews, as summarized below, and other evidence, at approximately 10:35 a.m., Task Force officers arrived at 6 Vinewood Place in multiple vehicles and approached the home. Inv. Ulatowski, RPD PO Baker, and USMS Dep. Marshal Smith took the lead and were the only officers physically struggling with Mr. James when his gun went off.

There is no BWC footage of what took place in the bathroom because the USMS Task Force in this case had not implemented The United States Department of Justice's Policy permitting

NYSCEF DOC. NO. 7

RECEIVED NYSCEF: 01/11/2023

Task Force officers to wear BWCs. As a result, the only available evidence of what occurred during the struggle that ended in Mr. James's death is the accounts of the officers on the scene.

OSI interviewed Inv. Ulatowski, PO Baker, Dep. Marshal Smith, all other officers who could see into the bathroom at the time of the shooting. OSI also interviewed Mr. James's grandmother, Betty Ervin, who was home at the time. In addition to their interviews, Ms. Ervin and the officers, except Dep. Marshal Smith, provided written statements, which they swore to, pursuant to Penal Law section 210.45. Dep. Marshal Smith provided an incident report. The following is a summary of their accounts.

### NYSP Investigator Jeffrey Ulatowski's Account

Inv. Ulatowski said he was the point person for Mr. James's arrest. He approached the front door with PO Baker and Dep. Marshal Smith and rang the doorbell. According to Inv. Ulatowski, after a few minutes, a woman, who he later learned was Mr. James's grandmother, answered the door. Inv. Ulatowski asked if Mr. James was home and told her they had a warrant for his arrest. The woman acknowledged that Mr. James was home and said she would go get him. She tried to shut the front door, but Inv. Ulatowski blocked it with his foot. The woman stepped back from the door, and Inv. Ulatowski followed her inside.



*View from the front door of 6 Vinewood Place, looking into the home.*

Once inside, Inv. Ulatowski said that he saw Mr. James exit a bedroom door at the end of the hallway. Mr. James asked, "Why are you guys looking for me?" and appeared agitated. Inv.

NYSCEF DOC. NO. 7

RECEIVED NYSCEF: 01/11/2023

Ulatowski responded, "You got a warrant," and told Mr. James to show him his hands. Mr. James initially walked towards Inv. Ulatowski with his hands in front. Since Mr. James appeared compliant, Inv. Ulatowski thought the arrest would go smoothly, so he said to Mr. James, "You're doing good, walk towards me." As Mr. James drew closer, Inv. Ulatowski reached behind his own back to remove his handcuffs. Mr. James abruptly stopped, backed up, and then turned and ran into the bathroom. Inv. Ulatowski ran after him, into the bathroom.




*The hallway - the bedroom Mr. James came from is straight ahead and the bathroom he ran into is on the right.*

*The bathroom.*

Inv. Ulatowski said he caught Mr. James in the bathroom and wrapped him in a bear-hug from behind, but their momentum caused both to fall into the bathtub. Mr. James was face down, and Inv. Ulatowski was on top, looking at the back of Mr. James's head. As Mr. James struggled to break free, Inv. Ulatowski said he heard PO Baker yell, "Gun!" three times. Inv. Ulatowski, still on top of Mr. James, looked to the right of Mr. James's head, and saw the barrel of a handgun pointed directly at his face. Inv. Ulatowski reached for the gun to disarm Mr. James but said he is uncertain if he ever got a hand on it. At one point during the struggle, Inv. Ulatowski said he saw a red laser dot on the wall. After a few moments, he said he heard PO Baker say, "I'm going to shoot him! I'm going to shoot him!" In response, Inv. Ulatowski said

NYSCEF DOC. NO. 7

RECEIVED NYSCEF: 01/11/2023

that he loosened his grip around Mr. James's body and arms, in order to move away, and almost immediately heard a gunshot. At first, he was not sure who, if anyone, was shot. Then he heard Mr. James make gurgling sounds and realized Mr. James was shot but did not know by whom.

As Inv. Ulatowski moved, Mr. James's body turned slightly allowing Inv. Ulatowski to see the gun, now lying in the bathtub. He grabbed it and called out to other Task Force members that he had the gun; he also called for a medic.

Inv. Ulatowski exited the bathroom and walked outside. Another officer checked him for injuries, since his vest and gloves were covered in blood; he had none. Inv. Ulatowski said he placed the gun and his gloves in a plastic evidence bag and placed that bag and his vest in PO Baker's truck. He stayed with the evidence until RPD Evidence Technician Mueller collected it.

### RPD Officer William Baker's Account

PO Baker said he approached the front door with Inv. Ulatowski and Dep. Marshal Smith. A woman who he later learned was Mr. James's grandmother eventually answered the door, and Inv. Ulatowski spoke to her. PO Baker saw a camera mounted on the porch pointed at the area where they were standing (see Evidence Collection, below). He said he heard the woman say that Mr. James was inside, and then followed Inv. Ulatowski into the home.

Inside, PO Baker said that he saw Mr. James walk out of a bedroom at the end of a hallway. Mr. James asked, "What's going on?" or "Why are you guys here?" Mr. James initially walked towards the officers, and then he suddenly stopped, backed up, and reached into his left pocket as he ran into the bathroom. Inv. Ulatowski chased Mr. James into the bathroom, with PO Baker immediately behind him.

