UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SHENEA JAMES, as administrator of the
estate of Dedrick James, deceased and
Shenea James, Individually,

                        Plaintiff,

          v.

CITY OF ROCHESTER, et al.,

                        Defendants.
_____

DECISION AND ORDER

23-CV-6057DGL

**INTRODUCTION**

       This action was brought by Shenea James ("Plaintiff"), individually and as administrator of the estate of Dedrick James ("James"), in New York State Supreme Court, Monroe County, in December 2022.  The original complaint asserted seven claims arising out of the death of James on September 15, 2021, when he was fatally shot during the attempted execution of an arrest warrant in Rochester by law enforcement personnel.

       The original complaint named six defendants:  the City of Rochester ("City"), Rochester Police Department ("RPD") Officer William Baker, RPD Investigator Richard Arrowood, Monroe County Sheriff Todd Baxter, Monroe County Sheriff's Office ("MCSO") Sergeant Christian DeVinney, and New York State Police ("NYSP") Investigator Jeffrey Ulatowski. Plaintiff also asserted claims against other, as yet unidentified members of the RPD, MCSO and NYSP.

The action was removed to this Court on January 20, 2023 by defendants Baker, DeVinney and Ulatowski, on grounds that are discussed below.  Prior to the removal of the action, defendant Baxter had moved to dismiss the complaint, and that motion was still pending at the time the action was removed to this Court.  (Dkt. #1-2 at 21.)

Following removal, Baker, DeVinney and Ulatowski filed a motion in this Court to substitute the United States of America ("U.S.") as defendant in their place, and to dismiss the claims against them for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.  (Dkt. #3.)  In addition, defendant Baxter filed a motion to dismiss the claims against him, based on his previously-filed motion in state court.  (Dkt. #5.)

After those motions were filed, plaintiff filed a first amended complaint ("FAC").  (Dkt. #6.)  The FAC adds the U.S. as a defendant, as well as Deputy United States Marshal ("DUSM") Carlton Smith.  The FAC also doubles plaintiff's claims, to fourteen.

After the FAC was filed, defendants Baker, DeVinney, Ulatowski, Smith and the U.S. ("federal defendants") filed a motion to substitute the U.S. as defendant in place of those individual defendants, and to dismiss all of plaintiff's claims against those individual defendants, pursuant to Rules 12(b)(1) and 12(b)(6).  (Dkt. #7.)  Defendants Arrowood and the City have answered the amended complaint.  (Dkt. #9.)  Plaintiff has filed responses to the motions to dismiss.  (Dkt. #12, #13.)

**BACKGROUND**

The complaint alleges that on September 15, 2021, the individual defendants (with the exception of Baxter) were involved in the execution of a warrant for Dedrick James's arrest.[1] Prior surveillance had indicated that he lived at 6 Vinewood Place in Rochester, with his grandmother, Betty Irvin.

According to the complaint, on the morning of September 15, a task force was assembled to carry out the execution of the warrant.  Defendants Ulatowski and Arrowood, who were members of the task force, surveilled the house and confirmed that James and Irvin were the only people inside.  Ulatowski radioed the other members of the task force and told them to prepare to attempt the arrest.

At around 10:35 a.m., the defendants and other task force members arrived at 6 Vinewood Place.  NYSP Investigator Ulatowski, RPD Officer Baker, and DUSM Smith walked to the front door and rang the doorbell.

James's grandmother, Irvin, answered the door.  The complaint alleges that the defendants saw James inside, pushed Irvin aside, and forcibly entered the home.  They chased James into a bathroom, where Ulatowski seized James and began struggling with him.  During the struggle, a gun went off, and James was fatally wounded.

The complaint alleges with respect to Baker, Smith and Ulatowski that each of them shot and killed James, and that each of them caused James to be shot.  FAC ¶¶ 62-67.  It is not apparent from the complaint whether plaintiff means that literally all three of them shot James, or

---

[1] Since the amended complaint is now the operative pleading, all further references to the "complaint" will refer to the amended complaint, unless otherwise noted.

whether those allegations are pleaded in the alternative.  The complaint also does not allege

whether the fatal shot came from one of the officers' firearms, or from James's own handgun.[2]

The complaint alleges that James's death would not have occurred but for defendants'

failure to devise a "safe plan" beforehand for arresting him.  FAC ¶ 71.  Plaintiff alleges that the

task force members "owed a special duty to Mr. James when they planned and executed the arrest

warrant," and that they breached that duty by negligently planning and carrying out the execution

of the warrant.  Plaintiff alleges that defendants should have "devise[d] a non-lethal plan" for

arresting James if he was armed, although it is not clear from the complaint what such a plan

would have consisted of.  FAC ¶ 80.  Plaintiff also alleges that defendants should have

considered other (allegedly) safer options than entering James's house, such as waiting for him to

exit the home and arresting him outside.  FAC ¶ 82.  (The complaint does not explain why that

would have been safer.)

