UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SHENEA JAMES, as administrator of the
estate of Dedrick James, deceased and
Shenea James, individually,

                      Plaintiff,

        v.

CITY OF ROCHESTER, et al.,

                      Defendants.
_____

<u>DECISION AND ORDER</u>

23-CV-6057DGL

       This action was brought by Shenea James ("Plaintiff"), individually and as administrator of the estate of Dedrick James ("James"), in New York State Supreme Court, Monroe County, in December 2022. The original complaint asserted seven claims arising out of the death of James on September 15, 2021, when he suffered a fatal gunshot wound in Rochester, N.Y. during the attempted execution of an arrest warrant by law enforcement personnel.

       The original complaint named six defendants:  the City of Rochester ("City"), Rochester Police Department ("RPD") Officer William Baker, RPD Investigator Richard Arrowood, Monroe County Sheriff Todd Baxter, Monroe County Sheriff's Office ("MCSO") Sergeant Christian DeVinney, and New York State Police ("NYSP") Investigator Jeffrey Ulatowski. Plaintiff also asserted claims against other, as yet unidentified members of the RPD, MCSO and NYSP.

The action was removed to this Court on January 20, 2023 by defendants Baker, DeVinney and Ulatowski, based on plaintiff's assertion of claims under 42 U.S.C. § 1983. Prior to the removal of the action, defendant Baxter had moved to dismiss the complaint, and that motion was pending at the time the action was removed to this Court. (Dkt. #1-2 at 21.)

On May 11, 2023, this Court issued a Decision and Order (Dkt. #21), familiarity with which is assumed, substituting the United States of America as defendant in place of some of the defendants (not including Baxter), and dismissing some of plaintiffs' claims in their entirety. *James v. City of Rochester*, __ F.Supp.3d __, 2023 WL 3356931 (W.D.N.Y. 2023). This Court also dismissed plaintiff's claims under New York state law against Baxter, and directed Baxter to answer or move against the remaining federal claim asserted against him.

Baxter has now moved against the complaint by filing a motion dismissing the federal claim against him pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff has filed a response in opposition to the motion.

## DISCUSSION

Pursuant to the Court's May 11 decision, one claim remains against Baxter, asserted under 42 U.S.C. § 1983. The First Amended Complaint alleges that Baxter "personally caused decedent's constitutional injuries and death by being deliberately or consciously indifferent to the rights of others in failing to properly supervise, train, and discipline his subordinate employees," that Baxter "was negligent in the training, supervision and discipline" of the sheriff's deputies who took part in the attempted execution of the arrest warrant, "who were provided, upon information and belief, no training on how to safely execute an arrest warrant," and that

"[a]lternatively, the training Baxter provided to the Sheriff's Deputies was inadequate." (Dkt. #6 ¶¶ 167-169.)

It has long been established that there is no *respondeat superior* or vicarious liability in suits under § 1983. *See, e.g.*, *Littlejohn v. City of New York*, 795 F.3d 297, 314-15 (2d Cir. 2015). Rather, the "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006).

Previously, courts in this circuit applied a five-factor test set forth in *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995), for determining whether a supervisory official was personally involved in a constitutional violation. *See, e.g.*, *Raspardo v. Carlone*, 770 F.3d 97, 116 (2d Cir. 2014); *Briglin v. Morley*, No. 19-CV-6927, 2020 WL 4059110, at *2 (W.D.N.Y. July 20, 2020).

In *Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020), however, the Court of Appeals held that "[f]ollowing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), courts may not apply a special rule for supervisory liability. Rather, the plaintiff must directly plead and prove that 'each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Id.* at 612 (quoting *Iqbal*, 556 U.S. at 676). The court explained that "'[t]he factors necessary to establish a [§ 1983] violation will vary with the constitutional provision at issue' because the elements of different constitutional violations vary," *id.* at 618 (quoting *Iqbal*, 556 U.S. at 676), but stated that "[t]he violation must be established against the supervisory official directly." *Id.*

