**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF MONROE**

---

SHENEA JAMES as administrator of the estate of
DEDRICK JAMES, deceased, and SHENEA JAMES,
individually,

                                                    Plaintiff,

                        -against-

THE UNITED STATES OF AMERICA, DEPUTY
UNITED STATES MARSHAL CARLTON SMITH, CITY
OF ROCHESTER, RPD OFFICER WILLIAM BAKER,
RPD INVESTIGATOR RICHARD ARROWOOD, "JOHN
DOE RPD OFFICERS 1-10" (names and number of whom
are unknown at present), MONROE COUNTY SHERIFF
TODD BAXTER, MSCO SERGEANT CHRISTIAN
DEVINNEY, "RICHARD ROE SHERIFF'S DEPUTIES 1-
10" (names and number of whom are unknown at present),
NYSP INVESTIGATOR JEFFREY ULATOWSKI, and
other unidentified members of the Rochester Police
Department, Monroe County Sheriff's Office, and New York
State Police,

                                                    Defendants.

**FIRST AMENDED**
**COMPLAINT**

**Case No.: 23-cv-6057 (DLG)**

**JURY TRIAL DEMANDED**

---

    Plaintiff SHENEA JAMES, as administrator of the estate of DEDRICK JAMES, deceased,

by her attorneys, Roth & Roth, LLP and Easton Thompson Kasperek Shiffrin LLP complaining of

the Defendants, respectfully alleges as follows:

## I.       PRELIMINARY STATEMENT

    1.      Plaintiff SHENEA JAMES, as administrator of the estate of DEDRICK JAMES,

deceased, brings this action for compensatory damages, punitive damages, and attorney's fees

pursuant to Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388

(1971) and the Federal Tort Claims Act ("FTCA"), for violations of decedents' civil rights, as said

rights are secured by said statutes and the Constitution of the United States. Plaintiff also brings

this action for damages under the laws of the state of New York.

2.    On September 15, 2020, Dedrick James was shot and killed during defendants' execution of an arrest warrant at 6 Vinewood Place, Rochester, New York, where Mr. James lived with his elderly grandmother.

3.    Mr. James was shot and killed because defendants negligently planned and executed the aforesaid warrant.

4.    Prior to the execution of the arrest warrant, Mr. James had voluntarily spoken with law enforcement on at least two occasions regarding the incident that gave rise to the arrest warrant. Thus, there was no reason to violently enter his house to seize and arrest him, which created an unreasonable risk of harm to Mr. James, to his grandmother and to law enforcement.

5.    This tragedy could have been avoided, and Mr. James would still be alive, if defendants had simply taken the time to devise a safe plan to take Mr. James into custody.

## II.    VENUE AND JURISDICTION

6.    This action is brought pursuant to Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971), the FTCA, and pursuant to the Fourth and/or Fifth Amendments to the United States Constitution.

7.    The Court has pendent jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. §1367.

8.    Jurisdiction is founded upon 28 U.S.C. §§ 1331, 1343 1346(b), 2671-80, and 1367.

9.    Venue is properly laid in the Western District of New York under U.S.C. §1391(b), in that this is the District in which the claim arose and pursuant to U.S.C. 1402(b) because the acts and/or omissions giving rise to plaintiff's claims occurred within the Western District of New York.

10.    On or about March 4, 2022, plaintiff properly filed her claims with the U.S. Marshal's Service by serving a completed SF-95 form for a sum certain in the amount of $20,000,000.

11.    On or about March 18, 2022, the U.S. Marshal's, Office of General Counsel, acknowledged receipt of decedent's claim and advised in writing that they would be handling plaintiff's claim consistent with 28 C.F.R. § 14.2(b)(2).

12.    That this claim was filed within two (2) years of accrual as prescribed by 28 U.S.C. § 2401(b).

13.    More than six months have elapsed since service of said SF-95 Claim Form was filed with the U.S. Marshal's Service and the Federal Government has failed to pay or adjust the claim, which constitutes a final denial of the claim pursuant to 28 U.S.C. § 2675(a).

14.    This lawsuit is being commenced within six months after the U.S. Marshal's final denial of the claim pursuant to 28 U.S.C. § 2675(a).

15.    Accordingly, plaintiff has exhausted her administrative remedies and complied with all statutory jurisdictional requirements and conditions precedent to commencement and prosecution of this litigation under the FTCA.

16.    Additionally, Shenea James, administrator for the estate of her son, Dedrick James, filed timely Notices of Claim against the City and County, in compliance with the Municipal Law § 50.

17.    The City held a 50-h hearing on March 3, 2022.

18.    The County waived a 50-h hearing.

19.    More than thirty (30) days have elapsed since service of said Notices of Claim were filed and the City and County have failed to pay or adjust the claim.

20.     This action was brought within a year of the event that gave rise to plaintiff's causes of action under New York State law and plaintiff has complied with all of the statutory prerequisites for bringing this action.

