# JAMES v. United States
# 23-cv-6057
# MSC

# USMS Enforcement Operations- Standard Operating Procedures (SOPs)

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

00000934



UNITED STATES MARSHALS SERVICE (USMS)

# Enforcement Operations

## Standard Operating Procedures (SOPs)

**Revised January 29, 2015**
Prepared: July 2, 2012

Point of Contact:

Chief Inspector Jeff Tyler
Domestic Investigations Branch
Investigative Operations Division
202-307-9286 - jeff.tyler@usdoj.gov

*These SOPs provide guidance on conducting
Enforcement Operations in the United States Marshals Service*

**CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER**

**00000935**


Table of Contents

I. Purpose

II. Proponent

III. Procedures

    A. Organization and Jurisdiction

    B. Command and Supervision

    C. Distribution of Federal, State, and Local Cases

    D. Assignment of Task Force Officers Deputized as Special Deputy United States Marshals

IV. USMS Enforcement Operations Operational Procedures

    A. Executing Search Warrants and Arrest Warrants

    B. Communication

    C. Confidential Sources

    D. Subpoenas

    E. Records and Reports

    F. Logistical Support

    G. Use of Firearms, Deadly Force, and Less Than Lethal Devices

    H. Confidentiality

    I. News Media

    J. Deconfliction

V. USMS Enforcement Operations Administrative Procedures

    A. Justice Detainee Information System /Warrant Information Network (JDIS/WIN)

    B. Collateral Leads

    C. Evidence, Seized Property, and Contraband

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

00000936

■ ███████████████████████████████
████████████████████████████
████

■ ████████████████████████
█████████████████████████████
███████████████████████
██████████████████████
████████████████████████
████████████████████

■ ████████████████████████
██████████████████████████
████████████████████████
███████████████████████
█████████████████████████
████████████████████████
█████████████████████████
████████████████████

C.  Distribution of Federal, State, and Local Cases

   1.  Federal Cases

      a.  The district caseload will be distributed by the SDUSM(s) or their designee among DUSMs assigned to Enforcement Operations.  Each DUSM will be assigned a caseload which may consist of any of the following:

         1)  DEA Class I, II, III
         2)  Federal Escapes
         3)  HIDTA Fugitive Cases
         4)  Collateral Leads
         5)  Other Federal cases assigned by the SDUSM
         6)  Federal Probation
         7)  Federal Parole
         8)  Federal Failure to Appear
         9)  Federal Bond Default

      b.  The SDUSM should consider the experience and qualifications of the DUSM prior to assignment of federal cases.

5

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

00000937

2. State and Local Cases

    a. Distribution of state and local cases will be coordinated by the SI/SDUSM or their designee and the Special Deputy United States Marshals.

    b. The SDUSM should consider the experience and qualifications of the Special Deputy United States Marshal/DUSM prior to assignment of state and local cases.

    c. USMS personnel involved in Enforcement Operations targeting state and local cases will work felony cases that meet the following criteria: homicide, kidnapping, sexual assault, robbery, assault, threats, arson, extortion, burglary, home invasion, carjacking, drugs (manufacture, sale and distribution), sex offenses, obscenity, cruelty toward child/spouse, obstructing the police, flight (escape), weapon offenses, gang-related crimes, crimes against persons, and obstruction of justice.

    d. On a case-by-case basis, USMS Enforcement Operations personnel may work cases that are high profile or of significant interest to a member agency that do not meet the established criteria. These cases will be approved in advance by the CDUSM/Chief Inspector or their designee, who may approve cases for other legitimate law enforcement reasons.

    e. Prior to assigning state and local warrants, the SI/SDUSM or their designee is responsible for reviewing each case to verify that it meets the above criteria and thereby remains in line with the *Presidential Threat Protection Act* mandate to target violent offenders.

3. If a Special Deputy United States Marshal assigned to USMS Enforcement Operations wishes to utilize USMS Enforcement Operations resources for a fugitive investigation, he or she shall use the following procedures:

    a. The member agency shall furnish the warrant and all pertinent information to their Special Deputy United States Marshal who, in turn, shall notify the USMS Enforcement Operations SI/SDUSM or their designee. The member agency may also forward via fax, email, or other electronic means the warrant or warrant abstract and all pertinent

6

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

00000938

      information directly to the CDUSM/Chief Inspector or their designee for acceptance.

    b. Non-member agencies that wish to utilize USMS Enforcement Operations services shall submit for acceptance to the CDUSM/Chief Inspector or their designee within their jurisdiction, all pertinent information along with a copy of the warrant or warrant abstract.

    c. USMS Enforcement Operations personnel will not work misdemeanor warrants unless unusual circumstances exist, and only when approved by the CDUSM/Chief Inspector or their designee.

    d. If the investigation of a fugitive case requires travel to other USMS districts, the United States Marshal/CDUSM of the affected district(s) will be consulted prior to travel.