Inside the bathroom, PO Baker said that he saw Inv. Ulatowski try to physically restrain Mr. James from behind, but both fell into the bathtub. PO Baker saw a gun in Mr. James's left hand; Mr. James's left arm was wrapped underneath and around his body, so the gun pointed over his right shoulder back towards Inv. Ulatowski. PO Baker yelled, "Gun! Gun! Gun!" and grabbed the front of the gun (where a laser sight was attached) with both hands and pulled the gun towards himself. As he struggled to take the gun from Mr. James, PO Baker saw a red laser appear from the gun. Due to their positions bent over the bathtub, PO Baker did not have a firm grip on the gun, allowing Mr. James to pull it back and underneath his own body. Fearing that Mr. James would gain full control of the pistol and shoot himself or Inv. Ulatowski, PO Baker let go of the gun, drew his own pistol, and said "Jeff, I'm going to shoot him." In response, he said he saw Inv. Ulatowski disengage slightly. He then heard a gunshot, and saw Mr. James go limp.

PO Baker helped pull Mr. James out of the bathtub and lay him on the bathroom floor so the other officers could provide first aid. He then left the house and went outside.

### USMS Deputy Marshal Carlton Smith's Account

Dep. Marshal Smith said he approached the front door with Inv. Ulatowski and PO Baker. Inv. Ulatowski knocked on the front door, and a woman answered. As Inv. Ulatowski spoke to her, Dep. Marshal Smith saw Mr. James inside the home through the open front door. Inv. Ulatowski, PO Baker, and Dep. Marshal Smith entered the home.

NYSCEF DOC. NO. 7                                                    RECEIVED NYSCEF: 01/11/2023

Once inside, Dep. Marshal Smith said he heard Inv. Ulatowski tell Mr. James, "You have a warrant, show us your hands." Mr. James had just come from a back bedroom and was initially walking toward the officers; he then, according to Dep. Marshal Smith, stopped, backpedaled, and ran into the bathroom. All three officers ran after him: Inv. Ulatowski first, PO Baker second, and Dep. Marshal Smith third.

Inside the bathroom, Dep. Marshal Smith said that Inv. Ulatowski grabbed at Mr. James from behind, but since they were still moving forward, they both fell face down in the bathtub. Dep. Marshal Smith tried to restrain Mr. James's head so PO Baker and Inv. Ulatowski could gain enough control to place him in handcuffs. Mr. James's hands were underneath his body near his chest, and he was actively struggling against the officers' attempts to get his hands behind his back. Dep. Marshal Smith then heard one of the officers say, "He's got a gun!" A few moments later, as the struggle continued, he heard a gunshot and saw Mr. James go limp.

After the gunshot, other officers removed Mr. James from the bathtub and Task Force medics began to provide lifesaving measures.

### MCSO Sergeant Shawn Edwards's Account

Sgt. Edwards was the Task Force K-9 officer and was standing on the front steps of Mr. James's house when he said that he saw Inv. Ulatowski knock on the front door and speak to a woman inside. He saw Mr. James come down a hallway and walk partway towards the officers. Mr. James then stopped and ran towards the back of the house. Sgt. Edwards followed Inv. Ulatowski, PO Baker, and Dep. Marshal Smith inside the home, and down the hallway towards the bathroom. Sgt. Edwards heard someone yell, "Gun! Gun! Gun!" When he looked into the bathroom from the hallway, he saw officers on top of Mr. James in the bathtub. As additional Task Force officers entered the bathroom, Sgt. Edwards heard a gunshot from his position in the hallway just outside the bathroom door. Sgt. Edwards then left the house to get his K-9 out of the way and called for medical assistance.

### MCSO Deputy David Wood's Account

Dep. Wood said that he was outside the home and across the street when he saw Inv. Ulatowski knock on the front door and speak to a woman inside. Through the open front door, he saw Mr. James in the hallway. When officers rushed into the residence, Deputy Wood sprinted across the street and into the house. He continued down the hallway until he could see into the bathroom. Deputy Wood said that he saw multiple officers piled up in the bathtub, but he could not see Mr. James. He then heard PO Baker yell, "He's got a gun!" so he tried to enter the bathroom to help. At that point he heard PO Baker yell, "I'm going to shoot him!" followed shortly by the sound of a gunshot. Dep. Wood heard Inv. Ulatowski say, "He's shot," and he asked if Mr. James still had the gun. Inv. Ulatowski replied, "I have the gun."

Dep. Wood helped move Mr. James from the bathtub to the floor, where he and MCSO Sgt. Christian DeVinney began first aid. They found a gunshot wound to Mr. James's upper chest and applied a chest-seal bandage. Dep. Wood continued to assist with first aid until he was relieved by MCSO Dep. William Connell, the Task Force's assigned medic.

NYSCEF DOC. NO. 7                                                    RECEIVED NYSCEF: 01/11/2023

### MCSO Deputy Charles Carroll's Account

Dep. Carroll was outside the home, standing by one of the Task Force vehicles, when he saw Inv. Ulatowski, PO Baker, and Dep. Marshal Smith knock on the front door and speak to a woman inside. Moments later, he said that he saw that same group of officers rush into the home, so he followed. He heard someone yell, "He's running!" so he yelled the same to other officers who remained outside. Once in the house, Dep. Carroll saw an older woman to his left in the living room. He heard someone yell, "He's got a gun!" and ran down the hallway towards the bathroom. He was able to peer around Sgt. Edwards and Dep. Wood and saw PO Baker, Inv. Ulatowski, and Dep. Marshal Smith struggling with someone in the bathtub. Moments later he heard a gunshot, then heard officers asking, "Who's hit? Who's hit?" Dep. Carroll saw Inv. Ulatowski stand up from the bathtub and walk out of the bathroom. He then watched Dep. Wood pull Mr. James out of the bathtub and begin first aid with the help of MCSO Sgt. DeVinney. After performing a security check of the residence, Dep. Wood left the home. Outside he saw Inv. Ulatowski, who said to him, "I think he just shot himself."