The complaint further alleges that the task force members were inadequately trained

regarding the execution of arrest warrants.  Plaintiff contends that such training was primarily the

responsibility of the MCSO, which failed to adequately instruct deputies and task force members

how to plan and execute warrants safely.  Plaintiff further alleges that the attempt to arrest James

was "a clearly state (not federal) operation," and that the United States Marshal Service

("USMS") "only had a de minimis involvement ... ."  FAC ¶¶ 97, 99.

---

[2] Although this is not material to, and forms no part of the basis for the Court's decision in this case, a report issued on August 26, 2022 by the Office of Special Investigation of the New York State Attorney General's office concluded that James was shot by a single bullet from his own handgun, fired by James himself.  (Dkt. #1-2 at 71.)

Based on these allegations, plaintiff asserts fourteen claims for relief:

(1) a claim pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and the Federal Tort Claims Act ("FTCA") against defendants Smith, Baker and Ulatowski, alleging that their acts with respect to James violated the Fourth and Fifth Amendments to the United States Constitution;

(2) a *Bivens* claim against Smith, Baker and Ulatowski, alleging that they each had a duty, and failed, to intervene in each other's actions toward James;

(3) a claim under the FTCA against the U.S. for assault and battery;

(4) another FTCA claim against the U.S. for negligence in planning for the execution of the warrant;

(5) a third FTCA claim against the U.S., similar to Claim Four but based on the actual execution of the warrant, rather than the planning;

(6) a claim under 42 U.S.C. § 1983 against Baker and Ulatowski, alleging excessive use of force;

(7) a § 1983 claim against Baker and Ulatowski for failure to intervene;

(8) a § 1983 claim against Baxter based on supervisory liability;

(9) a claim under state law for negligent planning (the complaint does not state which defendants this claim is brought against);

(10) a state law claim for wrongful death;

(11) a state law negligence claim;

(12) a state law assault and battery claim;

(13) a state law claim for failure to intervene; and

(14) a claim against Baxter under state law for negligent training, supervision and discipline.

For relief, plaintiff seeks an unspecified amount of compensatory and punitive damages, declaratory and injunctive relief requiring the MSCO Warrant Unit and the USMS task force to wear body cameras during warrant executions, and attorney's fees.  The basis for the award of compensatory damages is plaintiff's allegation that James experienced conscious pain and suffering, and fear of impending death, before he died.

## DISCUSSION

### I. Federal Defendants' Motion[3]

Defendants Smith, Baker, DeVinney and Ulatowski ("individual federal defendants") seek an order substituting the U.S. as defendant in their place.  They and the U.S. ("federal defendants") also move to dismiss all the claims against the individual federal defendants, and the fourth, ninth and thirteenth causes of action against the U.S.

In her response, plaintiff states that she agrees that the *Bivens* claims (the first and second claims) should be dismissed pursuant to the Supreme Court's decision in *Egbert v. Boule*, 142 S.Ct. 1793 (2022), and that the U.S. should be substituted in place of defendant Smith only. (Dkt. #12 at 3.)  The Court in *Egbert* strictly cabined the reach of *Bivens*, and emphasized that extending *Bivens* to new factual contexts is a "disfavored judicial activity," *id.* at 1803.  *See also Dyer v. Smith*, 56 F.4th 271, 277 (4th Cir. 2022) (stating that *Egbert* has "all but closed the door on *Bivens* remedies").  Plaintiff opposes the other aspects of the federal defendants' motion.

---

[3] Although plaintiff does not concede that any individual defendants other than Smith were acting in a federal capacity on September 15, 2021, Smith, Baker, DeVinney and Ulatowski are represented by the United States Attorney, and their motion is based largely on the premise that they were acting as federal officers when they attempted to execute the warrant.  For the sake of convenience they will be referred to collectively as the "individual federal defendants," and together with the U.S., as the "federal defendants."

The federal defendants' motion is premised on their assertion that on February 15, 2021, Baker, DeVinney and Ulatowski had been deputized as Special Deputy U.S. Marshals, and that they were acting in that capacity when they attempted to execute the arrest warrant. Therefore, the federal defendants argue, for purposes of this action they stand in the same position as Smith. The federal defendants further contend that the U.S. must be substituted for all of them, and all the claims against the individual federal defendants should be dismissed.

Analysis of defendants' motion requires an understanding of the circumstances and manner in which state and local law enforcement officers can be deputized by the USMS, and the effect of such "cross-deputization."