Even prior to *Tangreti*, district courts in this circuit dismissed § 1983 claims against supervisory officials based on conclusory allegations that they failed to provide proper training to

their subordinates.  *See*, *e.g.*, *Milner v. City of Bristol*, No. 18cv1104, 2019 WL 3945525, at *3 (D.Conn. Aug. 21, 2019); *Ryan v. Moss*, No. 11-CV-6015, 2013 WL 956722, at *17 (W.D.N.Y. Mar. 12, 2013).  "But *Tangreti* did raise the bar" still higher for pleading § 1983 claims against supervisory officials.  *Kistner v. City of Buffalo*, No. 21-CV-526, 2023 WL 144915, at *14 (W.D.N.Y. Jan. 10, 2023), *appeal filed*, No. 23-175 (2d Cir. Feb. 8, 2023).

Under the standards set forth in *Iqbal* and *Tangreti*, I conclude that plaintiff's allegations concerning Baxter are insufficient to make out a claim against him under § 1983.  Plaintiff has simply alleged in conclusory fashion that Baxter provided training to MCSO deputies and that the training was inadequate.

In response to Baxter's motion, plaintiff points to several allegations in the complaint to show Baxter's personal involvement in the alleged constitutional violations, including the allegations that:  "Baxter and the MCSO provided regular training to [MCSO Sergeant] DeVinney regarding the execution of warrants like the arrest warrant executed on September 15, 2021"; "Baxter provided, upon information and belief, extensive training to DeVinney and the MCSO Warrant Unit about executing search and arrest warrants.  That training, however, was inadequate"; "Baxter and the MCSO provided the majority of the training on execution of warrants to both members of the MCSO Warrant Unit and to the task force"; "Baxter failed to provide any training to DeVinney or the other defendants and other warrant task force members regarding how to properly and safely plan and execute an arrest warrant; or the training he provided was inadequate"; and "Baxter never trained DeVinney and the other defendants and other warrant task force members that in situations like this, where there was no emergency requiring that the task force rush into to the house, that they were required to devise a safer plan,

instead of rushing into the house, with no plan for how to react if they encountered resistance from the subject of the warrant."  (Dkt. #6 ¶¶ 85, 92-96.)

All that amounts to is saying that the task force members who attempted to execute the warrant for James's arrest should have had some unspecified "safer plan" for doing so, and that because Baxter allegedly had trained MCSO personnel about how to execute warrants, the task force's failure to come up with and use a "safer plan" must have been the result of inadequate training.  Such speculative inferences are unwarranted and do not give rise to a plausible claim. *See Hyde v. City of Wilcox*, 23 F.4th 863, 875 (9th Cir. 2022) ("an inadequate training policy itself cannot be inferred from a single incident") (citing *Okla. City v. Tuttle*, 471 U.S. 808, 823-24 (1985) (plurality opinion)).

In short, plaintiff's allegations fail to show Baxter's personal involvement in the alleged constitutional violation.  Plaintiff's claim against Baxter rests essentially on a theory of supervisory liability, which is foreclosed by *Tangreti*.  *See Johnson v. State of Vermont*, No. 22-cv-29, 2023 WL 3548801, at *23 (D.Vt. May 18, 2023) ("Other than in a conclusory manner, the [complaint] neither explains how Dr. Fisher's alleged failure to train and supervise Centurion's employees led to Mr. Johnson's death, nor describes the training and supervision needed"); *Britt v. Doe*, No. 22-CV-692, 2022 WL 165792907, at *8 (N.D.N.Y. Oct. 13, 2022) ("Plaintiff's sparse allegations ... that Defendant Harder failed to adequately train, enforce training, or supervise his officers on how to properly resolve domestic dispute incidents ... are insufficient to plausibly suggest the personal involvement of Defendant Harder"); *Robinson v. Graham*, No. 20-cv-1610, 2021 WL 2358415, at *3 (N.D.N.Y. June 9, 2021) (dismissing claim against supervisor for failure to train and manage staff as "reminiscent of a 'supervisor liability'

-5-

theory of liability for Section 1983 claims that is no longer available" after *Tangreti*); *Boyd v. Larregui*, No. 19-cv-579, 2020 WL 5820491, at *7 (D. Conn. Sept. 30, 2020) (dismissing claim for failure to train subordinates where plaintiff failed to establish personal involvement of supervisory defendant or "provide particular relevant deficiencies in the training program").[1]