### III. JURY DEMAND

21.     The Plaintiff respectfully demands a trial by jury of all issues in this matter.

### VI. PARTIES

22.     Plaintiff, SHENEA JAMES, as administrator of the estate of DEDRICK JAMES is a citizen of the United States and a resident of the County of Monroe, State of New York. On November 4, 2022, the Surrogate's Court, County of Monroe, State of New York, issued letters of administration to SHENEA JAMES, naming her as the personal representative of the estate, empowered to bring this lawsuit.

23.     Defendant, THE UNITED STATES OF AMERICA ("UNITED STATES") by and through its law enforcement agencies, including the UNITED STATES MARSHALS SERVICE (USMS), operated, at all relevant times, the USMS.

24.     The USMS is a federal law enforcement, crime prevention, and security arm of the United States government. The USMS is an agency of Defendant UNITED STATES, with powers to, among other things, make arrests for unlawful behavior and to initiate criminal charges against persons whom they have arrested, and that these officers are authorized by Congress to act under the color of law and within the authority of the United States of America pursuant to federal law.

25.     Specifically, officers for the USMS are federal law enforcement officers who carry firearms, make arrests, execute federal search warrants and serve subpoenas on behalf of the UNITED STATES. These law enforcement officers work with U.S. Attorneys, other law enforcement, and local prosecutors to investigate cases and prepare them for court.

26.     At all times hereinafter mentioned, the individually named federal defendant, DEPUTY UNITED STATES MARSHAL CARLTON SMITH, Individually (hereinafter "SMITH" or "USM SMITH")  was employed by the defendant UNITED STATES OF AMERICA ("UNITED STATES"), specifically by the USMS, and was acting within the scope and authority of his employment as a law enforcement officer, and under the color of law, and within the authority of the United States of America.

27.     THE UNITED STATES at all relevant times was responsible for the hiring, training, supervision, discipline, retention, and promotion of the law enforcement officers, sergeants, agents, and/or employees of the USMS, a law enforcement agency of defendant UNITED STATES.

28.     Defendant UNITED STATES is sued for personal injuries to plaintiff caused by the wrongful and/or negligent acts and/or omissions of defendant's agent and/or employee USM SMITH, who was acting within the scope of the office or employment under circumstances where the UNITED STATES, if a private person, would be liable to plaintiff in accordance with the laws of the United States and/or the State of New York. *See* 28 U.S.C. § 1346(b).

29.     At all times hereinafter mentioned USM SMITH, either personally or through his employees, was acting under color of law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages, and/or practices of the United States of America.

30.     Each and all of the acts of USM SMITH alleged herein were done by said defendant while acting within the scope of his employment for the USMS and the United States of America.

31.     Defendant CITY OF ROCHESTER ("CITY") is a municipal entity created and authorized under the laws of the State of New York and is located in the County of Monroe.

32.     Defendant CITY is authorized by law to maintain a police department, which acts as its agent in the area of law enforcement and for which it is ultimately responsible. Defendant CITY assumes the risks incidental to the maintenance of a police force and the employment of police officers as said risks attach to the public consumers of the services provided by the Rochester Police Department.

33.     Defendants Rochester Police Department ("RPD") POLICE OFFICER ("P.O.") WILLIAM    BAKER    ("BAKER"),    INVESTIGATOR    RICHARD    ARROWOOD ("ARROWOOD"), "JOHN DOE" ROCHESTER POLICE DEPARTMENT OFFICERS 1–10 (the names and numbers of which are currently unknown), ("Defendant RPD Officer(s)," or Defendant Police Officer(s)"), are and were at all times relevant herein, officers, employees and agents of the Defendant City and the RPD. The Defendant RPD Officers are being sued in their individual and official capacities.

34.     At all times hereinafter mentioned BAKER, ARROWOOD and the JOHN DOES, either personally or through their employees, were acting under color of law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages, and/or practices of the CITY and the RPD.

35.     Each and all of the acts of BAKER, ARROWOOD and the JOHN DOES alleged herein were done by said defendants while acting within the scope of their employment for the CITY and the RPD.

36.     Defendant TODD BAXTER ("Sheriff Baxter" or "BAXTER") was, at all times relevant herein, the duly elected Sheriff of the County of Monroe. At all relevant times, Defendant BAXTER was acting within the scope of his employment and under color of state law. He is sued in his individual and official capacity.

37.     BAXTER is responsible for the training, supervision and discipline of the Defendant Sheriff's Deputies under state law.

38.     Defendant CHRISTIAN DEVINNEY ("DEVINNEY") was, at all times relevant herein, a Sergeant on the Road Patrol with the Monroe County Sheriff's Office, where he oversees the Sheriff's Warrant Unit. In that capacity, DEVINNEY was responsible for coordinating and planning the execution of the warrant. Specifically, on September 15, 2021, DEVINNEY was acting in his official capacity as a Deputy Sheriff with the Monroe County Sheriff's Office and as the head of its Warrant Unit.

39.     "RICHARD ROE" MONROE COUNTY SHERIFF'S DEPUTIES 1–10 (the names and numbers of which are currently unknown), were, at all times relevant to this Complaint, Deputy Sheriffs with the Monroe County Sheriff's Office ("MCSO"). At all relevant times, these defendants were acting within the scope of their employment with the County and under Sheriff BAXTER and acting under color of state law. They are sued in their individual capacities. They are referred to collectively as "the Sheriff's Deputies."