D. Assignment of Task Force Officers Deputized as Special Deputy United States Marshals

  1. The assignment of law enforcement officers to USMS Enforcement Operations must be approved by their departments and the CDUSM/Chief Inspector or their designee.

  2. In the event that a Special Deputy United States Marshal assigned to USMS Enforcement Operations becomes problematic, the matter should be discussed with the parent agency of the Special Deputy United States Marshal through the CDUSM/Chief Inspector or their designee. In the event that a mutually agreeable solution concerning the individual cannot be reached, authority for the final decision will rest with the Chief Inspector/Commander of a Regional Fugitive Task Force or the United States Marshal of a district-led task force. It is strongly recommended that all personnel decisions be supported by official documentation. *(See USMS Policy Directive 17.11, Special Deputation Program: Section E. Procedures 1.g and 2.a.4.)*

  3. Law enforcement officers assigned to USMS Enforcement Operations as Special Deputy United States Marshals should have at least 5 years of law enforcement experience with an agency that has general arrest authority. *(See USMS Policy Directive 17.11, Special Deputation Program: Section D. Policy 5)*

  4. Special Deputy United States Marshals will comply with their parent agency policies, procedures, and codes of conduct as

7

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

00000939

outlined in the *Violent Offender* or *Regional Fugitive Task Force MOU* with the following exceptions:

    a.    USMS property, including computers, cellular phones, communications equipment, and any other federal technical equipment that is issued to Special Deputy United States Marshals will be used only for official USMS business and maintained in accordance with USMS and Department of Justice (DOJ) policies and procedures;

    b.    USMS Government Owned Vehicles (GOV) or USMS leased vehicles that are assigned to Special Deputy United States Marshals will be used only for official USMS business and will be maintained and operated in accordance with USMS, DOJ, and United States Government policies, procedures, and regulations. Special Deputy United States Marshals operating vehicles provided by their parent agency will maintain and operate those vehicles in accordance with their own agency policy;

    c.    Special Deputy United States Marshals will be provided with an orientation concerning USMS property management and vehicle policies, as well as copies of the applicable policy documents. As a part of the orientation, Special Deputy United States Marshals will be required to acknowledge receipt of and compliance with these policies; and

    d.    Prior to issuing a USMS-owned weapon to a Special Deputy United States Marshal, the CDUSM/Chief Inspector or their designee will first confirm with the parent agency of the Special Deputy United States Marshal that the weapon is approved for use by the parent agency. Upon confirmation and prior to issuance, the Special Deputy United States Marshal will be required to qualify with the weapon on both the USMS's and parent agency's course of fire. Special Deputy United States Marshals will be required to review and comply with USMS enforcement operations administrative and operational policies, as directed.

e.    Prior to issuing a USMS-owned Taser to a Special Deputy United States Marshal, the CDUSM/Chief Inspector or their designee will first confirm with the parent agency of the Special Deputy United States Marshal that the Taser is approved for use by the parent agency. Upon confirmation and prior to issuance, the Special Deputy United States Marshal will be required to complete an initial certification with the Taser by USMS

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

instructors and will be required to recertify annually while in possession of the USMS-owned Taser. Special Deputy United States Marshals will be required to review and comply with USMS enforcement operations administrative and operational policies as directed.

5. Special Deputy United States Marshals are not authorized to travel outside their jurisdiction on USMS Enforcement Operations business unless approved by their parent agency and the CDUSM/Chief Inspector or their designee. In an effort to maximize effectiveness and coordination with other USMS district enforcement operations, a DUSM should accompany the officer(s) when traveling in connection with USMS Enforcement Operations whenever possible. All travel funded by the USMS for Enforcement Operations will be in accordance with USMS and DOJ travel policies.

6. Special Deputy United States Marshals are not authorized to remove prisoners from a federal institution or holding facility unless accompanied by a DUSM. Any case related interviews with prisoners must be coordinated through the U.S. Attorney's Office (USAO), as well as DOJ's Office of Enforcement Operations (OEO).