### MCSO Sergeant Christian DeVinney's Account

Sgt. Christian DeVinney was outside the home, standing near the front right corner of the house when he saw Task Force members approach the front door and speak to someone inside. Moments later he saw those same officers run into the house and heard someone yell, "Runner!" He initially ran to the side of the home to prevent an escape out the back but saw other officers covering the rear yard. He continued to hear a commotion inside the house, so he ran to the front door and into the residence. At first, he saw a woman in the living room, then he continued down the hallway where he saw officers around the bathroom door. He looked into the bathroom and saw a group of officers piled in the bathtub, and then heard a gunshot. Sgt. DeVinney asked who was shot and watched as officers checked themselves for injuries; he heard one officer say, "He shot himself." Sgt. DeVinney watched Inv. Ulatowski walk out of the bathroom with a small caliber pistol in his hand, and head towards the front door.

Once the other officers were out of the way, Sgt. DeVinney and Dep. Wood lifted Mr. James out of the bathtub, placed him on the bathroom floor, and checked him for injuries. Sgt. DeVinney found a gunshot wound in his upper left chest, and he and Dep. Wood covered it with a chest-seal bandage. Task Force medic Dep. Connell joined Sgt. DeVinney, and they provided chest compressions and air via a bag valve mask until Emergency Medical personnel arrived. Sgt. DeVinney did not see Mr. James display any signs of life during the time he provided medical care.

### Betty Ervin's Statement

Betty Ervin was interviewed first by RPD investigators and provided a sworn written statement. Later, she met with OSI Investigators and again described what took place. The accounts were the same. Ms. Ervin said she was asleep in her living room when she woke up to the sound of someone banging on the front door. She heard a voice yell, "Open the door or we will break it in!" She got up from her chair, opened the front door, and saw several police officers standing on the front porch. The officers called out for Mr. James and asked if he was home. Ms. Ervin said she would get him. When Ms. Ervin called for Mr. James, he came out of his room. Officers rushed past her and went for Mr. James. She heard a fight going on in the bathroom and then heard, "He's got a gun! He's got a gun!" Next, she heard a gunshot, and then heard someone

NYSCEF DOC. NO. 7                                                    RECEIVED NYSCEF: 01/11/2023

say, "He shot himself!" After the gunshot, officers escorted Ms. Ervin out of the house. She waited with a neighbor while other officers arrived, and the house was taped off for investigation.

Ms. Ervin said she could not see what happened in the bathroom at the time the gun went off.

## EVIDENCE COLLECTION

Following the incident, members of RPD's Major Crimes Unit executed a search warrant at 6 Vinewood Place, and RPD Evidence Technicians processed the scene. OSI Investigators responded to the scene and were present during the search.

From PO Baker's truck, Evidence Technician Mueller recovered a pistol and pair of tan gloves inside a plastic evidence bag. Inv. Ulatowski directed him to those items, which he stayed with after taking them from the house. The gun was a Smith & Wesson .380 Bodyguard pistol with a laser sight. A portion of the laser sight and the battery were missing. The pistol had a capacity of 7 rounds: 6 in the magazine plus 1 in the chamber. It was still loaded with 6 rounds of ammunition from 2 different brands: 4 rounds from Ammo Incorporated and 2 rounds from WIN.



*The Smith & Wesson .380 Bodyguard Pistol and NYSP Inv. Ulatowski's tan gloves, collected from RPD Officer Baker's Truck.*

From the bathtub in the bathroom, Evidence Technicians recovered a single .380 caliber fired cartridge case; the brand was Ammo Incorporated. They also recovered a small battery and a piece of plastic, which they later determined to be the battery for and the missing portion of the cover of the laser sight—all of which were covered in blood. They photographed the bathtub and the items found in it; OSI has reviewed the photo, but due to its graphic nature, omits it from this report.

NYSCEF DOC. NO. 7

RECEIVED NYSCEF: 01/11/2023



*The partially reassembled Smith & Wesson .380 Pistol. The battery is replaced in the laser sight, and the broken plastic cover from the laser sight is on the bottom. The magazine and ammunition have been removed.*

Under a mattress in the bedroom Mr. James walked out of when Inv. Ulatowski entered the house, Evidence Technicians and OSI Investigators found a Smith & Wesson .380 Bodyguard magazine, loaded with 6 rounds of Ammo Incorporated ammunition. In a safe in the same bedroom, they also found packaging for an additional Smith & Wesson .380 Bodyguard magazine, and a box of same brand and caliber ammunition found in the pistol: .380 Ammo Incorporated.



*Under the mattress Mr. James's bedroom. A Smith & Wesson .380 Bodyguard magazine.*

*Contents of a safe in Mr. James's bedroom. Packaging for a Smith & Wesson .380 Bodyguard magazine is on the upper left, and a box of Ammo Incorporated .380 ammunition is on the lower left.*

NYSCEF DOC. NO. 7
RECEIVED NYSCEF: 01/11/2023

In the same bedroom, Evidence Technicians and OSI Investigators saw a monitor with a live feed from cameras outside the house, including one aimed at the front porch. Although the cameras provided a live stream, they did not record locally, nor were they connected to the internet to record at another location.



*The monitor in Mr. James's bedroom with live feed from four cameras outside 6 Vinewood Place, including the front door. RPD Evidence Technicians and OSI Investigators found that the video system did not record.*

Evidence technicians processed the Smith & Wesson pistol, the magazines, and the ammunition for fingerprints and DNA. Although they were able to "lift fingerprints" from both magazines, they were not suitable for comparison. They also swabbed the handgun and magazine for DNA and sent the swabs to the Monroe County Crime Lab for analysis. DNA from a bloodstain on the pistol matched Mr. James. DNA from the magazine was a mixture of at least three individuals, but there was an insufficient amount of DNA for further comparison. No additional DNA analysis of the exterior of the pistol was reasonable since Inv. Ulatowski's gloves, covered with Mr. James's blood, could not be ruled out as potentially transferring DNA onto the firearm.