The USMS possesses the authority to deputize "federal, state, or local law enforcement officers whenever the law enforcement needs of the U.S. Marshals Service so require" to perform the functions of a DUSM. 28 C.F.R. § 0.112(b). In addition, Congress has expressly authorized the USMS to "investigate such fugitive matters, both within and outside the United States, as directed by the Attorney General." 28 U.S.C. § 566(e)(1)(B).

The Presidential Threat Protection Act of 2000, Pub. L. No. 106-544, 114 Stat. 2718 (2000), requires the Attorney General to establish "permanent Fugitive Apprehensive Task Forces consisting of Federal, State, and local law enforcement authorities ... to be directed and coordinated by the United States Marshal Service, for the purpose of locating and apprehending fugitives." 34 U.S.C. § 41503(a).

Of particular relevance here, 5 U.S.C. § 3374(c) provides that "[d]uring the period of assignment, a State or local government employee on detail to a Federal agency ... is deemed an employee of the agency for the purpose of [various enumerated statutes, including] the Federal

Tort Claims Act and any other Federal tort liability statute ... ."  The statute further states that "[t]he supervision of the duties of such an employee may be governed by agreement between the Federal agency and the State or local government concerned."  The FTCA likewise defines government employees as "officers or employees of any federal agency ... and persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, whether with or without compensation."  28 U.S.C. § 2671.  This formulation "was drafted to have an expansive reach."  *Duffy v. United States*, 966 F.2d 307, 314 (7th Cir. 1992).

In addition, the Westfall Act, 28 U.S.C. § 2679, provides that when a state court tort action is brought against a federal official, "[u]pon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose," the action shall be removed to federal court and "deemed to be an action or proceeding brought against the United States ..., and the United States shall be substituted as the party defendant."  The action then proceeds in federal court "in the same manner as any action against the United States filed pursuant to [the FTCA] and shall be subject to the limitations and exceptions applicable to those actions."  28 U.S.C. § 2679(d)(4).

In the case at bar, in conjunction with the filing of the notice of removal, the federal defendants filed a certification of United States Attorney Trini E. Ross (Dkt. #1-3), stating that she had read the summons and complaint in this action and that "on the basis of the information

now available," defendants Baker, DeVinney and Ulatowski were deputized DUSMs at the time

of the underlying incident and were acting in the scope of their employment.[4]

The federal defendants have also filed a declaration of Rebecca Smith, the Chief DUSM

for this district.  (Dkt. #7-2.)  She states that on September 15, 2021, the USMS fugitive task

force was seeking James to execute an arrest warrant for second-degree assault.  Baker,

DeVinney and Ulatowski had all been appointed as special DUSMs, and were all serving on the

task force.  Smith states that the September 15 operation "was a USMS task force operation"

during which "Baker, DeVinney, and Ulatowski were acting as federal officers ... ."  *Id.* ¶ 11.[5]

The federal defendants assert that based on Ross's certification and Smith's declaration,

the U.S. must be substituted as defendant for Baker, DeVinney, and Ulatowski, and that the

claims against those individual defendants must be dismissed, for the same reasons that apply to

the claims against Smith.

While the Attorney General's certification is conclusive for purposes of removal, it is

only "the first, but not the final word on whether the federal officer is immune from suit and,

correlatively, whether the United States is properly substituted as defendant."  *Osborn v. Haley*,

549 U.S. 225, 246 (2007).  The certification is prima facie evidence that the defendant's conduct

occurred within the scope of federal employment, but it is not conclusive, and the plaintiff can

challenge it by alleging specific facts which, if true, would show that the defendant was not

---

[4] The Attorney General has delegated certification authority to the United States Attorneys.  *See* 28 C.F.R. § 15.4.

[5] In deciding whether an individual defendant was acting in the scope of federal employment, and hence whether the U.S. should be substituted for that defendant, the court may consider materials outside the pleadings. *See Davila v. Gutierrez*, 330 F.Supp.3d 925, 935-36 (S.D.N.Y. 2018) (citing *Bello v. United States*, 93 F.App'x 288, 289-90 (2d Cir. 2004)).

acting as a federal officer at the time in question. *See Hockenberry v. United States*, 42 F.4th

1164, 1170 (10th Cir. 2022); *Bolton v. United States*, 946 F.3d 256, 260 (5th Cir. 2019); *Glover

v. Donahoe*, 626 F.App'x 926, 929 (11th Cir. 2015); *Jacobs v. Vrobel*, 724 F.3d 217, 220 (D.C.

Cir. 2013).[6]

The original complaint alleged that the individual defendants were part of a USMS task

force, but the complaint did not assert any *Bivens* claims. The FAC does the opposite. The

original complaint alleged that James was killed during the execution of a warrant "by the U.S.