The Court's conclusion that plaintiff has not stated a § 1983 claim against Baxter renders it unnecessary for me to address Baxter's argument that he is entitled to qualified immunity. *See Myrick v. Fulton County, Ga.*, 69 F.4th 1277 (11th Cir. 2023) (in addressing defense of qualified immunity, court must ask whether defendant's conduct violated a constitutional right, and if the right violated was clearly established at the time of the alleged violation; "For a plaintiff to overcome a claim of qualified immunity, both questions must be answered affirmatively. If the answer to one is 'no,' the court need not reach the other").

It is patently clear, however, that Baxter is entitled to such immunity. Beyond failing to show that Baxter was directly involved in the alleged constitutional violation, plaintiff has alleged no facts showing that any of Baxter's acts or omissions implicated any clearly established constitutional right. Sheriffs and other supervisory law enforcement officials have a duty to train their officers and deputies how to perform their jobs in accordance with the law, but plaintiff points to no authority that established as of the time of the underlying incident that the training provided to MCSO deputies under Baxter was inadequate. *See Walker v. Schult*, 717 F.2d 119,

---

[1] The case relied on by plaintiff, *Stone #1 v. Annucci*, No. 20-CV-1326, 2021 WL 4463033 (S.D.N.Y. Sept. 28, 2021), is inapposite. The court in that case held that a senior prison official can be held liable for his role in creating a policy by which violations of the Eighth Amendment occurred, if he can be shown to have acted with the necessary *mens rea* of deliberate indifference to the consequence of that policy. *Id.* at *9. Plaintiff in the case at bar has not alleged that Baxter created a policy that led to a constitutional violation, much less that he did so with a culpable state of mind. This case has nothing to do with MCSO policies, but with the manner in which one particular warrant was executed.

125-26 (2d Cir. 2013) (to defeat a claim of qualified immunity, "existing precedent must have placed the statutory or constitutional question beyond debate").  As Baxter's memorandum of law points out, Dkt. #22 at 4, even accepting the truth of plaintiff's allegations in the complaint, the method of execution of the arrest warrant here was consistent with the relevant provisions of New York's Criminal Procedure Law.

As with the substantive claim, plaintiff's assertion that Baxter is not entitled to immunity presupposes that there was a "safer plan" that should have been used to effectuate James's arrest, and that Baxter should have trained his deputies about such a hypothetical plan, or at least trained them how to devise a safer plan themselves.  The facts alleged do not plausibly support that assertion.  In fact, the allegations indicate that the method of execution was fairly straightforward:  the officers knew that the subject of the warrant, James, was inside the house, they went to the door, James's grandmother opened the door, James saw the officers and ran farther into the house, they followed, caught up with James, and a struggle ensued, in which James was shot.[2]  I see no basis to contend that the unfortunate outcome of these events could fairly be attributed to Baxter's inadequate training of his deputies.

Plaintiff's argument that Baxter's immunity defense should not be decided until she has had discovery with respect to the training provided by the MCSO is misguided.  "As the Supreme Court has emphasized, a plaintiff must allege facts supporting a plausible claim before being entitled to discovery and cannot hide behind broad legal conclusions to satisfy the pleading requirements."  *Melendez v. Sirius XM Radio, Inc.*, 50 F.4th 294, 307 (2d Cir. 2022) (citing

---

[2] As noted in the Court's prior decision, a report issued on August 26, 2022 by the Office of Special Investigation of the New York State Attorney General's office concluded that James was shot by a single bullet from his own handgun, fired by James himself. (Dkt. #1-2 at 71.)

*Iqbal*, 556 U.S. at 678-79).  For the reasons stated, plaintiff has not alleged such facts.  Her claim against Baxter must therefore be dismissed.

## CONCLUSION

The motion to dismiss filed by defendant Monroe County Sheriff Todd Baxter (Dkt. #22) is granted, and plaintiff's claims against Baxter are dismissed.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
      July 10, 2023.

-8-