40.     At all times hereinafter mentioned BAXTER, DEVINNEY and the RICHARD ROES, either personally or through their employees, were acting under color of law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages, and/or practices of the SHERIFF BAXTER and the COUNTY OF MONROE.

41.     Each and all of the acts of BAXTER, DEVINNEY and the RICHARD ROES alleged herein were done by said defendants while acting within the scope of their employment for the SHERIFF BAXTER and the COUNTY OF MONROE.

42.     New York State Police Investigator JEFFREY ULATOWSKI ("ULATOWSKI"), was, at all times relevant to this Complaint, a New York State Police Officer. At all relevant times,

he was acting within the scope of his employment and under color of state law. He is sued in his individual capacity.

43.    At all times hereinafter mentioned ULATOWSKI, either personally or through his employees, were acting under color of law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages, and/or practices of the STATE OF NEW YORK.

44.    Each and all of the acts of ULATOWSKI alleged herein were done by said defendant while acting within the scope of his employment for the New York State Police.

## V.  STATEMENT OF FACTS

45.    On September 15, 2021, Dedrick James was shot and killed during the execution of an arrest warrant at 6 Vinewood Place, Rochester, New York by the defendants.

46.    Between August 25, 2021 and September 15, 2021, the defendants conducted surveillance of 6 Vinewood Place.

47.    Upon information and belief, the surveillance showed Mr. James coming and going from the residence at regular times.

48.    Upon information and belief, the surveillance showed Mr. James coming and going while driving a white Dodge Dart vehicle.

49.    The investigation showed that Mr. James lived at 6 Vinewood Place with his elderly grandmother, Betty Irvin.

50.    On the morning of September 15, 2021, New York State Police Investigator Ulatowski and RPD Investigator Richard Arrowood surveilled the house and confirmed that only Mr. James and Ms. Irvin were inside of the house.

51.    Investigator Ulatowski radioed the defendants and other members of the RPD and MSCO Warrant Unit to assemble to attempt to apprehend and arrest Mr. James.

52.     Upon information and belief, the defendants and other members of the warrant task force only considered forcibly entering 6 Vinewood Place and violently seizing and arresting Mr. James.

53.     Prior to the incident, the defendants and other warrant task force members failed to devise a plan for how to safely execute the warrant and effectuate the arrest of Mr. James.

54.     At approximately 10:35 a.m. on September 15, 2021, the defendants and other warrant task force members arrived at 6 Vinewood Place.

55.     NYSP Investigator Ulatowski, RPD officer William Baker, and U.S. Marshal Smith approached the door and rang the doorbell.

56.     Decedent's grandmother, Mr. Irvin, answered the door.

57.     When they saw Mr. James exit a room down the hallway, Ulatowski, Baker and Smith threw Ms. Irvin to the ground and forcibly entered the home.

58.     Ulatowski, Baker and Smith chased Mr. James into a bathroom.

59.     Ulatowski, Baker and Smith did not provide Mr. James with time or opportunity to surrender.

60.     Ulatowski physically seized Mr. James inside the bathroom.

61.     Upon information and belief, there was a physical struggle inside of the bathroom, during which Mr. James was shot and killed.

62.     Upon information and belief, Ulatowski shot and killed Mr. James.

63.     Upon information and belief, Baker shot and killed Mr. James.

64.     Upon information and belief, Smith shot and killed Mr. James.

65.     Upon information and belief, Ulatowski caused Mr. James to be shot and killed.

66.     Upon information and belief, Baker caused Mr. James to be shot and killed.

67.   Upon information and belief, Smith caused Mr. James to be shot and killed.

68.   Baker and Smith were inside of the bathroom while Ulatowski struggled with Mr. James and had the time and opportunity to intervene to prevent Mr. James from being shot and killed, but they chose not to.

69.   After Mr. James was shot, he experienced conscious pain and suffering and fear of impending death before he died.

70.   Ulatowski, Baker and the other Task Force members allege that Mr. James shot himself, but because they were not wearing body worn cameras, it is impossible to know if that claim is true.

71.   Mr. James' death could have been avoided if the defendants and other warrant task force members had devised and executed a safe plan for arresting Mr. James.

72.   Mr. James' death could have been avoided if Sheriff's Deputy DEVINNEY, who was the warrant task force leader, had devised and executed a safe plan for arresting Mr. James.

73.   The defendants and other warrant task force members created a dangerous condition and/or situation at 6 Vinewood place.

74.   Execution of warrants inside of a particular premises creates an unpredictable and potentially dangerous situation.

75.   The defendants and other warrant task force members exercised extraordinary governmental power by intruding on the sanctity of the home and taking temporary control over the home and its occupants.

76.   The defendants and other warrant task force members owed a special duty to Mr. James when they planned and executed the arrest warrant at 6 Vinewood Place.

77.     The defendants and other warrant task force members breached the special duty owed to decedent by negligently planning the executing the warrant.