7. Upon the officer's departure or removal from USMS Enforcement Operations, his or her Special Deputation will be immediately terminated. All USMS Enforcement Operations equipment, badge, credentials, and Special Deputation documents will be immediately returned to the CDUSM/Chief Inspector or their designee. The CDUSM/Chief Inspector or their designee will notify IOD and the parent agency in writing of these actions. *(See USMS Policy Directive 17.11, Special Deputation Program: Section E. Procedures 1.g and 2.a.4.)*

8. Violations of USMS Enforcement Operations regulations or policy by a Special Deputy United States Marshal may result in expulsion from USMS Enforcement Operations. Unacceptable attitude, performance, or suitability may also result in removal from USMS Enforcement Operations by the CDUSM/ Chief Inspector.

IV. USMS Enforcement Operations Operational Procedures

   A. Executing Search Warrants and Arrest Warrants

   1. Because the USMS is dedicated to ensuring the safety of its operational personnel and its federal, state, local, and tribal law enforcement partners in the face of today's ever increasing risk of violence and the proliferation of firearms in the hands of criminals,

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

00000941

the following procedures for execution of search warrants and arrests will be followed by USMS Enforcement Operations team members:

a. Time permitting and prior to initiating any enforcement operations in the field, a complete background investigation will be conducted by the USMS Enforcement Operations member assigned the case. The investigation should include, but not be limited to, the following elements:

1) Photos
2) Driver's license and motor vehicle information
3) Family status
4) Residence history, including utilities for last known address
5) Employment history
6) Telephone listing
7) Known associates
8) Criminal history: federal, state, or local
9) A review of the National Crime Information Center (NCIC) for cautions and additional warrants, including state, county and/or city
10) Local and state police records, arrest reports, and photos, if any
11) Contact with Probation Officer and/or case agent in the original offense, if applicable
12) Check with Pretrial Services Agency, if applicable
13) Review of bond information (Clerk's Office), if applicable
14) Credit Bureau checks
15) Weapons history
16) Gang affiliations
17) A check to determine if the fugitive is identified as a "Violent Offender" in JDIS/WIN

b. All members of the arrest team will be appropriately identified as police officers: raid jackets, vests, neck badge, etc.

c. Special Deputy United States Marshals should wear their parent agency approved equipment which identifies them as a member of that agency. They should not be issued USMS raid jackets.

d. Ballistic vests should be worn during Enforcement Operations.

10

**CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER**

00000942

 e. Other safety equipment such as ▮▮▮▮ vests with ▮▮▮▮ ballistic plates, Kevlar helmets, and ballistic shields may be used by any trained member of the USMS Enforcement Operations team.  Additional safety equipment may be required at the discretion of the Team Leader.

 f. Prior to the execution of an arrest warrant or enforcement activity, photos of the fugitive(s) will be shown to each member of the arrest team and a written pre-operational plan will be formulated and communicated.

 g. When there is insufficient time to draft a written pre-operational plan, a verbal plan will be formulated using the *Situational Operational Planning Checklist* that all USMS Enforcement Operations personnel will be issued. Using this checklist, a verbal plan will be communicated to all team members.

 h. All warrants should be confirmed active prior to service.

 i. Prior to effecting an arrest or any type of enforcement activity, personnel assigned to USMS Enforcement Operations must notify their local dispatch of the exact location the activity will be taking place, purpose (e.g., interview, surveillance, arrest), and the unit numbers of the other team members who will be assisting.  This notification may be accomplished in a variety of ways including, but not limited to:  USMS radio, state and local radio, cellular telephone, etc.

 j. USMS Enforcement Operations personnel should arrange for the deployment of sufficient manpower and other resources when effecting an arrest or conducting interviews, searches, and surveillances.  This includes the use of the Special Operations Group (SOG) or other tactical teams if appropriate.  In instances where this is not possible due to exigent circumstances (e.g., a random or otherwise unanticipated encounter with a known fugitive), the arresting officer(s) must evaluate the circumstances and weigh the benefits and consequences of attempting an arrest against other alternatives, such as establishing or continuing surveillance.  All such decisions should be made in the interest of public safety based on articulable facts known to the officer(s) at the time;

k.  Under no circumstances should a USMS Criminal Investigator, DUSM, or Special Deputy United States Marshal undertake Enforcement Operations alone.