The pistol, magazines, and ammunition were submitted to the Monroe County Crime Laboratory for ballistics analysis (*see Ballistics Evidence, below*).

Evidence technicians also photographed and documented the firearms and ammunition of all the officers listed above. No officer carried a .380 caliber firearm, and all ammunition was accounted for—meaning no Task Force officer fired their own weapon.

NYSCEF DOC. NO. 7

RECEIVED NYSCEF: 01/11/2023

## MEDICAL EVIDENCE

According to American Medical Response records, emergency medical personnel received a call for assistance at 10:42 a.m. They arrived at 10:46 a.m. When they entered the bathroom at 10:48 a.m., Mr. James was on the floor, eyes half open, fixed and dilated, and had a gunshot wound to his left upper chest, which was covered with a chest seal. They placed a cardiac monitor on Mr. James but found no heartbeat or pulse—they pronounced Mr. James deceased at 10:49 a.m.

Dr. Christine Yoo of the Monroe County Medical Examiner's Office conducted Mr. James's autopsy. OSI Investigators attended the autopsy and obtained Dr. Yoo's preliminary report, which listed the cause of death as "contact gunshot wound to the torso." Dr. Yoo's report noted a single gunshot wound to the left side of the upper chest, from the front to the back and downward, with injuries along the wound path to the heart and left lung. Dr. Yoo also noted "evidence of close-range discharge of a firearm (faint soot searing)." According to Dr. Yoo, Mr. James died quickly from a gunshot wound to the heart.

Dr. Yoo recovered a single bullet ("deformed jacketed projectile") from Mr. James's lower back and submitted it to the Monroe County Crime Laboratory for ballistics analysis (see Ballistics Evidence, below).

## BALLISTICS EVIDENCE

Eric Freemesser, a Forensics Firearms Examiner with the Monroe County Crime Laboratory, conducted ballistics analysis of the following items:

1. Smith & Wesson .380 Bodyguard pistol - taken from the bathtub by Inv. Ulatowski and recovered by Evidence Technician Mueller
2. Fired .380 Ammo Incorporated cartridge casing - recovered from the bathtub
3. Fired bullet - recovered from Mr. James's body
4. Additional Smith & Wesson .380 Bodyguard magazine and additional .380 Ammo Incorporated ammunition - recovered from the bedroom

Freemesser's report stated, "there was agreement in all discernible class characteristics and sufficient agreement in corresponding individual characteristics" to conclude the bullet and the cartridge case "were discharged by [the] pistol." The report also said the additional Smith & Wesson .380 Bodyguard magazine fit and functioned with the pistol.

In a subsequent phone call, Freemesser confirmed in plain English that the Smith & Wesson .380 Bodyguard pistol fired the bullet found in Mr. James's body and ejected the cartridge case found in the bathtub.

## LEGAL ANALYSIS

There is no evidence that any officer used deadly physical force against Mr. James.

Yet it is clear that Inv. Ulatowski, PO Baker, and Dep. Marshal Smith used physical force against Mr. James when they attempted to arrest him, and their use of physical force was a

NYSCEF DOC. NO. 7

RECEIVED NYSCEF: 01/11/2023

link in the chain of events that led to Mr. James's death. Under Article 35 of the New York State Penal Law, they were justified in using physical force.[4]

Penal Law Section 35.30(1) provides:

> "A police officer or a peace officer, in the course of effecting or attempting to effect an arrest ... of a person whom he or she reasonably believes to have committed an offense, may use physical force when and to the extent he or she reasonably believes such to be necessary to effect the arrest ... or in self-defense or to defend a third person from what he or she reasonably believes to be the use or imminent use of physical force..."

In this case, Inv. Ulatowski had a copy of a judicially signed arrest warrant for Dedrick James, providing him with a reasonable belief that Mr. James had committed an offense. Moreover, as stated by Inv. Ulatowski, PO Baker, and Dep. Marshal Smith, no officer made physical contact with Mr. James until he ran from them, in response to being told he was under arrest. At that point Inv. Ulatowski tackled Mr. James from behind to detain him. PO Baker saw that Mr. James had a pistol in his hand, pointed at Inv. Ulatowski, and yelled "Gun, Gun, Gun!" All three officers tried to control and disarm Mr. James using only their hands, but they were unsuccessful. PO Baker then said he was going to shoot Mr. James, but before he acted Mr. James shot himself and the episode was over.

Accordingly, based on the evidence, the Attorney General finds that Inv. Ulatowski, PO Baker and Dep. Marshal Smith were justified, under Penal Law Section 35.30(1), in their use of physical force against Mr. James when they attempted to arrest him.

## RECOMMENDATION

OAG has consistently recommended that all police departments equip officers with body-worn cameras ("BWCs").[5] Absent such evidence, the only evidence is eye-witness accounts. Had officers executing the arrest warrant for Mr. James been equipped with BWCs, there may have been a clearer understanding of this incident. OAG recognizes that the US Department of Justice has implemented policy changes to equip federal agents with BWCs[6], and permit state and local law enforcement officers serving on Task Forces to wear BWCs.[7] OAG commends these efforts and recognizes that implementation of these polices is not immediate. Nevertheless,

---

[4] As noted above, OAG does not have jurisdiction over USMS Dep. Marshal Smith, since he is a federal agent and therefore not a "police officer" or "peace officer" as defined in Executive Law Section 70-b. Nevertheless, his actions were so intertwined with those of NYSP Inv. Ulatowski and RPD PO Baker that a joint analysis is warranted.