Marshalls [sic] Service Fugitive Task Force" and that "[t]he individual defendants were members

of the Task Force." (Dkt. #1-2 ¶¶ 24, 25.) The FAC omits that reference to the USMS, and

refers simply to "the warrant task force." (Dkt. #6 ¶ 52.) Unlike the original complaint, though,

the FAC asserts not just claims under state law, but *Bivens* claims (and § 1983 claims) against the

individual defendants. Plaintiff explains that she does not contend or concede that any of the

individual defendants other than Smith were acting as federal agents or under color of federal

law, but that the *Bivens* claims against them (which plaintiff now concedes should be dismissed)

are pleaded in the alternative to the § 1983 claims. *See* FAC at 14 n.1.

In challenging Ross's certification, plaintiff does not dispute that Baker, DeVinney and

Ulatowski had been deputized by the USMS, but she asserts that other facts weigh against a

finding that they were acting as federal officers, under color of federal law, during the events in

question. First, plaintiff states that of the thirteen law enforcement officers who participated in

---

[6] Although many of the cases in this area deal with issues relating to whether an indisputably federal employee was acting within the *scope* of his employment (as opposed to pursuing purely personal ends), the same analysis applies with respect to the federal or non-federal character of the defendant's activities. *See, e.g.*, *Askar v. Hennepin County*, 600 F.Supp.3d 948, 953 (D.Minn. 2022); *Iknatian v. United States*, No. CV-10-54, 2010 WL 3893610, at *2 (D.Mont. Sept. 28, 2010).

the execution of the arrest warrant, only one, Smith, was a full-time USMS deputy; the other

twelve came from state and local agencies.  The arrest warrant itself was a state court-issued

warrant, not a federal warrant, and alleged no federal crimes.  There were no allegations that

James had crossed state lines or was otherwise subject to federal jurisdiction.

Plaintiff also contends that the allegations in the complaint that Baker, DeVinney and

Ulatowski were employees of their respective agencies and acted as such suggest that they were

wearing their regular local and state uniforms, driving their local- and state-marked vehicles, and

presented local and state identification.  There are no allegations that anyone presented any

federal identification during the operation.  Plaintiff also notes that in a supporting deposition

filed in Rochester City Court on or about September 22, 2021, DeVinney stated, "On 09/15/21, I

was acting in my official capacity as a Deputy Sheriff."  (Dkt. #12-2 at 1.)

Plaintiff further points to the "Special Deputation Oath of Office, Authorization and

Appointment" for Baker, DeVinney and Ulatowski (a copy of which has been filed by the federal

defendants), which states, "This appointment does not constitute employment by the United

States Marshals Service, the United States Department of Justice, or the United States

Government," and that the appointee understands that he is "neither entering into an employment

agreement with the Federal Government or any element thereof, nor being appointed to any

position in the Federal Service by virtue of this special deputation."  (Dkt. #7-2 at 4.)

Even if the facts as alleged by plaintiff are accurate, they are insufficient to rebut Ross's

§ 2679 certification.  First, the fact that the task force was seeking to execute a state warrant is

not dispositive.  "Numerous courts that have examined this issue have reasoned that members of

these federal fugitive task forces do not lose the scope of their federal employment while they are

executing state arrest warrants." *Daavers v. Martin*, __ F.Supp.3d __, 2022 WL 4348474, at *5
(S.D.W.V. Sept. 19, 2022) (citing cases). *See, e.g.*, *Hunter v. City of Vancouver*, No. 22-5234,
2022 WL 3716836, at *4 (W.D.Wash. Aug. 29, 2022) ("The fact that the warrant states that
evidence was sought for state law violations does not mean that [defendants] were acting outside
the scope of their federal appointments on the FBI's [task force]"); *Stout v. Oklahoma Highway
Patrol*, No. 13-cv-753, 2015 WL 127820, at *5 (W.D.Okla. Jan. 6, 2015) (fact that arrest warrant
was issued by county judge and that officers were using their state-issued vehicles during
execution of warrant was insufficient to rebut United States' Westfall Act certification). *See also
Colorado v. Nord*, 377 F.Supp.2d 945, 949 (D.Colo. 2005) ("Courts have consistently treated
local law enforcement agents deputized as federal agents and acting as part of a federal task force
as federal agents").