78.     MCSO Sergeant Christian DeVinney oversaw the Monroe County Sheriff's Office Warrant Unit and was the tactical leader of the Task Force. Along with NYPS Investigator Ulatowski, RPD Investigator Arrowood, Deputy U.S. Marshal Smith, and other Task Force members, DeVinney devised a plan to arrest Mr. James, which consisted of executing the warrant by rushing into the home at 6 Vinewood Place; if Mr. James had a gun, their only plan was to shoot and kill him.

79.     The defendants and other warrant task force members failed to plan for a number of contingencies, including the possibility that Mr. James could have a gun; their only plan if something unexpected happened inside of the home was to shoot and kill Mr. James.

80.     DeVinney and the other defendants and other warrant task force members failed to devise a non-lethal plan for arresting Mr. James if they entered his home and he had a gun or otherwise resisted.

81.     DeVinney and the other defendants and other warrant task force members failed to consider numerous other safer options for arresting Mr. James.

82.     For example, DeVinney and the other defendants and other warrant task force members failed to consider arresting Mr. James by waiting for him to exit the home and then rushing upon him and arresting him outside.

83.     DeVinney and the other defendants and other warrant task force members failed to consider arresting Mr. James by waiting for him to exit the home and enter his car, and then making a controlled stop.

84.     The failure of the defendants and other warrant task force members to be properly trained in how to safely apprehend individuals with arrest warrants caused Mr. James' death.

85.     Defendant Monroe County Sheriff Todd Baxter and the MCSO provided regular training to DeVinney regarding the execution of warrants like the arrest warrant executed on September 15, 2021.

86.     In a Supporting Deposition dated September 22, 2021, DeVinney stated, "on 9/15/21, I was acting in my official capacity as a Deputy Sheriff … when I was notified that our warrant unit was going to make an attempt to locate and arrest Dedrick James at 6 Vinewood Place in the City of Rochester."

87.     The MCSO Warrant Unit was the lead primary and/or lead agency in executing the arrest warrant for Dedrick James on September 15, 2021.

88.     There were seven member of the Monroe County Sheriff's Office Warrant Unit who participated in the execution of the arrest warrant for Dedrick James on September 15, 2021.

89.     There were three members of the Rochester Police Department who participated in the execution of the arrest warrant for Dedrick James on September 15, 2021.

90.     There were two members of the New York State Police who participated in the execution of the arrest warrant for Dedrick James on September 15, 2021.

91.     There were was only one Deputy U.S. Marshal who participated in the execution of the arrest warrant for Dedrick James on September 15, 2021.

92.     Baxter provided, upon information and belief, extensive training to DeVinney and the MCSO Warrant Unit about executing search and arrest warrants. That training, however, was inadequate.

93.     The U.S. Marshal's task force provided, at most, one annual training for members of the task force.

94.     Thus, Baxter and the MCSO provided the majority of the training on execution of warrants to both members of the MCSO Warrant Unit and to the task force.

95.     Baxter failed to provide any training to DeVinney or the other defendants and other warrant task force members regarding how to properly and safely plan and execute an arrest warrant; or the training he provided was inadequate.

96.     Baxter never trained DeVinney and the other defendants and other warrant task force members that in situations like this, where there was no emergency requiring that the task force rush into to the house, that they were required to devise a safer plan, instead of rushing into the house, with no plan for how to react if they encountered resistance from the subject of the warrant.

97.     Defendants and the other task force members participated in a clearly state (not federal) operation when they participated in the execution of the arrest warrant for Dedrick James on September 15, 2021.

98.     Upon information and belief, DeVinney and all the other task force members, other than SMITH, received payment only from their respective local or state governments (not the federal government).

99.     The U.S. Marshal's office only had a de minimis involvement in the planning and execution of the arrest warrant for Dedrick James on September 15, 2021.

100.    Upon information and belief, defendants and the other task force members were acting pursuant to state law when they executed the arrest warrant for Dedrick James on September 15, 2021, as the warrant was issued by a New York State court.

- 13 -

101.    DeVinney and all the other task force members, other than SMITH, performed their day-to-day operations under the control of their respective local or state agencies.

102.    The defendants and other warrant task force members chose not to wear body worn cameras, which is a violation of good and accepted police practices.

103.    Because of the foregoing, Mr. James suffered pain, terror, and death. Plaintiff seeks compensation in an amount to be determined at trial.

## VI. CLAIMS FOR RELIEF

### A.  FEDERAL CLAIMS UNDER *BIVENS* V. *SIX UNKNOWN NAMED AGENTS OF FED. BUREAU OF NARCOTICS*, 403 U.S. 388 (1971) AND THE FEDERAL TORT CLAIMS ACT[1]

### FIRST CLAIM FOR RELIEF
### EXCESSIVE FORCE UNDER BIVENS
### (As to Defendant USM SMITH, BAKER, ULATOWSKI)

104.    All preceding and subsequent paragraphs are incorporated by reference.

105.    All of the aforementioned acts of defendants, their agents, servants, and employees, including USM SMITH, were carried out under the color of law.

106.    All of the aforementioned acts deprived decedent of the rights, privileges, and immunities guaranteed to citizens of the United States by the Fourth and/or Fifth Amendments to the Constitution of the United States of America.