l.  When the USMS is the lead agency of a multi-agency arrest effort, the USMS Enforcement Operations CDUSM/ Chief Inspector or their designee will assume responsibility for advance coordination with the senior representative of the other participating agencies.  If possible and time permitting, a USMS Enforcement Operations member will complete an Operational Plan or briefing package.  During instances when there is insufficient time to draft a written Operational Plan, a verbal plan will be formulated utilizing the *Situational Operational Planning Checklist* that all USMS Enforcement Operations personnel will be issued.  Using this checklist, a verbal plan will be communicated to all team members;

m.  When a Special Deputy United States Marshal is requested by another agency to participate in the execution of an arrest warrant, the Special Deputy United States Marshal should immediately forward that request to the appropriate USMS Enforcement Operations CDUSM/Chief Inspector or their designee.  The CDUSM/Chief Inspector or their designee will determine the Special Deputy United States Marshal's level of assistance based on the type of case and availability of resources.  (Special Deputations are specific to the request for which they were issued and are not interchangeable.  *See USMS Policy Directive 17.11, Special Deputation Program: Section 6. Approval Process*.)

n.  USMS personnel assigned to Enforcement Operations and operating a USMS GOV or a USMS leased vehicle, may initiate a high speed vehicle pursuit only in compliance with the USMS vehicle pursuit policy.  Special Deputy United States Marshals operating vehicles assigned to them by their parent agency will adhere to their agency policy on vehicle pursuits.  If a vehicle pursuit is initiated, the USMS Enforcement Operations CDUSM/ Chief Inspector or their designee will be notified as soon as possible.

A vehicle pursuit will be terminated immediately when the danger posed to the general public, the DUSM, the driver and/or occupants of the suspect vehicle outweighs the necessity to continue the pursuit and apprehend the suspect; the pursuing Deputy (or Supervisor) determines that the circumstances that led to the pursuit have changed to the

12

**CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER**

00000944

        degree that the pursuit must be terminated; or another law enforcement agency has assumed the primary and backup-unit responsibility. A DUSM may continue to follow, monitor, and assist. (See *USMS Policy Directive 2.1, Law Enforcement Response, Vehicle Pursuits* for additional guidance.)

o.     If a hostage or a barricaded subject situation arises, the senior USMS Enforcement Operations member on the scene will take command and be responsible for communicating and coordinating with USMS Enforcement Operations supervisors.

p.     In the event that SOG or Special Weapons and Tactics (SWAT) are deployed, they will assume command of the scene until the situation has been resolved.

q.     If a significant incident arises that would necessitate, or make appropriate, the securing of the immediate area (i.e. crime scene) and local law enforcement response is not on scene or readily available, the senior USMS Enforcement Operations member may direct the securing of the scene until the arrival of local law enforcement, or until responsibility for securing the scene is assumed by another agency. The scene should be secured by establishing a readily identifiable perimeter. If resources permit, a perimeter may be established by utilizing "U.S. Marshal Do Not Cross" yellow tape (USM-302) or other appropriate means to create a barrier. The senior USMS Enforcement Operations member should also assess the scene to determine if additional security is needed and if so notify local law enforcement so that appropriate resources can be dispatched for security, crowd control, etc.

r.     All arrestees will be restrained in a manner that offers the greatest safety to the officer, suspect, and the public. When available, belly-chains and leg irons will be used on all violent offenders or those suspects who are escape risks. All arrestees will be searched as soon as it is safe to do so after being handcuffed.

s.     All fugitives will be handcuffed behind their back until they are placed into full restraints which include a belly-chain and leg irons.

t.     All arrestees should be transported in accordance with *USMS Policy Directive 9.1, Prisoner Custody, In-District Movements,* to ensure the safety of USMS Enforcement

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

00000945

    Operations personnel who are assigned to complete the transport.

u. If during an enforcement operation law enforcement officers find themselves in the presence of a child who is in the custody of an individual who is being apprehended, precautions should be taken to ensure the safety of the child. To the extent possible, care should also be taken to lessen the negative impact of children witnessing a parent or guardian being placed in custody. The paramount concerns in any arrest situation are sound tactics and the safety of officers and the public. If during the course of an apprehension a child is present, he or she should be left in the custody of a spouse, an adult family member, or another suitable adult designated by the person being arrested. If no such person is available, Child Protective Services should be contacted in order to ensure that the child is left in safe and appropriate care. If the parent or guardian of a child is being arrested and informs DUSMs that there will be no guardian for the child because of the arrest, appropriate guardian arrangements must be made to ensure that the child is not left unattended.

v. After the arrest or enforcement activity, investigators will, when possible, conduct a debriefing or critique of the operation. This should be done in a secure area away from the arrest site. All participants should be permitted an equal opportunity to state their observations.