[5] See summary in First Report Pursuant to Executive Law Section 70-b (ny.gov) (p. 16, "Recommendations"), published on October 1, 2021, after this incident occurred.

[6] Justice Department Announces First Federal Agents to Use Body-Worn Cameras, available at https://www.justice.gov/opa/pr/justice-department-announces-first-federal-agents-use-body-worn-cameras (September 1, 2021).

[7] Department of Justice Announces the Use of Body-Worn Cameras on Federal Task Forces, available at https://www.justice.gov/opa/pr/department-justice-announces-use-body-worn-cameras-federal-task-forces (October 29, 2020).

NYSCEF DOC. NO. 7

RECEIVED NYSCEF: 01/11/2023

these policy changes were made before the date of this incident and were not implemented. Therefore, we use this case as an opportunity to recommend that full implementation of BWCs by federal agents and Task Force Officers occur without any unnecessary delay.

Dated: August 26,2022

# EXHIBIT 4

NYSCEF DOC. NO. 4

RECEIVED NYSCEF: 01/11/2023

MONROE COUNTY CLERK'S OFFICE          THIS IS NOT A BILL. THIS IS YOUR RECEIPT.

Receipt # 3305461

Book    Page    CIVIL

Return To:                              No. Pages:  7
County of Monroe Department of Law

Instrument: MEMO OF LAW

Control #:        202301110698
Index #:          E2022010302

Date: 01/11/2023

James, Shenea                           Time: 11:47:50 AM

City of Rochester
Baker, William
Arrowood, Richard
Baxter, Todd
Devinney, Christian

Total Fees Paid:                    $0.00

Employee:

State of New York

MONROE COUNTY CLERK'S OFFICE
WARNING – THIS SHEET CONSTITUTES THE CLERKS
ENDORSEMENT, REQUIRED BY SECTION 317-a(5) &
SECTION 319 OF THE REAL PROPERTY LAW OF THE
STATE OF NEW YORK. DO NOT DETACH OR REMOVE.

JAMIE ROMEO

MONROE COUNTY CLERK

**STATE OF NEW YORK**
**SUPREME COURT**          **COUNTY OF MONROE**

---

SHENEA JAMES as administrator of the estate of
DEDRICK JAMES, deceased, and SHENEA JAMES,
individually,

*Plaintiff,*

v.

CITY OF ROCHESTER, RPD OFFICER WILLIAM
BAKER, RPD INVESTIGATOR RICHARD
ARROWOOD, "JOHN DOE RPD OFFICERS 1-10"
(names and number of whom are unknown at present),
MONROE COUNTY SHERIFF TODD BAXTER, MCSO
SERGEANT CHRISTIAN DEVINNEY, "RICHARD ROE
SHERIFF'S DEPUTIES 1-10" (names and number of
whom are unknown at present), NYSP INVESTIGATOR
JEFFREY ULATOWSKI, and other unidentified
members of the Rochester Police Department, Monroe
County Sheriff's Office, and New York State Police,

*Defendants.*

---

**MEMORANDUM OF LAW**

Index No. E2022010302

## BACKGROUND AND INTRODUCTION

Plaintiff's decedent was the subject of a judicial arrest warrant. A U.S. Marshal Task Force, comprising members of the Rochester Police Department, the Monroe County Sheriff's Department, and the New York State Police, attempted to arrest him. Rather than comply, plaintiff's decedent ran into a bathroom and drew a weapon. There was a struggle, and plaintiff's decedent fatally shot himself in the torso.

The cause of action against Sheriff Todd Baxter must be dismissed because it has been brought beyond the applicable statute of limitations. Alternatively, because the attempt to arrest

NYSCEF DOC. NO. 4                                                                                          RECEIVED NYSCEF: 01/11/2023

the decedent was under the auspices of a U.S. Marshal Task Force, because the complaint fails to state a cause of action for negligent training and supervision, and because the sheriff is entitled to governmental function immunity, the cause of action against Sheriff Todd Baxter must be dismissed.

## **LEGAL STANDARD**

"When documentary evidence is submitted by a defendant the standard morphs from whether the plaintiff has stated a cause of action to whether it has one" (*Lorely Fin. (Jersey) No. 3 Ltd. v Citigroup Global Mkts. Inc.*, 119 AD3d 136, 139 n 2 [1st Dept 2014] [internal quotation marks and citation omitted]). Here, based on the records of the Monroe County Sheriff's Department and the New York State Attorney General's Office, a defense has been established as a matter of law (*see Green v National Income Life Ins. Co.*, 189 AD3d 2068, 2069 [4th Dept 2020]; *see generally Fontanetta v Doe*, 73 AD3d 78, 84-86 [2d Dept 2010] [listing history and examples]; *Logatto v City of New York*, 51 AD3d 984, 985 [2d Dept 2008] [defendant baseball team had no ownership, control, or responsibility over parking lot]).

"A motion to dismiss under CPLR 3211(a)(7) may be granted when exhibits attached to the complaint conclusively establish that a material fact as claimed by the pleader to be one is not a fact at all and that no significant dispute exists regarding it" (*McMahan v McMahan*, 131 AD3d 593, 594 [2d Dept 2015] [internal quotations omitted]). Moreover, a court may grant a motion to dismiss a complaint under CPLR 3211(a)(1) when documentary evidence utterly refutes the plaintiff's allegations, conclusively establishing a defense as a matter of law (*see id.*).