Nor does the composition of the task force–which allegedly consisted of twelve local law
enforcement officers and one DUSM–determine whether the individual members of the task
force were acting under color of federal law.  That question cannot be answered by simple
arithmetic.  For that matter, the fact that there was such a diverse group of officers on the task
force, from federal, state, county and local agencies, suggests that this *was* a federal task force
created pursuant to the USMS's statutory authority under 34 U.S.C. § 41503(a).  Presumably, a
garden-variety arrest warrant is not typically executed by a team of officers from a range of
agencies, from a local police department to the USMS.  The composition of the task force here
fits squarely within the statute's authorization of "permanent Fugitive Apprehensive Task Forces
consisting of Federal, State, and local law enforcement authorities ... to be directed and
coordinated by the United States Marshal Service, for the purpose of locating and apprehending

fugitives." *Id.* *See Stout*, 2015 WL 127820, at \*1, \*4 (members of a task force including a state trooper, state narcotics agent, sheriff's deputies from two different counties, city police sergeant, and two DUSMs were all acting as federal employees when they attempted to serve arrest warrant).

As for the statement in defendants' appointment document that "This appointment does not constitute employment by the United States Marshals Service, the United States Department of Justice, or the United States Government," and that the appointee is not "entering into an employment agreement with the Federal Government," that is hardly remarkable. There is no dispute that other than Smith, the members of the task force were not federal "employees" in the literal, commonly understood meaning of that term.

But this is not an employment dispute. For FTCA purposes, the question of whether a defendant was should be deemed a federal employee depends not on his employment contract, but on whether he was "acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, whether with or without compensation." 28 U.S.C. § 2671. *See Askar v. Hennepin County*, 600 F.Supp.3d 948, 954 (D.Minn. 2022) (courts look to federal law, not private contracts, to determine whether a defendant is a federal employee under the FTCA).

For that reason, DeVinney's statement in his supporting deposition that he "was acting in [his] official capacity as a Deputy Sheriff" on September 15 does not mean that he was not acting under color of federal law, as a cross-deputized marshal. Again, there is no dispute that DeVinney was a sheriff's deputy with the MCSO, and that he remained such even while serving on the USMS task force. DeVinney's status as a special DUSM did not alter that fact; as noted,

the appointment document itself expressly disclaimed any employment relationship between DeVinney and the USMS or the federal government.  Read in context, DeVinney's statement about working in his official capacity as a deputy sheriff was simply meant to convey that at the time of the relevant events, he was acting in his official capacity, not as a civilian.  *See Love v. Mosley*, No. 14-cv-281, 2015 WL 5749517, at *7 (W.D.Mich. Mar. 30, 2015) (defendant's statement in his supporting declaration that he was "an investigator employed by the Michigan Deparment of Corrections" did not create an issue of fact with respect to defendant's status as a Special Deputy Marshal or as a member of the USMS task force).

Likewise, plaintiff's allegation that DeVinney and the rest of the task force members other than Smith were paid for their work on September 15 by their respective state, county and local agencies and not by the federal government is immaterial.  For FTCA purposes, an individual will be deemed a federal employee if he was "acting on behalf of a federal agency in an official capacity, ... *with or without compensation*."  28 U.S.C. § 2671 (emphasis added).  *See Deavers v. Martin*, __ F.Supp.3d __, 2022 WL 4348474, at *6 (S.D.W.V. Sept. 19, 2022) ("The fact that [defendant] was paid by Kanawha County for the work that day [while he was serving on a federal fugitive task force] is nothing more than a statutorily prescribed occurrence" that did not alter his status as a federal employee under the FTCA).

I am not persuaded by plaintiff's assertion that it is premature for the Court to decide whether defendants were acting under color of federal or state law, and that the § 1983 claims should be allowed to proceed.  For the reasons stated above, I conclude from the allegations of the complaint and the record presented that the individual defendants were acting under color of federal law, which precludes the possibility that they acted under color of state law.  *See*

*Fernandez v. City of Broken Arrow*, No. 16-CV-630, 2017 WL 471561, at *3 (N.D.Okla. Feb. 3, 2017) (rejecting plaintiff's contention that defendants were acting in "dual capacities" as members of federal DEA task force and local police department, and stating that they "could not, as a matter of law, have been acting under color of both state and federal law" simultaneously). Accordingly, there is no basis for any § 1983 claims against Baker, DeVinney or Ulatowski, and those claims are dismissed.

In addition, the U.S. must be substituted in place of Smith, Baker, DeVinney and Ulatowski with respect to the state law tort claims.  28 U.S.C. § 2679(d)(1).  The Westfall Act is clear that when a tort claim is brought against a federal official, the action shall be "deemed to be an action or proceeding brought against the United States ..., and the United States shall be substituted as the party defendant."  28 U.S.C. § 2679.