107.    The acts complained of were carried out by USM SMITH, BAKER and ULATOWSKI in their capacity as police/law enforcement officers with all the actual and/or apparent authority attendant thereto.

---

[1] Plaintiff does not concede that Baker, Ulatowski Arrowood, Baxter Devinney, or the John Does and Richard Roes were deputized and acting under color of federal law. Instead, defendants' contention that the RPD officers, MSCO Sheriff's Deputies and NYSP Officer Ulatowski "acted at the direction of the Federal Parties is an evidentiary-based contention that... is more appropriately the subject of a motion for summary judgment, which is premature at this stage." *Pettiford* v. *City of Greensboro*, 556 F. Supp. 2d 512, 530 (M.D.N.C. 2008). Nevertheless, for the purposes of the Bivens and FTCA claims, plaintiff pleads in the alternative that Baker, Ulatowski Arrowood, Devinney, the John Does and Richard Roes were deputized and acting under color of federal law.

108.     The acts complained of were carried out by USM SMITH, BAKER and ULATOWSKI in their capacity as police/law enforcement officers, pursuant to the customs, usages, practices, procedures, and rules of the USMS – and was acting within the scope and authority of their employment as a USMS law enforcement officer and/or the deputization as federal law enforcement officers, and under the color of law –  under the supervision of ranking officers of said department.

109.     Defendants USM SMITH, BAKER and ULATOWSKI, individually, while acting under color of law, engaged in conduct which is forbidden by the laws and Constitution of the United States.

110.     The level of force employed by defendant USM SMITH, BAKER and ULATOWSKI was objectively unreasonable and in violation of the constitutional rights of the plaintiff.

111.     As a result of the foregoing, plaintiff sustained, inter alia, bodily injuries, including, but not limited to, a gunshot wound that caused his death.

### SECOND CLAIM FOR RELIEF
**Failure To Intervene Under Bivens**
**(As to Defendant USM SMITH, BAKER, ULATOWSKI)**

112.     All preceding and subsequent paragraphs are incorporated by reference.

113.     USM SMITH, BAKER, and ULATOWSKI all had an affirmative duty to intervene on decedent's behalf to prevent the violation of his constitutional rights by other members of law enforcement.

114.     USM SMITH, BAKER, and ULATOWSKI failed to intervene on decedent's behalf despite having had realistic opportunities to do so.

- 15 -

115.    USM SMITH, BAKER, and ULATOWSKI failed to intervene on decedent's behalf despite having substantially contributed to the circumstances within which decedent's rights were violated by their affirmative conduct.

116.    As a result of the aforementioned conduct of the individual defendants, decedent's constitutional rights were violated.

117.    Defendant' actions were willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed.

118.    As a result of the foregoing, decedent suffered injuries and damages, including death.

### THIRD CLAIM FOR RELIEF
### ASSAULT AND BATTERY BY FEDERAL LAW ENFORCEMENT UNDER THE FEDERAL TORT CLAIMS ACT
#### (As to Defendant The United States of America)

119.    All preceding and subsequent paragraphs are incorporated by reference.

120.    U.S. Marshals, task force members, and/or federal agents and employees such as USM SMITH have a duty to refrain from excessive and unnecessary force against persons within their custody and control and/or those they are apprehending.

121.    Defendants breached this duty when they used unnecessary, unreasonable, and unjustified physical force against plaintiff by shooting him and/or causing him to be shot and killed.

122.    As a result of this assault and battery, plaintiff endured immense predeath conscious pain and suffering, fear of impending death, and death.

123.    The defendant UNITED STATES is liable for these tortious acts under the Federal Tort Claims Act because they were committed by a federal agent and/or employee, USM SMITH, and/or the other defendants who the UNITED STATES claims were deputized and acting under

the direction and control of the Federal Government, and who was/were acting within the scope of his/their office or employment, under circumstances where the defendant UNITED STATES, if a private person, would be liable to plaintiff in accordance with the laws of the State of New York.

## FOURTH CLAIM FOR RELIEF FOR RELIEF
## NEGLIGENT PLANNING BY FEDERAL LAW ENFORCEMENT UNDER
## THE FEDERAL TORT CLAIMS ACT
### (As to Defendant The United States of America)

124.    All preceding and subsequent paragraphs are incorporated by reference.

125.    The actions of the defendants, their agents, servants, employees, officers and deputies were negligent, which was the direct and proximate cause of the decedent's injuries.

126.    Defendants owed plaintiff a special duty under *Ferreira* v. *City of Binghamton,* 2022 NY Slip Op 01953 [Mar. 23, 2022].

127.    Defendants had a special duty to plan and execute the warrant in a safe and lawful manner.

128.    By planning and executing the arrest warrant, defendants took positive control of the premises, knowingly creating an unpredictable and potentially dangerous condition at the premises.

129.    Defendants had actual knowledge of the potentially dangerous safety condition and took positive action in assuming direction and control over the premises.

130.    By negligently planning and executing the arrest warrant, defendants took control of the dangerous situation of they created.

131.    Defendants breached their duty to Mr. James by, among other things, failing to conduct adequate surveillance and other intelligence gathering.