■ ■■■■■■■■

  ■ [redacted]

14

**CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER**

**00000946**

- ▇▇▇▇▇
  - ▇▇▇▇▇
  - ▇▇▇▇▇
  - ▇▇▇▇▇
  - ▇▇▇▇▇
  - ▇▇▇▇▇
- ▇▇▇▇▇
- ▇▇▇▇▇
- ▇▇▇▇▇

G.   Use of Firearms, Deadly Force, and Less Than Lethal Devices

**CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER**

00000947

1. All members assigned to USMS Enforcement Operations shall comply with their parent agencies' guidelines concerning the use of firearms and deadly force.

2. All members assigned to USMS enforcement operations must be informed of and must comply with USMS policy on use of less than lethal weapons as required by the *DOJ Policy Statement on the Use of Less-Than-Lethal Devices*, which was approved by the Attorney General on April 21, 2011.

3. Copies of all applicable firearms and deadly force policies for each participating agency shall be provided by each Special Deputy United States Marshal to the CDUSM/Chief Inspector for review.

4. Post-shooting procedures for Special Deputy United States Marshals involved shootings:

    a. Parent agencies of any Special Deputy United States Marshal involved in a shooting will be immediately notified of the incident along with USMS Enforcement Operations management and the local agency responsible for the jurisdiction where the shooting occurred.

    b. The investigating agency for any USMS Enforcement Operations Officer Involved Shooting (OIS) will be the law enforcement agency with jurisdiction at the scene of the shooting incident unless the Federal Bureau of Investigation (FBI) investigates the incident.

    c. In the event that a Special Deputy United States Marshal is involved in a shooting outside the parent agency's jurisdiction, the USMS shall remain on the scene and/or dispatch a USMS supervisor to the location to help facilitate the flow of information and support the involved Special Deputy United States Marshal.

    d. The USMS will not conduct an internal investigation involving the Special Deputy United States Marshal, but will assist the parent agency in obtaining any information needed to support their own internal investigation.

5. Post-shooting procedures for ALL shootings:

    a. The CDUSM/Chief Inspector or designee will establish a Point of Contact (POC) who is responsible for all information generated to the USMS Communications Center, IOD, and TOD.

18

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

00000948

b.  Within 2 hours of the incident or as soon as possible, the POC will notify the USMS Communications Center and provide information relating to the incident, including but not limited to:

   1) Any warrant information regarding the suspect(s).
   2) The number of USMS personnel involved.
   3) The number of state and local personnel involved.
   4) Any injuries to law enforcement personnel or others involved in the incident.
   5) The name, date of birth, and the Fugitive Identification Number (FID) of the fugitive(s).
   6) A brief narrative regarding the arrest scenario.
   7) Contact information for the POC.

   This report should include only factual information known at the time of the report.

c.  The USMS Communication Center will make immediate notifications per the Communications Center Standard Operating Procedures.

d.  The USMS Communication Center will provide the Critical Incident Response Team (CIRT) with the name and contact information for the designated POC. CIRT will deploy as necessary to provide peer support to all USMS employees, Special Deputies, and family members involved or impacted by the incident.

e.  The IOD Duty Officer will contact the POC for the incident for all additional details and will be responsible for coordinating the information with IOD Domestic Investigations and IOD Criminal Intelligence Branches (CIB). CIB will be responsible for generating Intelligence Profiles of the subjects for the Office of the Director.

f.  The Employee Assistance Program will be made available to all USMS employees and family members involved or impacted by the incident.

g.  All USMS personnel should review and are required to comply with *USMS Policy Directive 2.1, Law Enforcement Response; Use of Force*.

19

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER

00000949

h. All USMS personnel involved in a shooting incident will comply with *USMS Policy Directive 2.1, Law Enforcement Response; Shooting Incident*.

i. All USMS personnel who utilize a Less than Lethal device must comply with *USMS Policy Directive 2.1, Law Enforcement Response; Less-Than-Lethal Devices*.

■ ▆▆▆▆▆▆▆

   ■ ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

■ ▆▆▆▆▆▆▆

   ■ ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

■ ▆▆▆▆▆▆▆

   ■ ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

**CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER**

00000950