## **DISCUSSION**

Statute of Limitations. The statute of limitations for an action against a sheriff is one year (CPLR 215 [1]; *see Adams v Rensselaer County*, 66 NY2d 725, 726 [1985]). Plaintiff contends that her decedent was killed on September 21, 2021 (Complaint at ¶ 24). Therefore, the latest that an action could have been brought against Sheriff Baxter was September 21, 2022. The complaint was filed on December 14, 2022 (Exhibit A). Thus, the matter must be dismissed as time-barred (CPLR 3211 [a] [5]). Irrespective of the fact that the sheriff is sued in both his official and individual capacities, any action constituting training or supervision of sheriff's deputies "constitutes an omission of an official duty within the meaning of the statute" (*Kingston v Braun*, 122 AD2d 543, 543 [4th Dept 1986]; *see generally Metcalf v County of Erie*, 173 AD3d 1799, 1800 [4th Dept 2019]).

No supervision over a federal task force. Alternatively, the cause of action against Sheriff Baxter must be dismissed under CPLR 3211 (a)(1) and/or (a)(7) because he does not supervise deputy sheriffs who are acting under the auspices of a U.S. Marshal Task Force (*see Aikman v County of Westchester*, 691 F Supp 2d 496, 498 [SD NY 2010] [state and local law enforcement officers designated as federal task force members are treated as federal employees for the purposes of any federal tort liability statute]). It is proven by documentary evidence that the deputies in this matter were part of such a task force (*see* Exhibits B and C).

Failure to state a claim for negligent training. A negligent supervision claim "requires proof that the defendant, as employer, knew or should have known of the employee's propensity for the conduct which caused the injury" (*Brown v State of New York*, 45 AD3d 15, 27 [3d Dept 2007] [internal quotation marks omitted], *lv denied* 9 NY3d 815 [2007]). The complaint alleges no such knowledge or propensity.

3

NYSCEF DOC. NO. 4                                    RECEIVED NYSCEF: 01/11/2023

The complaint also states that the sheriff's deputies were acting, at all relevant times, within the scope of their employment (Complaint at ¶ 21). A cause of action for negligent supervision and training "does not lie where, as here, the employees are acting within the scope of their employment" (*Malay v City of Syracuse*, 151 AD3d 1624, 1626-1627 [4th Dept 2017], *lv denied* 30 NY3d 904 [2017]).

    <u>Governmental function immunity</u>. The causes of action against Sheriff Baxter must be dismissed because the training and supervision of deputies constitutes a discretionary governmental function, for which he has immunity (*see Maldovan v County of Erie*, 188 AD3d 1597, 1600 [4th Dept 2020], *affd* – NY3d –, 2022 NY Slip Op 06632 [2022]; *cf. Mosey v County of Erie*, 117 AD3d 1381, 1385 [4th Dept 2014], *rearg denied* 119 AD3d 1388 [4th Dept 2014]).

## CONCLUSION

    The cause(s) of action against Sheriff Baxter must be dismissed based on the statute of limitations or, alternatively, based on the sheriff's lack of supervision over a federal task force, due to failure to state a claim, or due to governmental function immunity.

    **WHEREFORE**, the County of Monroe hereby respectfully requests that all of the causes of action against Sheriff Todd Baxter, individually and in his professional capacity, be dismissed with prejudice pursuant to NY CPLR § 3211 (a)(5), (a)(1), and/or (a)(7), and that such other and further relief as this court shall find good and proper should be granted.

                               **JOHN P. BRINGEWATT**
                               **MONROE COUNTY ATTORNEY**
                               *Attorney for the Defendants*

Dated: January 11, 2023                  */s Robert J. Shoemaker*
                            **Robert J. Shoemaker, Esq. of Counsel**

NYSCEF DOC. NO. 4

RECEIVED NYSCEF: 01/11/2023

Deputy County Attorney
307 County Office Building
39 West Main Street, Rochester, New York 14614
Telephone:  585.753.1472
boshoemaker@monroecounty.gov

## CERTIFICATION:

  I hereby certify that this document contains **932 words**, not including the caption and signature block, and that this document is in compliance with new Uniform Civil Rules for the Supreme Court and the County Court, § 202.8-b.

Dated: January 11, 2023           s/ *Robert J. Shoemaker*

                     Robert J. Shoemaker

# EXHIBIT 5

## MONROE COUNTY CLERK'S OFFICE

### THIS IS NOT A BILL. THIS IS YOUR RECEIPT.

Receipt # 3305471

Book   Page   CIVIL

Return To:
County of Monroe Department of Law

No. Pages:  3

Instrument: RJI (REQUEST FOR JUDICIAL
INTERVENTION)

Control #:      202301110708
Index #:        E2022010302

Date: 01/11/2023

James, Shenea

Time: 11:50:06 AM

City of Rochester
Baker, William
Arrowood, Richard
Baxter, Todd
Devinney, Christian

Total Fees Paid:                        $0.00

Employee: CW

State of New York

MONROE COUNTY CLERK'S OFFICE
WARNING – THIS SHEET CONSTITUTES THE CLERKS
ENDORSEMENT, REQUIRED BY SECTION 317-a(5) &
SECTION 319 OF THE REAL PROPERTY LAW OF THE
STATE OF NEW YORK. DO NOT DETACH OR REMOVE.

JAMIE ROMEO

MONROE COUNTY CLERK



NYSCEF DOC. NO. 10     RECEIVED NYSCEF: 01/11/2023

# REQUEST FOR JUDICIAL INTERVENTION

UCS-840
(rev. 02/01/2022)

Supreme COURT, COUNTY OF Monroe

Index No: _E2022010302_    Date Index Issued: _12/14/2022_

| For Court Use Only: |
| --- |
| IAS Entry Date |
| |
| Judge Assigned |
| |
| RJI Filed Date |
| |

**CAPTION**   Enter the complete case caption. Do not use et al or et ano. If more space is needed, attach a caption rider sheet.