"[T]he Westfall Act [is] a measure designed to immunize covered federal employees not simply from liability, but from suit."  *Osborn*, 549 U.S. at 238.  The Act reflects "Congress'[s] intent to protect federal employees from the uncertain and intimidating task of defending suits that challenge conduct within the scope of their employ."  *Schrob v. Catterson*, 967 F.2d 929, 935 (3d Cir. 1992).  To permit plaintiff's tort claims against these individual defendants to proceed would only frustrate the purposes of the Westfall Act and the FTCA.  *See Castro v. United States*, 34 F.3d 106, 110 (2d Cir. 1994) ("[T]he FTCA makes individual government employees immune from common-law tort claims for acts committed within the scope of their employment"); *Reyes v. United States*, No. 22-CV-679, 2023 WL 2666831, at *3 (D.Conn. Mar. 28, 2023) ("under the FTCA, [common-law tort] claims must be stated against the United States,

and not against any individual government official").  The tort claims must therefore be dismissed as to the individual federal defendants.

All the claims against Smith, Baker, DeVinney and Ulatowski must be dismissed, then, in their entirety.  The FTCA provides the sole remedy for any claims arising out of the acts of those individual defendants occurring in the scope of their federal employment, and the sole defendant on such a claim is the United States.  *See Murchison v. Warden Lewisburg USP*, 566 F.App'x 147, 150 (3d Cir. 2014) ("the FTCA does not grant federal courts jurisdiction over actions against individual defendants such as federal employees") (quoting *Mars v. Hanberry*, 752 F.2d 254, 255 (6th Cir. 1985)); *Bishop v. Olsen*, No. 18-CV-163, 2019 WL 3802072, at *1 (N.D.Tex. June 25, 2019) ("an FTCA claim against a federal agency or employee, as opposed to the United States itself, must be dismissed for want of jurisdiction").

The remaining issue with respect to the federal defendants' motion is whether any of the claims against the U.S. should be dismissed.

In the FAC, plaintiff has asserted two "negligent planning" claims.  The first is set forth in the fourth cause of action against the U.S. under the FTCA, and the second is asserted in the ninth cause of action (apparently against all the defendants) under state law.  Both claims allege that defendants owed plaintiff and James a "special duty," citing *Ferreira v. City of Binghamton*, 38 N.Y.3d 298 (2022).

Since the U.S. is substituted for the individual federal defendants, the ninth claim is duplicative of the fourth, as to the U.S., and is subject to dismissal on that ground.  Regardless of that, however, neither claim can be brought against the U.S.

The FTCA provides that "[t]he United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a *private individual* under like circumstances."  28 U.S.C. § 2674 (emphasis added).  Thus, under the FTCA, the United States may only be held liable "where the United States, if a *private person*, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b)(1) (emphasis added).

In the case relied on by plaintiff, *Ferreira*, the New York Court of Appeals answered a question certified by the Court of Appeals for the Second Circuit, concerning whether New York's "special duty" requirement applies "to claims of injury inflicted through municipal negligence" or if it applies only to claims premised upon a municipality's negligent "failure to protect the plaintiff from an injury inflicted other than by a municipal employee."  38 N.Y.3d at 304.  The question posed in *Ferreira*, then, dealt with the parameters of New York's special-duty requirement with respect to negligence claims against municipalities, *not* against individuals. *See id.* (ruling that "plaintiffs must establish that a *municipality* owed them a special duty when they assert a negligence claim based on actions taken by a *municipality* acting in a governmental capacity," and "clarify[ing] that plaintiffs may establish a special duty when a *municipality*, acting through its police force, plans and executes a no-knock search warrant at a person's home") (emphases added).

"[T]he Supreme Court has made clear that the relevant inquiry [on a claim under the FTCA] is the liability of a 'private person' under State law, not that of a 'state or municipal entity.'"  *McGowan v. United States*, 825 F.3d 118, 126 (2d Cir. 2016) (quoting *United States v.*

*Olson*, 546 U.S. 43, 45-46 (2005)).  "Accordingly, the liability of municipalities or municipal

actors performing governmental functions cannot serve as a private analogue." *Id.*

   Plaintiff has not responded to the federal defendants' argument that no "negligent

planning" claim will lie against the U.S. under the FTCA.  She cites no authority that New York

courts recognize such a claim against a private person, nor is the Court aware of such authority.

The fourth and ninth causes of action are therefore dismissed.

   I also agree with the U.S. that the thirteenth cause of action, for failure to intervene, must

be dismissed.  In the context of the use of force by police officers, a failure to intervene may give

rise to a constitutional violation actionable under § 1983.  *See*, *e.g.*, *Anderson v. Branen*, 17 F.3d

552, 557 (2d Cir. 1994) (stating that police officers "have an affirmative duty to intervene to

protect the constitutional rights of citizens from infringement by other law enforcement officers

in their presence").  But a § 1983 claim cannot be brought against the United States or federal

actors, nor can such a claim form the basis for an FTCA claim against the United States.  *See*

*F.D.I.C. v. Meyer*, 510 U.S. 471, 486 (1994).