- 17 -

132. Defendants breached their duty to Mr. James by, among other things, failing to devise a non-lethal plan for apprehending and arresting Mr. James if he resisting their efforts to bring him into custody.

133. Decedent's death was a direct and proximate result defendants' negligently planning and executing the arrest warrant.

134. As a result of the foregoing, decedent suffered injuries and damages, including death.

135. Defendants were at all times agents, servants, and employees acting within the scope of their employment and/or deputization by the defendant UNITED STATES, which is therefore responsible for their conduct.

136. USM SMITH was at all times an agent, servant, and employee acting within the scope of his employment by the defendant UNITED STATES, which is therefore responsible for his conduct.

137. The UNITED STATES claims that the other defendants were also at all times agents, servants, and employees who were deputized by the Federal Government and were acting within the scope of said deputization by the defendant UNITED STATES on September 15, 2020; if this is the case (which plaintiff does not concede that it is), then the UNITED STATES is therefore responsible for defendants' conduct.

138. As a direct and proximate result of the negligence detailed above, plaintiff sustained the damages hereinbefore alleged.

### FIFTH CLAIM FOR RELIEF FOR RELIEF
### NEGLIGENCE BY FEDERAL LAW ENFORCEMENT UNDER
### THE FEDERAL TORT CLAIMS ACT
**(As to Defendant The United States of America)**

139. All preceding and subsequent paragraphs are incorporated by reference.

140. The actions of the defendants, their agents, servants, employees, officers and deputies were negligent, which was the direct and proximate cause of the decedent's injuries.

141. Defendants owed plaintiff a special duty under *Ferreira* v. *City of Binghamton,* 2022 NY Slip Op 01953 [Mar. 23, 2022].

142. Defendants had a special duty to plan and execute the warrant in a safe and lawful manner.

143. Defendants owed a duty of care to decedent to use only the amount of force necessary and permitted by USMS policy against decedent during the events alleged because, under the same or similar circumstances, a reasonable, prudent, and careful person should have anticipated that injury to decedent or to those in a like situation would probably result from the foregoing conduct.

144. Defendants knew or should have known that executing a warrant by rushing into a residence with their guns out created an unpredictable and dangerous situation, which unreasonably created a risk of physical harm and death for plaintiff and for themselves. Yet the defendants nonetheless failed to safely plan the warrant execution, and used deadly force against decedent by shooting him and/or causing him to be shot, which caused his death.

145. These acts constituted a breach of USMS and defendants' duties and directly and proximately caused the death of decedent on September 15, 2021.

146. Defendants were at all times agents, servants, and employees acting within the scope of their employment and/or deputization by the defendant UNITED STATES, which is therefore responsible for their conduct.

147.     USM SMITH was at all times an agent, servant, and employee acting within the scope of his employment by the defendant UNITED STATES, which is therefore responsible for his conduct.

148.     The UNITED STATES claims that the other defendants were also at all times agents, servants, and employees who were deputized by the Federal Government and were acting within the scope of said deputization by the defendant UNITED STATES on September 15, 2020; if this is the case (which plaintiff does not concede that it is), then the UNITED STATES is therefore responsible for defendants' conduct.

149.     As a direct and proximate result of the negligence detailed above, plaintiff sustained the damages hereinbefore alleged.

### B.  **FEDERAL CLAIMS PLEADED UNDER 42 U.S.C. § 1983**[2]

**SIXTH CLAIM FOR RELIEF**
**EXCESSIVE FORCE UNDER 42 U.S.C. § 1983**
**(As to Defendants BAKER and ULATOWSKI)**

150.     All preceding and subsequent paragraphs are incorporated by reference.

151.     All of the aforementioned acts of defendants, their agents, servants, and employees, including USM SMITH, were carried out under the color of state law.

152.     All of the aforementioned acts deprived decedent of the rights, privileges, and immunities guaranteed to citizens of the United States by the Fourth and/or Fifth Amendments to the Constitution of the United States of America.

---

[2] Plaintiff does not concede that Baker, Ulatowski Arrowood, Devinney, or the John Does and Richard Roes were deputized and acting under color of federal law. Instead, defendants' contention that the RPD officers, MSCO Sheriff's Deputies and NYSP Officer Ulatowski "acted at the direction of the Federal Parties is an evidentiary-based contention that... is more appropriately the subject of a motion for summary judgment, which is premature at this stage." *Pettiford* v. *City of Greensboro*, 556 F. Supp. 2d 512, 530 (M.D.N.C. 2008). Thus, for the purposes of the federal claims pleaded alternatively under 42 U.S.C § 1983, plaintiff pleads in the alternative that Baker, Ulatowski Arrowood, Devinney, the John Does and Richard Roes were *not* deputized and were instead acting under color of New York State law.

153.    The acts complained of were carried out by BAKER and ULATOWSKI in their capacity as police/law enforcement officers with all the actual and/or apparent authority attendant thereto.

154.    The acts complained of were carried out by BAKER in his capacity as police officer with the Rochester Police Department, pursuant to the customs, usages, practices, procedures, and rules of the RPD – and was acting within the scope and authority of his employment with the RPD and CITY, and under the color of law – under the supervision of ranking officers of said department.