Shenea James

Plaintiff(s)/Petitioner(s)

-against-

City of Rochester, William Baker, Richard Arrowood, Todd Baxter, Christian Devinney, Jeffrey Ulatowski

Defendant(s)/Respondent(s)

**NATURE OF ACTION OR PROCEEDING:**   Check only one box and specify where indicated.

**COMMERCIAL**
- ☐ Business Entity (includes corporations, partnerships, LLCs, LLPs, etc.)
- ☐ Contract
- ☐ Insurance (where insurance company is a party, except arbitration)
- ☐ UCC (includes sales and negotiable instruments)
- ☐ Other Commercial (specify): _____

**NOTE:** For Commercial Division assignment requests pursuant to 22 NYCRR 202.70(d), complete and attach the **COMMERCIAL DIVISION RJI ADDENDUM (UCS-840C)**.

**TORTS**
- ☐ Adult Survivors Act
- ☐ Asbestos
- ☐ Environmental (specify): _____
- ☐ Medical, Dental or Podiatric Malpractice
- ☐ Motor Vehicle
- ☐ Products Liability (specify): _____
- ☐ Other Negligence (specify): _____
- ☐ Other Professional Malpractice (specify): _____
- ☒ Other Tort (specify): _Police Misconduct_

**SPECIAL PROCEEDINGS**
- ☐ Child-Parent Security Act (specify): ☐ Assisted Reproduction ☐ Surrogacy Agreement
- ☐ CPLR Article 75 - Arbitration   [see **NOTE** in **COMMERCIAL** section]
- ☐ CPLR Article 78 - Proceeding against a Body or Officer
- ☐ Election Law
- ☐ Extreme Risk Protection Order
- ☐ MHL Article 9.60 - Kendra's Law
- ☐ MHL Article 10 - Sex Offender Confinement (specify): ☐ Initial ☐ Review
- ☐ MHL Article 81 (Guardianship)
- ☐ Other Mental Hygiene (specify): _____
- ☐ Other Special Proceeding (specify): _____

**MATRIMONIAL**
- ☐ Contested
  **NOTE:** If there are children under the age of 18, complete and attach the **MATRIMONIAL RJI Addendum (UCS-840M)**.
  For Uncontested Matrimonial actions, use the Uncontested Divorce RJI (**UD-13**).

**REAL PROPERTY** Specify how many properties the application includes: _____
- ☐ Condemnation
- ☐ Mortgage Foreclosure (specify): ☐ Residential ☐ Commercial
  Property Address: _____
  **NOTE:** For Mortgage Foreclosure actions involving a one to four-family, owner-occupied residential property or owner-occupied condominium, complete and attach the **FORECLOSURE RJI ADDENDUM (UCS-840F)**.
- ☐ Partition
  **NOTE:** Complete and attach the **PARTITION RJI ADDENDUM (UCS-840P)**.
- ☐ Tax Certiorari (specify): Section: _____ Block: _____ Lot: _____
- ☐ Tax Foreclosure
- ☐ Other Real Property (specify): _____

**OTHER MATTERS**
- ☐ Certificate of Incorporation/Dissolution   [see **NOTE** in **COMMERCIAL** section]
- ☐ Emergency Medical Treatment
- ☐ Habeas Corpus
- ☐ Local Court Appeal
- ☐ Mechanic's Lien
- ☐ Name Change/Sex Designation Change
- ☐ Pistol Permit Revocation Hearing
- ☐ Sale or Finance of Religious/Not-for-Profit Property
- ☐ Other (specify): _____

**STATUS OF ACTION OR PROCEEDING**   Answer YES or NO for every question and enter additional information where indicated.

| | YES | NO | |
| --- | --- | --- | --- |
| Has a summons and complaint or summons with notice been filed? | ☒ | ☐ | If yes, date filed: _12/14/2022_ |
| Has a summons and complaint or summons with notice been served? | ☒ | ☐ | If yes, date served: _12/21/2022_ |
| Is this action/proceeding being filed post-judgment? | ☐ | ☒ | If yes, judgment date: _____ |

**NATURE OF JUDICIAL INTERVENTION**   Check one box only and enter additional information where indicated.

- ☐ Infant's Compromise
- ☐ Extreme Risk Protection Order Application
- ☐ Note of Issue/Certificate of Readiness
- ☐ Notice of Medical, Dental or Podiatric Malpractice   Date Issue Joined: _____
- ☒ Notice of Motion   Relief Requested: _Dismiss_   Return Date: _____
- ☐ Notice of Petition   Relief Requested: _____   Return Date: _____
- ☐ Order to Show Cause   Relief Requested: _____   Return Date: _____
- ☐ Other Ex Parte Application   Relief Requested: _____
- ☐ Partition Settlement Conference
- ☐ Poor Person Application
- ☐ Request for Preliminary Conference
- ☐ Residential Mortgage Foreclosure Settlement Conference
- ☐ Writ of Habeas Corpus
- ☐ Other (specify): _____