   In addition, ordinary citizens have no duty under federal or New York law to intervene to

prevent or stop an assault or a constitutional violation.  *See Valverde v. Folks*, No. 19-cv-8080,

2022 WL 836310, at *8 (S.D.N.Y. Mar. 21, 2022) ("It has long been recognized that the duty to

intervene to protect the constitutional rights of citizens from infringement by law enforcement

officers applies to law enforcement officials, not non-police state actors") (citing cases).  No such

tort exists under New York law.  *See Ashanti v. City of New York*, 77 Misc3d 1225 (Sup. Ct.

2023) ("Plaintiff acknowledges that failure to intervene does not exist under New York State

law"). Thus, this is not a claim with respect to which a private individual could be held liable under New York law, so as to support a claim against the U.S. under the FTCA.

The case relied upon by plaintiff, *Meeks v. City of Rochester*, No. 22-CV-6163, 2022 WL 13789086 (W.D.N.Y. Oct. 24, 2022), is not to the contrary. The court in *Meeks* simply held that a state court complaint that alleged a claim against the City of Rochester for RPD officers' failure to intervene in other officers' alleged violations of the plaintiff's constitutional rights, under a theory of *respondeat superior*, with "no invocation of 'the Constitution, laws, or treaties of the United States,'" did not raise a federal question making the action removable to federal court. *Id.* at *2 (quoting 28 U.S.C. § 1331). In so doing, the court expressly found it unnecessary to consider the adequacy or inadequacy of that claim under New York law, stating, "Plaintiff has chosen to pursue his failure to intervene claim under New York state law and the viability of that claim is a matter for the state court to determine." *Id.* at *3.

## II. Baxter's Motion to Dismiss

As stated, Baxter filed a motion in state court to dismiss the claims against him, prior to the removal of the action to federal court. Subsequent to the removal, Baxter filed a notice in this Court (Dkt. #5), alerting the Court to the pendency of his motion. Plaintiff has filed a response to the motion (Dkt. #13), and both parties have filed additional memoranda (Dkt. #14, #15.)

In her response to Baxter's motion, plaintiff asserts that Baxter is in default because the motion to dismiss was directed at the original complaint, and Baxter has not responded to the

amended complaint.  No default has been entered at this point, however, nor has plaintiff formally requested the entry of default against Baxter.

In reply, Baxter contends that the pendency of his motion to dismiss rendered it unnecessary for him to respond to or move against the amended complaint.  He also requests that the Court consider the arguments advanced in his state court motion, and apply them to the amended complaint.  By letter (Dkt. #15), plaintiff's counsel states that plaintiff does not oppose that request, but he also asserts that since the state court motion was filed before the complaint was amended to add a claim against Baxter under § 1983, the Court should not even consider whether to dismiss the § 1983 claim.

To the extent that Baxter's motion relates to plaintiff's state law claims against him, the Court can and will decide the motion based on the arguments he advanced in state court.  Baxter's motion was made pursuant to N.Y. CPLR §§ 3211(a)(1), (a)(5) and (a)(7), which provide in pertinent part that a complaint can be dismissed if:  documentary evidence conclusively establishes a defense to the claim; the action is time-barred; or the pleading fails to state a cause of action, respectively.

The action having been removed to federal court, New York's procedural rules no longer govern; *see Powell v. City of Jamestown*, No. 21-cv-721, 2022 WL 1913581, at *19 (W.D.N.Y. June 3, 2022); *TicketNetwork, Inc. v. Darbouze*, 133 F.Supp.3d 442, 445 n.3 (D.Conn. 2015). The Court will therefore treat Baxter's motion as if it had been brought under the most analogous rules of the Federal Rules of Civil Procedure, Rules 12(b)(6) and 12(c).  *See Marquess v. CardFlex, Inc.*, No. 19-cv-4790, 2021 WL 355153, at *8 (E.D.N.Y. Feb. 2, 2021) ("Federal

-20-

courts have granted relief similar to that available under CPLR 3211 on both Rule 12(b)(6)

motions to dismiss and Rule 12(c) motions for judgment on the pleadings") (citing cases).

The first ground for Baxter's motion is that the claims against him are barred by the

one-year statute of limitations of CPLR § 215 for "an action against a sheriff ... upon a liability

incurred by him by doing an act in his official capacity or by omission of an official duty ... ."

Baxter contends that because James's death occurred on September 21, 2021, the latest this

action could have been timely brought against Baxter was September 21, 2022.  The original

complaint was filed in state court on December 14, 2022.