155.    The acts complained of were carried out by ULATOWSKI in his capacity as police/law enforcement officer with the New York State Police, pursuant to the customs, usages, practices, procedures, and rules of the NYSP – and was acting within the scope and authority of his employment as a NYSP officer and under the color of law – under the supervision of ranking officers of said department.

156.    Defendants BAKER and ULATOWSKI, individually, while acting under color of law, engaged in conduct which is forbidden by the laws and Constitution of the United States.

157.    The level of force employed by defendants BAKER and ULATOWSKI was objectively unreasonable and in violation of the constitutional rights of the plaintiff.

158.    As a result of the foregoing, plaintiff sustained, inter alia, bodily injuries, including, but not limited to, a gunshot wound that caused his death.

## SEVENTH CLAIM FOR RELIEF
### Failure To Intervene Under 42 U.S.C. § 1983
### (As to Defendants BAKER and ULATOWSKI)

159.    All preceding and subsequent paragraphs are incorporated by reference.

160.    BAKER, and ULATOWSKI all had an affirmative duty to intervene on decedent's behalf to prevent the violation of his constitutional rights by other members of law enforcement.

161.    BAKER, and ULATOWSKI failed to intervene on decedent's behalf despite having had realistic opportunities to do so.

162.    BAKER and ULATOWSKI failed to intervene on decedent's behalf despite having substantially contributed to the circumstances within which decedent's rights were violated by their affirmative conduct.

163.    As a result of the aforementioned conduct of the individual defendants, decedent's constitutional rights were violated.

164.    Defendants' actions were willful, malicious, oppressive, and/or reckless, and were of such a nature that punitive damages should be imposed.

165.    As a result of the foregoing, decedent suffered injuries and damages, including death.

### EIGHTH CLAIM FOR RELIEF
### Supervisory Liability under 42 U.S.C. § 1983
### (Against BAXTER)

166.    All preceding and subsequent paragraphs are incorporated by reference.

167.    BAXTER personally caused decedent's constitutional injuries and death by being deliberately or consciously indifferent to the rights of others in failing to properly supervise, train, and discipline his subordinate employees.

168.    BAXTER was negligent in the training, supervision and discipline of the Defendant Sheriff's Deputies, who were provided, upon information and belief, no training on how to safely execute an arrest warrant.

169.    Alternatively, the training BAXTER provided to the Sheriff's Deputies was inadequate.

170.    BAXTER's negligence in failing to supervise and discipline his Sheriff's Deputies was the direct and proximate cause of decedent's injuries.

171.    As a result of the foregoing, decedent suffered injuries and damages, including death.

### STATE LAW CLAIMS[3]

### NINTH CLAIM FOR RELIEF
### NEGLIGENT PLANNING

172.    All preceding and subsequent paragraphs are incorporated by reference.

173.    As detailed above, Defendants were negligent in the planning and the execution of the arrest warrant.

174.    Defendants owed plaintiff a special duty under *Ferreira* v. *City of Binghamton,* 2022 NY Slip Op 01953 [Mar. 23, 2022].

175.    Defendants had a special duty to plan and execute the warrant in a safe and lawful manner.

176.    By planning and executing the arrest warrant, defendants took positive control of the premises, knowingly creating an unpredictable and potentially dangerous condition at the premises.

---

[3] Plaintiff does not concede that Baker, Ulatowski Arrowood, Devinney, or the John Does and Richard Roes were deputized and acting under color of federal law. Instead, defendants' contention that the RPD officers, MSCO Sheriff's Deputies and NYSP Officer Ulatowski "acted at the direction of the Federal Parties is an evidentiary-based contention that... is more appropriately the subject of a motion for summary judgment, which is premature at this stage." *Pettiford* v. *City of Greensboro*, 556 F. Supp. 2d 512, 530 (M.D.N.C. 2008). Thus, for the purposes of the state law claims, plaintiff pleads in the alternative that Baker, Ulatowski Arrowood, Devinney, the John Does and Richard Roes were *not* deputized and were instead acting under color of New York State law.

177.    Defendants had actual knowledge of the potentially dangerous safety condition and took positive action in assuming direction and control over the premises.

178.    By negligently planning and executing the arrest warrant, defendants took control of the dangerous situation of they created.

179.    Defendants breached their duty to Mr. James by, among other things, failing to conduct adequate surveillance and other intelligence gathering.

180.    Defendants breached their duty to Mr. James by, among other things, failing to devise a non-lethal plan for apprehending and arresting Mr. James if he resisting their efforts to bring him into custody.

181.    Decedent's death was a direct and proximate result defendants' negligently planning and executing the arrest warrant.

182.    As a result of the foregoing, decedent suffered injuries and damages, including death.

183.    The City, as the employer of several of the individual defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

## TENTH CLAIM FOR RELIEF
## <u>WRONGFUL DEATH</u>

184.    All preceding and subsequent paragraphs are incorporated by reference.

185.    Plaintiff's decedent is survived by distributes.

186.    By reason of the wrongful death of the decedent, the decedent's distributees have sustained pecuniary loss and damages from his wrongful death.