2 of 3

NYSCEF DOC. NO. 10                                                          RECEIVED NYSCEF: 01/11/2023

| RELATED CASES | List any related actions. For Matrimonial cases, list any related criminal or Family Court cases. If none, leave blank. If additional space is required, complete and attach the RJI Addendum (UCS-840A). | | | |
|---|---|---|---|---|
| Case Title | Index/Case Number | Court | Judge (if assigned) | Relationship to instant case |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

| PARTIES | | For parties without an attorney, check the "Un-Rep" box and enter the party's address, phone number and email in the space provided. If additional space is required, complete and attach the RJI Addendum (UCS-840A). | | |
|---|---|---|---|---|
| Un-Rep | Parties<br>List parties in same order as listed in the caption and indicate roles (e.g., plaintiff, defendant, 3rd party plaintiff, etc.) | Attorneys and Unrepresented Litigants<br>For represented parties, provide attorney's name, firm name, address, phone and email. For unrepresented parties, provide party's address, phone and email. | Issue Joined<br>For each defendant, indicate if issue has been joined. | Insurance Carriers<br>For each defendant, indicate insurance carrier, if applicable. |
| ☐ | Name: James, Shenea<br><br>Role(s): Plaintiff/Petitioner | ELLIOT DOLBY-SHIELDS, Roth & Roth, LLP, 192 Lexington Avenue, Suite 802 , New York, NY 10016, (212) 425-1020, eshields@rothandrothlaw.com | ☒ YES ☐ NO |  |
| ☐ | Name: City of Rochester<br><br>Role(s): Defendant/Respondent | City of Rochester Law Department, 30 Church Street, Rochester, NY 14614, 585-428-5990 | ☐ YES ☒ NO |  |
| ☐ | Name: Baker, William<br><br>Role(s): Defendant/Respondent | City of Rochester Law Department, 30 Church Street, Rochester, NY 14614, 585-428-5990 | ☐ YES ☒ NO |  |
| ☐ | Name: Arrowood, Richard<br><br>Role(s): Defendant/Respondent | City of Rochester Law Department, 30 Church Street, Rochester, NY 14614, 585-428-5990 | ☐ YES ☒ NO |  |
| ☐ | Name: Baxter, Todd<br><br>Role(s): Defendant/Respondent | ROBERT SHOEMAKER, MONROE COUNTY LAW DEPARTMENT, 39 W MAIN ST , ROCHESTER, NY 14614, boshoemaker@monroecounty.gov | ☒ YES ☐ NO |  |
| ☐ | Name: Devinney, Christian<br><br>Role(s): Defendant/Respondent | ROBERT SHOEMAKER, MONROE COUNTY LAW DEPARTMENT, 39 W MAIN ST , ROCHESTER, NY 14614, boshoemaker@monroecounty.gov | ☒ YES ☐ NO |  |
| ☐ | Name: Ulatowski, Jeffrey<br><br>Role(s): Defendant/Respondent | New York State Attorney General's Office, 144 Exchange Blvd, Rochester, NY 14614, 585-546-7430 | ☐ YES ☒ NO |  |
| ☐ | Name:<br><br>Role(s): |  | ☐ YES ☐ NO |  |
| ☐ | Name:<br><br>Role(s): |  | ☐ YES ☐ NO |  |
| ☐ | Name:<br><br>Role(s): |  | ☐ YES ☐ NO |  |

**I AFFIRM UNDER THE PENALTY OF PERJURY THAT, UPON INFORMATION AND BELIEF, THERE ARE NO OTHER RELATED ACTIONS OR PROCEEDINGS, EXCEPT AS NOTED ABOVE, NOR HAS A REQUEST FOR JUDICIAL INTERVENTION BEEN PREVIOUSLY FILED IN THIS ACTION OR PROCEEDING.**

Dated:   01/11/2023                                              ROBERT JOHN SHOEMAKER
                                                                                    Signature

                4984597                                              ROBERT JOHN SHOEMAKER
       Attorney Registration Number                                      Print Name

*This form was generated by NYSCEF*

# EXHIBIT 6

NYSCEF DOC. NO. 11

RECEIVED NYSCEF: 01/17/2023

MONROE COUNTY CLERK'S OFFICE                    THIS IS NOT A BILL. THIS IS YOUR RECEIPT.

Receipt # 3311092

Book    Page    CIVIL

Return To:                                      No. Pages: 2
Lori P. Allen
519 Hall of Justice                             Instrument: MISCELLANEOUS DOCUMENT
Rochester, NY 14614
                                                Control #:        202301171743
                                                Index #:          E2022010302

                                                Date: 01/17/2023

James, Shenea                                   Time: 4:47:19 PM

City of Rochester
Baker, William
Arrowood, Richard
Baxter, Todd
Devinney, Christian

Total Fees Paid:                        $0.00

                                                Employee:

State of New York

MONROE COUNTY CLERK'S OFFICE
WARNING – THIS SHEET CONSTITUTES THE CLERKS
ENDORSEMENT, REQUIRED BY SECTION 317-a(5) &
SECTION 319 OF THE REAL PROPERTY LAW OF THE
STATE OF NEW YORK. DO NOT DETACH OR REMOVE.

        JAMIE ROMEO

    MONROE COUNTY CLERK

NYSCEF DOC. NO. 11

RECEIVED NYSCEF: 01/17/2023

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF MONROE**
**JUDGE NASCA, KEVIN M.**



| | |
|---|---|
| **Shenea James**<br><br>- v. -<br><br>**City of Rochester et al** | Index No.    E2022010302 |

### COURT NOTICE

The Court is in receipt of the Notice of Motion (Doc. No.2, Motion No.1) efiled in this matter.

Please be advised that the Motion is returnable March 7, 2023 at 2:30 p.m., 99 Exchange Boulevard, Fourth Floor, Hall of Justice, Rochester, New York 14614.

Please file proof of service five (5) days prior to the return date.

Thank you,

Lori P. Allen
Secretary to the
Hon. Kevin M. Nasca
(585) 371 3625

DATED 01/17/2023                           FILED By Lori P Allen