The amended complaint filed in this Court, however, asserts a claim against Baxter under

42 U.S.C. § 1983.  In general, the applicable statute of limitations for § 1983 actions in the State

of New York is three years.  *See Owens v. Okure*, 488 U.S. 235, 251 (1989); *Murphy v. Lynn*, 53

F.3d 547, 548 (2d Cir. 1995).  Leaving aside the question of whether Baxter has properly moved

against the § 1983 claim, that claim is not time-barred.

To the extent that the amended complaint asserts claims against Baxter under New York

law, however, the limitations periods on those claims are governed by New York law.  *See*

*Connecticut Gen'l Life Ins. Co. v. BioHealth Labs., Inc.*, 988 F.3d 127, 137 (2d Cir. 2021) ("it is

beyond cavil that federal courts apply state limitations rules to state-law claims regardless of the

jurisdictional circumstances"); *Lessord v. General Elec. Co.*, 258 F.Supp.2d 209, 212 (W.D.N.Y.

2002) (applying New York statute of limitations period to supplemental state law tort claims).

Plaintiff has not even addressed Baxter's arguments concerning the limitations issue, and I agree

with Baxter that those claims are time-barred.  *See Wekenmann v. Erie County Sheriff's Office*,

No. 19-cv-1572, 2021 WL 22540, at *4 (W.D.N.Y. Jan. 4, 2021) (dismissing negligence claim

against sheriff arising out of plaintiff's arrest as time-barred by CPLR § 215(1), where claim was brought more than one year after plaintiff's arrest).  Plaintiff's state law claims against Baxter are therefore dismissed as time-barred.

As to the newly-added § 1983 claim, the Court will not dismiss the claim against Baxter at this point, but directs him either to answer or move against the amended complaint, as set forth below.

In general, an amended complaint completely supersedes the original and moots any motions directed at the original complaint.  *See Santos v. Keenan*, No. 17-CV-984, 2020 WL 2859202, at *3 (W.D.N.Y. Feb. 6, 2020).  As explained above, the amended complaint in this case did not substantively alter the claims against Baxter under New York law, so there would be no point in requiring Baxter to refile his motion to dismiss those claims.

The amended complaint adds an entirely new cause of action against Baxter, however: the § 1983 claim.  Although that claim tracks the language of the state law claim for negligent training, supervision and discipline, *see* FAC ¶¶ 167-71, 221-24, Baxter's brief filed in state court devoted about one page to a discussion of the merits of that claim, based almost entirely on New York law.  The one federal case cited, *Aikman v. City of Westchester*, 691 F.Supp.2d 496 (S.D.N.Y. 2010), was cited simply for the proposition that local law enforcement officers on a federal task force are treated as federal employees for purposes of federal tort liability statutes.  In addition, Baxter's reply memorandum filed in this Court mostly responds to plaintiff's assertion that Baxter is in default.

Under these circumstances, it would be better for the Court to decide Baxter's motion with the benefit of further briefing, in light of the removal of this action to federal court, the new

allegations in the amended complaint, the addition of a § 1983 claim, and this Court's decision on the federal defendants' motion in this Decision and Order.  As to the § 1983 claim, then, Baxter's motion to dismiss is denied without prejudice.  Baxter is directed to file a responsive pleading or move against the amended complaint, as set forth in the Conclusion below.

## CONCLUSION

The motion by defendants the United States of America, Carlton Smith, William Baker, Christian DeVinney, and Jeffrey Ulatowski to substitute and dismiss (Dkt. #7) is granted.  The Clerk of Court is hereby ORDERED to substitute the United States of America as defendant in place of Smith, Baker, DeVinney, and Ulatowski with respect to plaintiff's state law tort claims (Claims 9 through 13), pursuant to 28 U.S.C. § 2679(b)(1); dismiss those claims against Smith, Baker, DeVinney, and Ulatowski for lack of subject matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1); dismiss the *Bivens* claims (Claims 1 and 2) against Smith, Baker, and Ulatowski), pursuant to Fed. R. Civ. P. 12(b)(6); dismiss the § 1983 claims (Claims 6 and 7) against Baker and Ulatowski, pursuant to Fed. R. Civ. P. 12(b)(6); and dismiss the fourth, ninth, and thirteenth causes of action against the United States of America, pursuant to Fed. R. Civ. P. 12(b)(6).

The motion to dismiss filed by defendants Baker, DeVinney, and Ulatowski (Dkt. #3) is denied as moot.

The motion to dismiss filed by defendant Todd Baxter (Dkt. #5) is granted in part and denied in part.  The state law claims against Baxter (Claims 9 through 14) are dismissed.  In all other respects, the motion is denied.  Baxter is hereby directed to answer or move against the

amended complaint no later than twenty (20) days after the date of entry of this Decision and

Order.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
May 11, 2023.