187.    As a result of the foregoing, decedent suffered injuries and damages, including death.

188.    The City, as the employer of several of the individual defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

## ELEVENTH CLAIM FOR RELIEF
### NEGLIGENCE

189.    All preceding and subsequent paragraphs are incorporated by reference.

190.    The actions of the defendants, their agents, servants, employees, officers and deputies were negligent, which was the direct and proximate cause of the decedent's injuries.

191.    Defendants owed plaintiff a special duty under *Ferreira* v. *City of Binghamton,* 2022 NY Slip Op 01953 [Mar. 23, 2022].

192.    Defendants breached that duty by acting negligently in planning and executing the warrant in an unsafe manner.

193.    Defendants breached that duty in the type and amount of force used against decedent.

194.    Defendants' breach of that duty was the direct and proximate cause of decedent's injuries and death.

195.    Defendants' actions were willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed.

196.    As a result of the foregoing, decedent suffered injuries and damages, including death.

197.    The City, as the employer of several of the individual defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

## TWELFTH CLAIM FOR RELIEF
### Assault and Battery

198.    All preceding and subsequent paragraphs are incorporated by reference.

199.    Defendants assaulted and battered decedent.

200.    Defendants battered decedent by seizing and tackling him.

201.    Defendants battered decedent by, upon information and belief, shooting him.

202.    Decedent did not consent to the contact.

203.    The types and levels of force defendants used against decedent were in contravention of, or inconsistent with, good and accepted police practices.

204.    At no point during the incident described herein did the circumstances necessitate or support the above applications of force utilized by the defendants against decedent.

205.    By the aforedescribed conduct, defendants, their agents, servants and employees, acting within the scope of their employment, intentionally, willfully and maliciously battered decedent, when they, in a hostile and/or offensive manner struck decedent without his consent and with the intention of causing harmful and/or offensive bodily contact to the decedent and caused such battery.

206.    The RPD Officers were at all times agents, servants, and employees acting within the scope of their employment by the Defendant CITY and the RPD, which are therefore responsible for their conduct.

207.    The Defendant CITY, as the employer of the individual RPD defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

208.    Defendants' actions were willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed.

209.    As a result of the foregoing, decedent suffered injuries and damages, including death.

210.     The City, as the employer of several of the individual defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

## THIRTEENTH CLAIM FOR RELIEF
### Failure To Intervene

211.     All preceding and subsequent paragraphs are incorporated by reference.

212.     The individual defendants all had an affirmative duty to intervene on decedent's behalf to prevent the violation of his rights by the other defendants.

213.     The individual Defendants failed to intervene on decedent's behalf despite having had realistic opportunities to do so.

214.     The individual defendants failed to intervene on decedent's behalf despite having substantially contributed to the circumstances within which decedent's rights were violated by their affirmative conduct.

215.     As a result of the aforementioned conduct of the individual defendants, decedent's rights were violated.

216.     The Defendant CITY, as the employer of the individual RPD defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

217.     Defendants' actions were willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed.

218.     As a result of the foregoing, decedent suffered injuries and damages, including death.

219.     The City, as the employer of several of the individual defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

## FOURTEENTH CLAIM FOR RELIEF
### Negligent Training, Supervision and Discipline
### (Against BAXTER)

220.    All preceding and subsequent paragraphs are incorporated by reference.

221.    Defendant BAXTER was negligent in the training, supervision and discipline of the Defendant Sheriff's Deputies, who were provided, upon information and belief, no training on how to safely execute an arrest warrant.

222.    Alternatively, the training BAXTER provided to the Sheriff's Deputies was inadequate.

223.    BAXTER's negligence in failing to supervise and discipline his Sheriff's Deputies was the direct and proximate cause of decedent's injuries.

224.    As a result of the foregoing, decedent suffered injuries and damages, including death.

**WHEREFORE**, plaintiff respectfully requests judgment against defendants as follows:

    i.   an order awarding compensatory damages in an amount to be determined at trial;

    ii.   an order awarding punitive damages in an amount to be determined at trial;

    iii.   declaratory and injunctive relief requiring the MSCO Warrant Unit and the U.S. Marshal's task force to wear body worn cameras during warrant executions;

    iv.   reasonable attorney's fees and costs; and

    v.   directing such other and further relief as the Court may deem just and proper, together with attorney's fees, interest, costs, and disbursements of this action.

Dated: New York, New York
       February 7, 2023

Respectfully Submitted,

ROTH & ROTH, LLP
EASTON THOMPSON KASPEREK SHIFFRIN LLP

By: _____~//s//~_____
    Elliot D. Shields
    Roth & Roth, LLP
    *Co-Counsel for Plaintiff*
    192 Lexington Avenue, Suite 802
    New York, New York 10016
    Tel: 212-425-1020

    Donald M. Thompson
    Easton Thompson Kasperek Shiffrin LLP
    *Co-Counsel for Plaintiff*
    16 West Main Street, Suite 243
    Rochester, New York 14614
    Tel.: 585-423-8290